**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | |
|---|---|
| KIERSTEN BECK, | ) |
| CHRISTINE LYNN BARRETT- | ) |
|    BUKOWSKI, | ) |
| BRIDGETTE BOYD, | ) |
| TIFFANY BRAGG, | ) |
| TRICIA BROOKS, | ) |
| WILLIE JEAN CASHAW, | ) |
| MARTHA CLEARY, | ) |
| AMY CRAIG, | ) |
| MONTANA CRISS, | ) |
| KAMELA CRUTCHFIELD, | ) |
| JOSHUA CUMMINGS, | ) |
| MELISSA CUMMINGS, | ) |
| MICHELLE DAILEY, | ) |
| CRYSTAL DARBY, | ) |
| RACHEAL DUNN, | ) |
| MELISSA DUTTON, | ) |
| SEENA EASTER, | ) |
| STEPHANIE EDWARDS, | ) |
| PATTI EVANS, | ) |
| ROBIN FLOWER, | ) |
| MARTHA GREENFELD, | ) |
| ANNA GRUBB WAACK, | ) |
| TARA HALL, | ) |
| SAUNDRA HEGLER, | ) |
| KELLEY HERCHENHAHN, | ) |
| RACHEL HICKS, | ) |
| MARLA HIX, | ) |
| JORI HUTCHINSON, | ) |
| LORA HYDE, | ) |
| KAYLA JAMES, | ) |
| JOHN JONES, | ) |
| MELISSA JOSEPH, | ) |
| ANITA JUBIC, | ) |
| AMY KAY KNOPE, | ) |
| SARA KERN, | ) |
| JEN LACROIX, | ) |
| TONYA LINDSEY, | ) |
| CHEYENNE LUNCEFORD, | ) |
| CHRISTY MANNING, | ) |
| LARA MAST, | ) |
| MARISSA MICHAELSEN, | ) |

TIMOTHY MICHELS,                     )
ANNA MITCHELL YANCY,                 )
SUSAN NOTTINGHAM,                    )
GWENDOLYN NYAMOTI,                   )
AIESHA OFFORD,                       )
LLOYD PAYTON,                        )
MALISSA PIRTLE,                      )
DONALD REIFENSTAHL,                  )
ANGIE REVELS,                        )
SHERRY ROBERTS,                      )
JENNIFER RODGERS,                    )
MICHAEL SAVAGE,                      )
MANDY SCOGLIETTI,                    )
THERESA STATEN,                      )
NANCY STEVENS,                       )
ELLA STRICKLAND,                     )
SHYANNA SWANSON,                     )
DANA TAYLOR,                         )
EDNA TAYLOR,                         )
LINDA TAYLOR,                        )
KRISTINA THOMPSON,                   )
ROBIN UHRIG,                         )
MELLETA UPSON PLOTTS,                )
KILEE VAUGHN,                        )
BINA VAUGHT,                         )
JENNIFER VOLKENANT,                  )
KATHERINE WEBB,                      )
JERMAINE WEBSTER,                    )
KAYLA NICOLE WILLIAMS,               )
MELISSA WILLIAMS,                    )
DANA WORK,                           )
TARA WORKMAN,                        )
KIMBERLY APPLEGARTH,                 )
ERIN AYCOCK,                         )
TAMMY BARRETTE,                      )
VICKI BAUGHMAN,                      )
ADDIE BINGHAM,                       )
RAC-CALE BLAIR,                      )
AMANDA MECHELLE BREWER,              )
BETTIE BRYANT,                       )
LEONTE CARTWRIGHT,                   )
WILLIAM CASTLE,                      )
GINA CHRISTINE CHERRY,               )
NITA CLARK,                          )
MELISSA CONTERNO,                    )
LORI COWHER,                         )

LUCILLE COX,                          )
LARRY DAVIS,                          )
SHELLIE DAWN,                         )
TONI DELUNA,                          )
CHRISTINA DOWDEN,                     )
BRITTANY DUMMITT,                     )
KIMBERLY DAWN ELMORE,                 )
AMBER FOWLER,                         )
CARISSA FUSELIER,                     )
RUBY GARZA,                           )
KATHALEEN APRIL GILLILAND,            )
CHRISTINE GUNNIN,                     )
JOEL HERNANDEZ,                       )
ERIN HRUSCHAK,                        )
SARAH HUSKINS,                        )
MARIE HYATT,                          )
KATHLEEN JERNIGAN,                    )
EVELYN JOHNSON,                       )
CINDY KERN,                           )
STEPHANIE KIMBRO,                     )
CHRISTI LEA,                          )
JUDITH LOCKHART,                      )
CHERI LUEKE,                          )
CHRISTINE LYNN,                       )
JOY MCGUIRE,                          )
FANTASIA MCNEAL-                      )
       CARTWRIGHT,                    )
CRISTHIAN MENDIETA,                   )
LINDA MOORE,                          )
LISA MORGAN,                          )
SHAUNA MURRAY,                        )
MARY ORR,                             )
DEBORAH PASCHALL,                     )
JOHNATHAN LEE PRICE,                  )
ANNE RAMSEY,                          )
KRISTY RAY,                           )
KARRI RICHARD,                        )
TERRY RISLEY,                         )
ROBERTO RIVERA,                       )
ASHLEY TATROW SAYLORS,                )
TERRENCE SCOTT,                       )
DANYAI SERRANO,                       )
KELLYE MARIE SIMPSON,                 )
LEXI SIMPSON,                         )
KATHY SONNIER,                        )
DEBORAH STRNAD,                       )

TERRILL SUTTON,                               )
BARB TERREL,                                  )
SHERRY WHEELER,                               )
CHRISTINA WHITCOMB,                           )
RAE WICKERSHAM,                               )
AMANDA WINNINGHAM,                            )
KRISTIE YOUNG,                                )
SAMANTHA J. GOODRICH,                         )
DWAN N. GOODRICH,                             )
BRIANA I. RENAUD,                             )
JOHN T. MORRISON,                             )
MICHELLE J. MORRISON,                         )
JAMES CREECH,                                 )
JAN E. BALLARD,                               )
BECKY MCCLANAHAN,                             )
ESPERANZA ZUNIGA, and                         )
ABBIE INGRAM, Each Individually               )
     and on Behalf of All Others             )
     Similarly Situated,                     )
                                              )
            Plaintiffs,        )
                                              )
v.                                            )     Civil Action No. 3:23-cv-3282-CRL-KLM
                                              )
DRIVELINE RETAIL                              )
MERCHANDISING, INC.,                          )
                                              )
            Defendant.         )

### DEFENDANT DRIVELINE RETAIL MERCHANDISING, INC.'S MOTION TO COMPEL ARBITRATION AND MEMORANDUM OF LAW IN SUPPORT

Denies Baker-Seal, #6255589
BROWN & JAMES, P.C.
Attorneys for Defendant
Richland Plaza I, 525 W. Main St., Ste. 200
Belleville, Illinois 62220-1547
618/235-5590; 618/235-5591 (Fax)
dseal@bjpc.com; dowens@bjpc.com

Kathryn D. Terry, OBA No. 17151
Lauren Barghols Hanna, OBA No. 21594
101 North Robinson Ave. Suite 1300
Oklahoma City, OK 73102
Telephone: (405) 235-4100
Facsimile: (405) 235-4133
kdterry@phillipsmurrah.com
lbhanna@phillipsmurrah.com

***Attorneys for Defendant
Driveline Retail Merchandising, Inc.***

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  FACTUAL BACKGROUND ................................................................................ 3

  A.  Plaintiffs Agreed to the Driveline Terms, Including Its Arbitration Agreement. ............... 3

  B.  Procedural History. ............................................................................................ 6

III.  LEGAL STANDARD.......................................................................................... 8

IV.  ARGUMENT AND AUTHORITY ..................................................................... 9

  A.  The FAA Reflects a Strong Federal Policy in Favor of Arbitration and Requires
Enforcing Arbitration Agreements According to Their Terms. ................................................. 9

  B.  The Arbitration Agreement Binds Each Plaintiff, Because Each Assented to the
Arbitration Agreement, Forming A Contract. .......................................................................... 10

  C.  Plaintiffs' FLSA and Illinois Wage Claims Against Driveline Fall Squarely Within the
Scope of the Arbitration Agreement. ...................................................................................... 12

  D.  The Court Should Dismiss This Action. ...................................................................... 12

  E.  Attorney Fees and Costs ............................................................................................ 13

IV.  CONCLUSION.................................................................................................. 15

Defendant Driveline Retail Merchandising, Inc. ("Driveline") specially appears and moves this Court, pursuant to 9 U.S.C. § 4, for an order dismissing Plaintiffs' Amended Complaint and compelling Plaintiffs to submit their claims individually as Demands for Arbitration, pursuant to the express terms of the Arbitration Agreement applicable to all named Plaintiffs. In support of this Motion, Driveline states as follows:

## I.    INTRODUCTION

Driveline provides manufacturers and retailers with retail merchandising products and services throughout the United States. *See* Declaration of Lori Bennett, Chief Financial Officer and Chief Human Capitol Officer for Driveline, attached as Exhibit 1 at ¶2. Driveline provides merchandising services to national and regional retail chains covering more than 150,000 stores across the country. *Id.* at ¶4. Driveline provides these services – which vary from customer to customer and, for each customer, from project to project – through retail "merchandisers." *Id.*

Plaintiffs, a group of current and former Driveline employees, allege they suffered damages under the Fair Labor Standards Act, 29 U.S.C. §. 201, *et seq.* (the "FLSA"), the minimum wage and overtime provisions of the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ("IMWL"), and the payment provisions of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA").

Driveline employs merchandisers with varying duties, territories and supervisors throughout the country. Driveline merchandisers do not work out of a central or even regional office. *Id.* at ¶5. Instead, they work at the particular stores where they are performing merchandising projects for Driveline. *Id.* Driveline merchandising employees generally receive notice of available work assignments through the Driveline intranet. *Id.* at ¶6. Based on where an employee lives and the employee's relevant experience and job title, Driveline provides electronic

notice of available work assignments to the employee through the Driveline intranet and then employee may accept or decline offered work assignments. *Id.* at ¶7.

Due to having employees all over the country, Driveline's employment onboarding process and the process for current employees to accept available work assignments takes place online and is standardized for all employees. *Id.* at ¶8. Since January 4, 2019, Driveline has required every employee to accept Driveline's Dispute Resolution Agreement ("Arbitration Agreement") as an express condition of beginning employment with Driveline. *Id.* at ¶10-11.

Furthermore, if a merchandiser was already employed by Driveline on January 4, 2019, the employee was presented the Arbitration Agreement through the Driveline intranet and was advised in writing that acceptance of the Driveline Arbitration Agreement was an express condition of continuing employment with Driveline after that date. *See* Arbitration Agreement at p. 1, Ex. 2 ("By accepting or continuing employment with Driveline after the Effective Date of this Agreement, you accept this Agreement and agree to follow the requirements for resolving disputes according to the terms in this Agreement, even if you do not electronically sign the Agreement."); Bennett Declaration at ¶10-15, Ex. 1. Thus, each and every Plaintiff in this lawsuit either individually accepted and acknowledged the terms of the Driveline Arbitration Agreement or did not perform any work for Driveline after January 2019. Bennett Declaration at ¶11-15, Ex. 1.

Each Plaintiff made an agreement to individually arbitrate their employment-related wage claims against Driveline. *See* Arbitration Agreement at p. 1, Ex. 2 ("This Dispute Resolution Agreement ("Agreement") applies to any claims or disputes ("Disputes") arising out of, related to or connected with…your at-will employment with Driveline and the termination of your at-will employment, except for claims specifically excluded under the terms of this Agreement.") Under the Federal Arbitration Act and long-settled case law, that agreement is "valid, irrevocable,

and enforceable," and must be enforced according to its terms. 9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). Accordingly, this Court should order Plaintiffs to individually arbitrate their claims against Driveline. Moreover, as set forth below, the factual predicate to these 149 Plaintiffs filing their Amended Complaint justifies dismissal in conjunction with the order compelling arbitration.

## II.   FACTUAL BACKGROUND

### A.   Plaintiffs Agreed to the Driveline Terms, Including Its Arbitration Agreement.

Plaintiffs are all current and former Driveline employees who allege to have worked as merchandisers during the three years preceding the September 23, 2022 filing of the Complaint. Amended Complaint, ECF No. 3, at ¶¶ 168-169. From January 4, 2019, Driveline has required every merchandiser to accept Driveline's Dispute Resolution Agreement ("Arbitration Agreement") as an express condition of continuing their employment. *See* Declaration of Lori Bennett, ¶10-17, Ex. 1.

The Dispute Resolution Agreement ("Arbitration Agreement") advises each merchandiser that the Arbitration Agreement explicitly "applies to any claims or disputes ("Disputes") arising out of, related to or connected with…your at-will employment with Driveline…." *See* Arbitration Agreement, Exhibit 2. The Arbitration Agreement notes that "[b]y accepting or continuing employment with Driveline after the Effective Date of this Agreement, you accept this Agreement and agree to follow the requirements for resolving disputes according to the terms in this Agreement, even if you do not electronically sign the Agreement." *Id.* It further provides that all Disputes must be "resolved only by a neutral arbitrator through final and binding arbitration and not by way of court or jury trial," except for specific, non-applicable exceptions outlined in the Agreement. Each merchandiser specifically "agree[d] to arbitrate any Dispute (including all

statutory claims and any state or federal claims) that may arise out of, relate to, or is in connection with your at-will employment with Driveline, including your application for employment and the termination of your at-will employment." *Id.* Further, each "agree[d] to bring any Dispute in arbitration on an individual basis only, and not on a joint, class or collective action basis" and "agree[d] that there will be no right or authority for any Dispute to be brought, heard or arbitrated as a joint action, class action or collective action." *Id.* Finally, each Driveline merchandiser "agree[d] that [a]ny and all disputes regarding the enforceability of this Agreement and/or the scope of claims and Disputes subject hereto are within the exclusive authority of the arbitrator to be appointed pursuant hereto" and "agree[d] that if a party brings an action that asserts only claims or Disputes subject to arbitration under this Agreement, any party thereafter prevailing on a motion to compel arbitration shall be entitled to that party's reasonable costs and attorneys' fees incurred in compelling arbitration." *Id.*

Every Driveline merchandiser must access the Driveline intranet to accept each available work assignment. When accessing the Driveline intranet, the merchandiser first sees the Driveline Terms as a "popup box" on the screen. *See* Ex. 1 at ¶ 12. In order to access any potential job assignments, the employee must first accept Driveline's Terms of Work Acceptance ("Driveline's Terms"), a complete copy of which is also included with Exhibit 2 to this Motion. *See* Ex. 1 at ¶ 10-17.

Paragraph 15 of Driveline's Terms states "I UNDERSTAND THAT BY AGREEING TO PERFORM WORK FOR, AND/OR CONTINUING EMPLYOMENT WITH, DRIVELINE, I ACCEPT AND AGREE TO COMPY WITH THE DRIVELINE DISPUTE RESOLUTION AGREEMENT, WHICH REQUIRES MANDATORY ARBITRATION OF ANY DISPUTE COVERED BY THE DISPUTE RESOLUTION AGREEMENT. I FURTHER ACKNOWLEDGE

AND AGREE THAT I HAVE RECEIVED A COPY OF THE DRIVELINE DISPUTE RESOLUTION AGREMEENT." Terms of Work Acceptance, Ex. 2 at p. 3, at ¶15. Thus, every time a Driveline merchandiser employee accepts a Driveline work assignment, the employee re-acknowledges their acceptance and understanding of the terms of the Driveline Arbitration Agreement. *See* Ex. 1, Bennett Declaration at ¶¶ 10-17.

Submitted herewith as Exhibit 3 are the Arbitration Agreements of the named Plaintiffs that Driveline is able to conclusively identify as current or former employees, which is 127 of the 149 named Plaintiffs. For those remaining 22 Plaintiffs, Driveline cannot *yet* specifically identify the employee in questions, likely because the employee's name has changed (typically a marriage or divorce) or because the name is assigned to two or more employees (duplicate names like "John Smith," for example). Prior to filing this motion, the undersigned counsel for Driveline reached out to counsel for Plaintiff requesting either the Driveline employee ID (contained on Driveline paystubs) or the last four digits of a social security number, so that Driveline could identify the employee in question. Plaintiffs' counsel responded they do not have the information and, as of filing, Plaintiffs' counsel has not further responded to continued requests that they contact their clients and inquire. *See* Exhibit 4, Emails Requesting Plaintiffs' Information.

Because Driveline is currently unable to specifically identify 22 named Plaintiffs, it cannot yet locate and attach the Arbitration Agreements for these persons. However, regardless of whether Plaintiffs' counsel does indeed have paystubs (*See* link in footnote 1 below) or whether simply reaching out to their clients to inquire is warranted, Driveline is nonetheless certain that each of these 22 Plaintiffs – all of whom allege they worked as merchandisers during the previous three years – have Arbitration Agreements.  As Ms. Bennett explains, *every merchandiser* who has performed any work at Driveline since January of 2019 was required to sign Arbitration Agreement.

*See* Ex. 1, Bennett Declaration at ¶¶ 10-17. Therefore, this motion to compel seeks to dismiss all of the Plaintiffs' claims herein and order them, if they so choose, to pursue their claims in arbitration and on an individual basis, as they agreed.

### B.     Procedural History.

In October 2022, Plaintiffs' counsel informed counsel for Driveline that they represented around 100 individuals of current and former employees of Driveline that intended to file a "multi-plaintiff Complaint". *See* Emails Regarding Arbitration Agreement, attached as Exhibit 5 at p. 24-25. Counsel for Driveline promptly and repeatedly reminded Plaintiffs' counsel that each merchandiser accepted the Arbitration Agreement as an express condition of their employment with Driveline and provided the uniform Arbitration Agreement to Plaintiffs' counsel for review. *See* Ex. 5 at p. 19, 22. Counsel for Driveline advised Plaintiffs' counsel in October 2022, almost a year before Plaintiffs initiated this lawsuit, that "[i]f you file a collective action in Illinois or any other venue, we would have no choice but to immediately file a counterclaim seeking punitive damages and sanctions. Your firm has actual knowledge that every Driveline employee since January 2019 has signed a class and collective action waiver, as part of a broader alternative dispute resolution agreement with Driveline." *Id.* at p. 19. In fact, Plaintiffs' counsel was acutely aware of Driveline's Arbitration Agreements, as their firm represented former and current employees of Driveline in wage and hour litigation that was pending when Driveline implemented its policy requiring Arbitration Agreements in January 2019. *See* Ex. 5. at p. 1-18. (extensive correspondence from Plaintiffs' counsel to Driveline's counsel in earlier litigation discussing Driveline's implementation of mandatory arbitration agreements for all merchandising employees).[1]

---

[1] The lawsuit filed by Plaintiffs' counsel against Driveline in 2018, that was pending when the January 2019 policy was implemented, is available on a website maintained by Plaintiffs' counsel. The website functions as an

Clearly aware of the applicable Arbitration Agreements, in July 2023, Plaintiffs' counsel began filing individual Demands for Arbitration on behalf of thirty-eight (38) current and former Driveline employees, for disputes "arising out of, related to or connected with" their employment with Driveline. [2] Plaintiffs' counsel had actual knowledge of the Arbitration Agreement to which all Driveline merchandisers were subject since January 2019--and acknowledged and complied with its provisions by filing Demands for Arbitration and attaching these mandatory arbitration agreements as exhibits to each demand throughout July 2023.

In September 2023, without further explanation, Plaintiffs abruptly filed this lawsuit, Plaintiffs' claims center on allegations that Driveline violated minimum wage and overtime provisions of state and federal law. *See* ECF No. 3. Plaintiffs never served that original complaint on Driveline. On December 21, 2023, Plaintiffs amended their Complaint, removing three plaintiffs and adding a significant number of additional Plaintiffs. *See* ECF No. 3 at ¶ 4.

Based on counsels' communications, Plaintiffs' counsel's motivation for filing this lawsuit appears to have been solely to avoid the time and effort of filing individual Demands for Arbitration for each of their clients to attempt to preserve the statute of limitations on each Plaintiff's separate claims, without regard for the valid and enforceable Arbitration Agreements or this Court's time and resources. *See* Ex. 5 at p. 20, 25. As set out more fully below, any

---

advertisement to solicit additional Driveline employees as potential plaintiffs and offering "Free and Confidential Paystub Evaluation." *See* https://www.sanfordlawfirm.com/driveline-retail-merchandising/ (accessed on Jan. 11, 2024).

[2] Driveline has *not* attached all 38 arbitration demands. It can provide those should the court request. However, of the thirty-eight (38) arbitrations pending, six (6) are *also* named Plaintiffs herein. Their inclusion in this matter is impermissible claim-splitting. Regardless and with regard to the issues currently before this court, six of the named Plaintiffs herein have *already* demanded arbitration with the AAA and been assigned a matter number. Their inclusion in this matter is improper and their claims should be dismissed. *See* Exhibit 5, emails demanding arbitration and assigning AAA matter numbers for Plaintiffs Kelley Herchenhahn, Rachels Hicks, Gwendolyn Nyamoti, Michael Savage, Theresa Stanton, and Dana Taylor. *See* Exhibit 6, AAA Emails.

convenience for Plaintiffs' counsel does not justify shifting the burden to this Court. Willfully circumventing mandatory arbitration wrongfully increases the costs of these disputes, requiring Driveline to incur needless attorney fees and costs and requiring Court resources to direct claims to their proper forum – arbitration – where Plaintiffs' counsel knew these claims were required to be filed on an individual basis.

Based on Plaintiffs' wrongful conduct and willful misuse of Court resources, this Court may and should dismiss Plaintiffs' claims, instead of staying these proceedings, and order Plaintiff to file individual Demands in accordance with the terms of their Arbitration Agreements.

### III.    LEGAL STANDARD

Section 4 of the Federal Arbitration Act ("FAA") permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court ... for an order directing that ... arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. A court "shall on application of one of the parties stay the trial of the action until the arbitration has been had according to the terms of the agreement." *Id.* § 3. Federal courts must "rigorously ... enforce arbitration agreements according to their terms," *Epic Sys.*, 138 S. Ct. at 1621, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 298 (2010).

## IV.  ARGUMENT AND AUTHORITY

### A.  The FAA Reflects a Strong Federal Policy in Favor of Arbitration and Requires Enforcing Arbitration Agreements According to Their Terms.

Under the FAA, written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress passed the FAA "in response to widespread judicial hostility to arbitration." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013). It "directed courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable.'" *Epic Sys.*, 138 S. Ct. at 1621 (quoting 9 U.S.C. § 2). The FAA thus "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted.'" *Id.* (quoting, with modification, *Am. Express*, 570 U.S. at 233); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). "The overarching purpose of the FAA ... is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceeding." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019) ("benefits of private dispute resolution [include] lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes" (quoting *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 685 (2010)).

The FAA is mandatory and does not allow courts to delve into policy considerations regarding arbitration. It "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985). As the Supreme Court has repeatedly emphasized, this "national policy favoring

arbitration" supersedes "state [law] attempts to undercut the enforceability of arbitration agreements." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008); *see also DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 471 (2015) (invalidating California Court of Appeal's interpretation of arbitration clause that would "not place arbitration contracts 'on equal footing with all other contracts'"). In particular, plaintiffs may not avoid an arbitration agreement simply because it contains a class action waiver, *Concepcion*, 563 U.S. at 352; *see also DIRECTV, Inc.*, 136 S. Ct. at 468 ("judges of every State must follow" *Concepcion*), especially as plaintiffs generally have no "entitlement to class proceedings for the vindication of statutory rights," *Am. Express*, 570 U.S. at 234. Federal law under the FAA governs arbitration issues. *See Faulkenberg v. CB Tax Franchise Sys.,* 637 F.3d 801, 808-09 (7th Cir. 2011).

The Arbitration Agreement in this matter expressly states that it is governed by the FAA, *see* Ex. 2 ("The parties acknowledge and agree…that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq.") The Arbitration Agreement incontestably falls within the FAA's requirement that it be a "contract evidencing a transaction involving commerce," *see id.* ("The parties acknowledge and agree that Driveline is engaged in transactions involving interstate commerce"), and no exception applies. *See* Ex. 2. Thus, in determining whether Plaintiffs' claims must proceed in arbitration, the Court must limit its review to only two issues: (1) "whether a valid arbitration agreement exists," and (2) "whether the[] agreement covers a particular controversy." *Henry Schein*, 139 S. Ct. 524 at 529-30.

### B.   The Arbitration Agreement Binds Each Plaintiff, Because Each Assented to the Arbitration Agreement, Forming A Contract.

"As the Supreme Court repeatedly has emphasized, arbitration is a creature of contract." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033 (7th Cir. 2016). The question whether a valid arbitration agreement exists is thus no different than the question whether a valid contract has been

formed. *See id.* In Illinois, as in "virtually all jurisdictions," "[f]ormation of a contract requires mutual assent," which is measured through an "objective approach." *Id.* at 1034. If "a reasonable person in [Plaintiffs'] shoes would have realized that he was assenting to" an agreement, then a valid and binding contract exists. *Id.*

One way to "provide[] adequate notice" sufficient to create a binding online contract is through a "clickwrap agreement," in which "a webpage user manifests his assent to the terms of a contract by actively clicking an 'accept' button in order to proceed." *Sherman v. AT & T Inc.*, Case No. 11 C 5857, 2012 WL 1021823, at *3 (N.D. Ill. 2012). Indeed, courts applying Illinois law consistently recognize that such agreements (and the arbitration clauses contained within them) are enforceable. *See, e.g., Sgouros*, 817 F.3d at 1033 ("Courts around the country have recognized that this type of electronic 'click' can suffice to signify the acceptance of a contract."); *Fischer v. Instant Checkmate LLC*, Case No. 19 C 4892, 2021 WL 3033586, at *6 (N.D. Ill. 2021) (finding plaintiff had reasonable notice of the terms where the registration page referred to the terms in "legible text" and provided "easy access for users who cared to read further"); *Acaley v. Vimeo, Inc.*, 464 F. Supp. 3d 959 (N.D. Ill. 2020) (finding contract formed where the phrase "[b]y continuing I agree to the terms" appeared in small font below the button to continue the registration process).

Here, Driveline provided Plaintiffs with adequate notice of the Arbitration Agreement by using exactly such a "clickwrap" mechanism. As noted above, each Plaintiff was provided access to the Arbitration Agreement and had to expressly accept the term of the Arbitration Agreement prior to being able to access any future job assignments after January 4, 2019. *See* Bennett Declaration at ¶¶10-15, Ex. 1. Plaintiffs could not view or accept any job assignments without first acknowledging and accepting the Arbitration Agreement. *Id.*

Given the clarity of the acceptance necessary to access any potential work assignments on the Driveline intranet, there can be no doubt that any reasonable person in Plaintiffs' position would have understood they were accepting the terms and conditions of the Arbitration Agreement in exchange for commencing their employment with Driveline or being granted access to the Driveline intranet job assignment listing platform, so that they could accept additional assignments from January 2019-present.

## C. Plaintiffs' FLSA and Illinois Wage Claims Against Driveline Fall Squarely Within the Scope of the Arbitration Agreement.

The Arbitration Agreement clearly covers Plaintiffs' claims under the Fair Labor Standards Act, 29 U.S.C. Sec. 201, *et seq.* (the "FLSA"), the minimum wage and overtime provisions of the Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* ("IMWL"), and the payment provisions of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.* ("IWPCA"). As a result, Plaintiffs have no basis upon which to oppose Driveline's position on the scope of the Arbitration Agreement. This Court should compel individual arbitration on the issue of arbitrability and dismiss Plaintiffs' knowingly wrongfully filed claims.

## D. The Court Should Dismiss This Action.

While the FAA authorizes a stay of proceedings while the matter is referred to arbitration, Courts maintain the authority to grant a dismissal. *See* 9 U.S.C. § 3; *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (finding the trial court acted within its discretion by dismissing all claims where arbitration clause was broad enough to require all claims be submitted to arbitration). "There is a growing trend among courts favoring dismissal of a case when all of the claims contained therein are subject to arbitration[.]" *Johnson v. Orkin*, LLC, 928 F.Supp.2d 989, 1008 (N.D. Ill. 2013); *see e.g. Baumann v. Finish Line, Inc.*, 421 Fed App'x 632, 636 (7th Cir. 2011); *Am. Int'l Specialty Lines Ins. Co. v. Elec. Data Sys. Corp.*, 347 F.3d 665, 668 (7th Cir.

2003); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 679 (7th Cir. 2002) (affirming dismissal of suits where court finds all claims are arbitrable).

Here, there is no doubt Plaintiffs' wage and hour claims are subject to the Arbitration Agreement. *See* Ex. 2. ("This Dispute Resolution Agreement ("Agreement") applies to any claims or disputes ("Disputes") arising out of, related to or connected with… employment with Driveline[.]"). Plaintiffs only causes of action are alleged violations of the FLSA, the IMWL, and the IWPCA. These claims directly relate to Plaintiffs' employment with Driveline.

Further, and perhaps more importantly, Plaintiffs' counsel has known that every claim submitted to this Court was arbitrable. Plaintiffs' counsel initially acted in accordance with its clients' mandatory obligations to submit their claims to arbitration on an individual basis by filing more three dozen individual demands with the AAA in July 2023, including Driveline's Arbitration Agreement as an exhibit to each individual demand. Because each and every Plaintiffs' claims are arbitrable and Plaintiffs' filings with this Court have impermissibly wasted this Court's time and resources and increased the costs of resolving their clients' claims, the Court should dismiss this lawsuit.

### E.    Attorney Fees and Costs

In addition to dismissal, this Court should grant Driveline's attorney fees and costs related to the instant Motion. *See* 28 U.S.C. § 1927 ("Any attorney…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally he excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.") Plaintiffs' counsel was well-aware that filing a collective action in federal court was improper under the valid and enforceable terms of Driveline's Arbitration Agreement, to which Plaintiffs' counsel knew all Plaintiffs are subject.

Counsel for Driveline advised Plaintiffs' counsel in October 2022, more than a year before Plaintiffs' counsel filed this Amended Complaint, that "[i]f you file a collective action in Illinois or any other venue, we would have no choice but to immediately file a counterclaim seeking punitive damages and sanctions. Your firm has actual knowledge that every Driveline employee since January 2019 has signed a class and collective action waiver, as part of a broader alternative dispute resolution agreement with Driveline… The clients that you are currently representing are not served at all by such a bad-faith filing, as it will not act to toll any statute of limitations. Such a filing will only incur needlessly wasteful and excessive attorney fees, court costs and direct damages to Driveline, which Driveline will attempt to recover in response to any such filed lawsuit. Any such filing would also be unethical and violate the Rules of Professional Responsibility because you have direct knowledge that your clients' claims are barred from adjudication through the court." *See* email to Plaintiffs' counsel dated 10/26/22, Exhibit 5, p. 19, 20 (10/26/22 email from Plaintiffs' counsel noting that "[W]e were thinking we would just file a case for all of them as a group today in Illinois. That would act to toll the SOL…we can do all the staying and tolling we might want, etc. That's very clean and easy to me.") Yes, despite this clear notice to Plaintiffs' counsel, Plaintiffs' counsel moved forward with their wrongful filing and then filed an amended Complaint in an attempt to add even more plaintiffs to this improper litigation action.

Finally, the Arbitration Agreements themselves make clear that a prevailing party on a motion to compel arbitration is entitled to attorneys' fees and costs. Specifically, the Arbitration Agreements provide: "The parties agree that if a party brings an action that asserts only claims or Disputes subject to arbitration under this Agreement, any party thereafter prevailing on a motion to compel arbitration shall be entitled to that party's reasonable costs and attorneys' fees incurred

in compelling arbitration." (Ex. 2 at p. 2)  Every claim asserted in this matter is subject to the Arbitration Agreements between Plaintiffs and Driveline.

Plaintiffs' attempt to circumvent binding arbitration by engaging in this wasteful litigation in this Court subjects Driveline to needless attorney fees and redirects the Court's time and resources to an avoidable and meritless dispute. Plaintiffs' apparent preference of venue does not outweigh the rule of law or justify shifting Plaintiffs' workload of filing arbitration demands to this Court. Driveline respectfully requests this Court grant Driveline all attorney fees incurred in filing and briefing this Motion to Compel Arbitration.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Driveline Retail Merchandising Inc. respectfully requests this Court dismiss the Amended Complaint and order Plaintiffs to submit their claims to binding arbitration on an individual basis. In the alternative, if the Court is not inclined to dismiss this case, Driveline requests these proceedings be stayed while the individual claims are submitted to binding arbitration. Further, this Court should award Driveline its attorney fees and costs incurred in filing and briefing this Special Appearance and Motion to Compel Arbitration.

Respectfully submitted,


_____s/*Kathryn D. Terry*_____
PHILLIPS MURRAH P.C.
Kathryn D. Terry, OBA No. 17151
Lauren Barghols Hanna, OBA No. 21594
101 North Robinson Ave. Suite 1300
Oklahoma City, OK 73102
Telephone: (405) 235-4100
Facsimile: (405) 235-4133
kdterry@phillipsmurrah.com
lbhanna@phillipsmurrah.com

Denies Baker-Seal, #6255589
BROWN & JAMES, P.C.
Attorneys for Defendant
Richland Plaza I, 525 W. Main St., Ste. 200
Belleville, Illinois 62220-1547
618/235-5590; 618/235-5591 (Fax)
dseal@bjpc.com; dowens@bjpc.com
*Attorneys for Defendant*
*Driveline Retail Merchandising, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2024 , I electronically transmitted the foregoing document with the Clerk of Court via CM/ECF, which will automatically send notice and a copy of same to counsel of record via electronic mail to the counsel of record below. In addition, a copy is being mailed and via regular mail.

SANFORD LAW FIRM, PLLC
Josh Sanford
Ark. Bar No. 2001037
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040
joshsanfordlawfirm.com

*Attorneys for Plaintiffs Kiersten Beck, et al.,*
*Each Individually and on Behalf of All Others Similarly Situated*

s/Kathryn D. Terry