Driveline Terms

## Code of Conduct

As a Company, employees are expected to accept certain responsibilities, follow acceptable business principles in matters of conduct, and exhibit a high degree of integrity at all times. This not only involves sincere respect for the rights and feelings of others, but also demands that employees refrain from any behavior that might be harmful to themselves, co-workers, the Company, or that might be viewed unfavorably by current or potential customers or by the public at large. Employee conduct reflects on the Company. Employees are, consequently, encouraged to observe the highest standards of professionalism at all times.

Types of behavior and conduct that the Company considers inappropriate include, but are not limited to, the following:

1. Falsifying employment or other Company records;
2. Violating the Company's Anti-Harassment Policy;
3. Violating state, federal or local laws and regulations;
4. Violating security or safety rules or failing to observe safety rules or the Company safety practices;
   failing to wear required safety equipment; tampering with the Company's equipment or safety equipment;
5. Soliciting gratuities from customers or clients;
6. Exhibiting excessive or unexcused absenteeism or tardiness;
7. Possessing firearms, weapons or explosives on Company or client property without authorization, in violation of Company policy, including but not limited to Driveline's Texas weapons policy, or while on duty;
8. Using Company property or supplies in an excessive, unnecessary or unauthorized way or for personal use;
9. Engaging in criminal conduct or acts of violence, or making threats of violence toward anyone on Company or client premises or when representing the Company; fighting or provoking a fight on Company property, or negligent damage of property;
10. Reporting to work under the influence of drugs or alcohol, and/or illegally manufacturing, possessing, using, selling, distributing or transporting drugs;
11. Committing theft or unauthorized possession of Company property or the property of fellow employees;
    possessing or removing any Company or client property, including documents, from the premises without prior permission from management; using Company equipment or property for personal reasons without proper authorization; using Company equipment for profit;
12. Giving confidential or proprietary Company information to competitors or other organizations, or to unauthorized Company employees;
    breaching confidentiality of personnel information;
13. Sharing, disclosing, or transferring usernames or passwords for Company systems without prior written authorization;
    employees must take reasonable measures to prevent unauthorized access to usernames and passwords for Company systems;
14. Using obscene, abusive or threatening language or gestures;
15. Acting in an insubordinate manner;
16. Spreading malicious gossip and/or rumors;
    engaging in behavior which creates discord and lack of harmony; interfering with another employee on the job; restricting work output or encouraging others to do the same;
17. Sleeping or loitering during working hours;
18. Fraternizing with co-workers or customer personnel while on duty or in a company provided travel accommodation location;
19. Soliciting during working hours and/or in work areas;
    selling merchandise or collecting funds of any kind for charities or others without authorization during business hours, or at a time or place that interferes with the work of another employee on Company or client premises;
20. Purchasing any product on client property while performing Driveline work;
21. Smoking in restricted areas or at non-designated times, in accordance with Company policy;
22. Performing services for Driveline while working on-duty for a client or customer;
23. Bringing Non-Driveline employees into work, this includes but is not limited to the following: children, spouses, boyfriends/girlfriends, friends, relatives, pets, etc.;
24. Bringing Driveline employees into work not already listed on team project in V3;
25. Subcontracting work to another individual, employed or not employed by the company;
26. Working without approved dress code, safety equipment, bringing personal ladders, step stools, or any unauthorized equipment into work;
27. Working outside of client preferred work hours;
28. Any other behavior that a Customer or Client deems to be inappropriate or offensive and notifies Driveline Leadership of their discord; and/or
29. Failing to abide by Driveline's Dispute Resolution Agreement.

Should an employee's performance, work habits, overall attitude, conduct or demeanor become unsatisfactory based on violations either of the above or of any other Company policies, rules or regulations, the employee will be subject to disciplinary action, up to and including termination.

**An Employee that is barred from Customer retail outlets by Customer Management is subject to immediate termination of employment as such restriction by Customer will not allow Employee to accomplish required Company activities.**

## Dispute Resolution Agreement

This Dispute Resolution Agreement ("Agreement") applies to any claims or disputes ("Disputes") arising out of, related to or connected with your application for at-will employment with Driveline Retail Merchandising, Inc. or one of its affiliates, subsidiaries or parent companies ("Driveline"), your at-will employment with Driveline and the termination of your at-will employment, except for claims specifically excluded under the terms of this Agreement. By accepting or continuing employment with Driveline after the Effective Date of this Agreement, you accept this Agreement and agree to follow the requirements for resolving disputes according to the terms in this Agreement, even if you do not electronically sign the Agreement.

This Agreement requires that all such Disputes be resolved only by a neutral arbitrator through final and binding arbitration and not by way of court or jury trial except as otherwise stated in this Agreement. Accordingly:

a) You and Driveline agree to arbitrate any Dispute (including all statutory claims and any state or federal claims) that may arise out of, relate to, or is in connection with your at-will employment with Driveline, including your application for employment and the termination of your at-will employment.

b) You and Driveline also agree to bring any Dispute in arbitration on an individual basis only, and not on a joint, class or collective action basis.

c) Further, you and Driveline agree that there will be no right or authority for any Dispute to be brought, heard or arbitrated as a joint action, class action or collective action.

The arbitration shall be conducted pursuant to the American Arbitration Association's employment arbitration rules, then in effect, before a single arbitrator licensed to practice law in the state in which you are or were employed. A copy of these Rules may be obtained from Driveline's Human Resources Department or at www.adr.org. The parties are entitled to conduct discovery to the fullest extent authorized by applicable law. The arbitration proceeding and all related documents will be confidential, to the fullest extent permitted by applicable law.

Disputes are to be initiated by filing a demand for arbitration within the time limit established by the applicable statute of limitations if the Dispute involves statutory rights. If no statutory rights are involved and to the fullest extent permitted by applicable law, such Disputes must be brought within one (1) year of the day on which you knew, or through reasonable diligence, should have known of the facts giving rise to the Dispute.

Prior to submitting a Dispute to arbitration, you and Driveline agree to first attempt to resolve the Dispute by the party initiating the Dispute notifying the other party in writing of the Dispute and explaining in reasonable detail the grounds for such Dispute; by giving the other party the opportunity to respond in writing to the Dispute within 10 days of receipt of the written notification; and by giving the other party the opportunity to meet and confer. Written notification to Driveline shall be made to disputeresolution@drivelineretail.com. If the Dispute is not resolved in this manner, the Dispute may then proceed to arbitration at the request of either party. The parties agree that the decision of the arbitrator shall be in writing, final and binding. Except for Disputes regarding rights conferred by statute or regulation and to the fullest extent permitted by applicable law, the parties agree that the law of the State of Texas shall apply to all other Disputes. Judgment on any award rendered by an arbitrator may be entered and enforced in any court having jurisdiction thereof, and in states where so required a court of competent jurisdiction must render judgment upon any award subject to this Agreement.

Driveline Exhibit 3 - Arbitration Agreements

1/4/24, 10:20 PM                                                    Driveline Terms

This Agreement does not absolve you from any applicable administrative filing requirements or prevent you from:

a) filing a charge with or seeking relief from the National Labor Relations Board, the U.S. Department of Labor, or the U.S. Equal Employment Opportunity Commission; or

b) filing a claim with similar state agencies if applicable law allows you to do so.

This Agreement does not cover: claims for workers compensation, state disability or unemployment insurance benefits; claims under California Labor Code Private Attorneys General Act of 2004 (PAGA); any criminal complaint or proceeding filed by a governmental agency; claims for restitution or civil penalties owed by an employee for an act for which Driveline sought criminal prosecution; and/or any charges, claims or lawsuits pending as of January 5, 2019 ("Effective Date").

The parties agree that if a party brings an action that asserts only claims or Disputes subject to arbitration under this Agreement, any party thereafter prevailing on a motion to compel arbitration shall be entitled to that party's reasonable costs and attorneys' fees incurred in compelling arbitration. The parties agree that if a party brings an action that includes both claims and Disputes subject to arbitration under this Agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration shall be stayed until the claims and Disputes subject to arbitration are fully arbitrated and/or otherwise resolved. The parties further agree that in such a situation, the arbitrator's decision on the claims and Disputes subject to arbitration, including determinations as to disputed factual and legal issues, shall be dispositive and entitled to full force and effect in a separate or stayed lawsuit on the claims that by law are not subject to arbitration. Any and all disputes regarding the enforceability of this Agreement and/or the scope of claims and Disputes subject hereto are within the exclusive authority of the arbitrator to be appointed pursuant hereto.

For those Disputes subject to arbitration, Driveline shall be responsible for the arbitrator's fees and expenses. Each party shall pay its own costs and attorneys' fees, if any. However, if any party prevails on a claim which under applicable law affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and costs, the arbitrator may award reasonable attorneys' fees and costs to the prevailing party. Any dispute as to the reasonableness of any fee or cost shall be resolved by the arbitrator.

The parties acknowledge and agree that Driveline is engaged in transactions involving interstate commerce, that this Agreement is a part of and evidences a transaction involving commerce, and that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. If any specific provision of this Agreement is deemed invalid or unenforceable, the remainder of this Agreement, including the Parties' mutual agreement to waive any right to a jury trial, shall remain binding and enforceable to the full extent permitted by applicable law.

**TERMS OF WORK ACCEPTANCE**

1. I UNDERSTAND AND AGREE THAT EACH OF THE REQUIREMENTS, TERMS AND CONDITIONS SET FORTH IN THESE TERMS OF WORK ACCEPTANCE (THE "TERMS AND CONDITIONS") ARE ESSENTIAL TERMS FOR THE WORK AND CONDITIONS FOR PAYMENT IN CONNECTION WITH THE WORK.

2. I AGREE TO COMPLETE THE WORK ON OR BY THE SCHEDULE DATE, AS SPECIFIED ABOVE, FOR COMPLETION OF THE WORK ("SCHEDULE DATE").

3. I UNDERSTAND THAT I MUST CONFIRM AND SCHEDULE MY ASSIGNED WORK NO LATER THAN NOON EST ON MONDAY OF EACH WEEK WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, INCLUDING "HARD DATED" PLANS THAT ARE PLAN-SPECIFIC. I FURTHER UNDERSTAND THAT IF I DO NOT CONFIRM THE WORK BY THE MONDAY NOON EST DEADLINE WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, OR FAIL TO COMPLETE THE CONFIRMED WORK ON THE SCHEDULE DATE, DRIVELINE RESERVES THE RIGHT TO REASSIGN THE WORK TO ANOTHER EMPLOYEE.

4. I UNDERSTAND THAT DRIVELINE HAS THE RIGHT TO CHANGE ASSIGNED WORK AT ANY TIME, INCLUDING STORE ASSIGNMENTS, BASED ON BUSINESS NEEDS, CONSISTENT WITH APPLICABLE LAW.

5. I AGREE TO COMPLETE THE WORK WITHIN THE TIME ALLOWED FOR THE WORK, AS SPECIFIED ABOVE. I UNDERSTAND AND AGREE THAT THE TIME ALLOWED FOR THE WORK INCLUDES ADMINISTRATIVE TIME (E.G., PREPARATION FOR ROUTES, COMPLETION OF WORK ORDERS, SUBMISSION OF DIGITAL PHOTOGRAPHS, ETC.) AS WELL AS STORE TIME ("INSTORE TIME"). I FURTHER UNDERSTAND AND AGREE THAT IF ADDITIONAL TIME IS NEEDED TO COMPLETE THE WORK, SUCH ADDITIONAL TIME MUST BE PRE-APPROVED BY MY MANAGER IN WRITING.

6. I AGREE TO TAKE TO THE STORE WHERE THE WORK IS TO BE DONE ALL REQUIRED DOCUMENTS TO COMPLETE THE WORK IN CONFORMANCE WITH DRIVELINE AND CUSTOMER REQUIREMENTS AND SPECIFICATIONS. I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL REIMBURSE ME FOR REQUIRED PRINTING ONLY, AS INDICATED IN THE WORK PLANS, AT A RATE OF 3 CENTS PER PAGE. I FURTHER UNDERSTAND AND AGREE THAT, OTHER THAN AS STATED HEREIN, I WILL NOT BE REIMBURSED FOR THE COST OF ANY OFFICE SUPPLIES USED BY ME IN CONNECTION WITH THE WORK (E.G., PRINTING PAPER, PRINTER TONER, ETC.) AND THAT THESE TYPES OF ADMINISTRATIVE COSTS ARE INCLUDED IN THE TOTAL AMOUNT I AM TO BE PAID AFTER COMPLETION OF THE WORK.

7. TO CONFIRM THAT I HAVE COMPLETED THE WORK, I AGREE TO COMPLETE AND ELECTRONICALLY SUBMIT NO LATER THAN 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," A COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IN THE EVENT I DO NOT SUBMIT THESE ITEMS TO DRIVELINE BY 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE TO CONFIRM THAT THE WORK HAS BEEN COMPLETED AS REQUIRED BY THESE TERMS AND CONDITIONS, THE WORK WILL BE REASSIGNED AND I WILL NOT BE PAID FOR THIS ASSIGNMENT.

8. I UNDERSTAND THAT DRIVELINE ENCOURAGES ME TO COMPLETE AND ELECTRONICALLY SUBMIT THE CONFIRMATION OF WORK COMPLETION AND OTHER REQUIRED ITEMS FROM THE CUSTOMER STORE USING DRIVELINE'S MOBILE APP.

9. I UNDERSTAND AND AGREE THAT PAYMENT FOR THE WORK IS EXPRESSLY CONDITIONED ON (1) COMPLETION OF THE WORK ON OR BY THE SCHEDULE DATE, AND (2) CONFIRMATION THAT I HAVE COMPLETED THE WORK, INCLUDING ELECTRONIC SUBMISSION OF DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IF I FAIL, FOR ANY REASON, TO EITHER COMPLETE THE WORK ON OR BY THE SCHEDULE DATE AND/OR FAIL TO CONFIRM THAT I HAVE COMPLETED THE WORK AS REQUIRED BY THESE TERMS AND CONDITIONS, SUCH FAILURE WILL VOID THE ASSIGNMENT AND/OR THE WORK WILL BE DEEMED NOT TO HAVE BEEN PERFORMED.

10. I UNDERSTAND AND AGREE THAT MILEAGE AND DRIVE TIME ("DRIVE TIME") INCUR IN COMPLETING THE WORK WILL BE CALCULATED THROUGH THE USE OF A ROUTE OPTIMIZATION POWERED BY GOOGLE MAPS/MAP QUEST/OTHER SIMILAR MAPPING SERVICES ("ROUTE OPTIMIZATION"). I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL NOT PAY DRIVE TIME, OR REIMBURSE MILEAGE, FOR NORMAL COMMUTE FROM MY HOME TO THE FIRST STORE ON A GIVEN DAY OR FROM THE LAST STORE TO MY HOME. I FURTHER UNDERSTAND THAT IF THE ROUTE OPTIMIZATION ON A GIVEN DAY SHOWS THAT MY HOME IS LOCATED MORE THAN 30 MILES FROM EITHER THE FIRST STORE OR THE LAST STORE, OR THAT I WILL BE REIMBURSED FOR MY MILEAGE AND PAID FOR DRIVE TIME INCURRED BEYOND THE FIRST 30 MILES BETWEEN MY HOME AND THE FIRST STORE OR THE LAST STORE, AS APPLICABLE. ANY COMPENSABLE MILEAGE OR DRIVE TIME BETWEEN MY HOME AND EITHER THE FIRST OR LAST STORE WILL BE CALCULATED BY ROUTE OPTIMIZATION.

11. I UNDERSTAND THAT MILEAGE WILL BE REIMBURSED AT A RATE OF 20 CENTS PER MILE (EXCEPT WHERE GOVERNED BY RULE OF LAW), AS CALCULATED BY ROUTE OPTIMIZATION, AND I AGREE THAT THE RATE OF 20 CENTS PER MILE IS SUFFICIENT TO REIMBURSE ME FOR THE VEHICLE EXPENSES ACTUALLY AND NECESSARILY INCURRED BY ME IN COMPLETING THE WORK. I UNDERSTAND AND AGREE THAT I WILL BE PAID FOR MY DRIVE TIME AT A LESSER HOURLY RATE THAN THE REGULAR HOURLY RATE THAT I WILL BE PAID FOR INSTORE TIME. I ALSO UNDERSTAND AND AGREE THAT THE AVERAGE HOURLY RATE FOR ALL ACTUAL TIME SPENT ON A PARTICULAR PROJECT, INCLUDING BOTH INSTORE AND DRIVE TIME, MAY BE LESS THAN THE REGULAR INSTORE HOURLY RATE. I FURTHER UNDERSTAND THAT ANY AMOUNTS PAID TO ME FOR MILEAGE OR DRIVE TIME WILL BE PAID IN COMPLIANCE WITH APPLICABLE FEDERAL AND STATE LAW.

12. I UNDERSTAND THAT I AM REQUIRED TO PERFORM ONLY THOSE SERVICES AS OUTLINED IN THE ASSIGNMENT FOR THE WORK. WHILE I MAY PERFORM SERVICES AT A CUSTOMER LOCATION, I UNDERSTAND THAT I AM TO TAKE DIRECTION FROM MY DRIVELINE MANAGER(S) ONLY. I FURTHER UNDERSTAND IF I PERFORM SERVICES OUTSIDE OF THE SCOPE OF THE WORK, I WILL NOT BE REIMBURSED FOR TIME SPENT ON THESE ACTIVITIES.

13. I UNDERSTAND THAT DRIVELINE IS MONITORING MY PERFORMANCE RELATIVE TO QUALITY OF WORK AND TIMELY COMPLETION/CONFIRMATION OF THE WORK. I FURTHER UNDERSTAND THAT DRIVELINE RESERVES THE RIGHT TO LIMIT MY ACCESS TO AND ASSIGNMENT OF ADDITIONAL WORK BASED ON MY PERFORMANCE IN DRIVELINE'S SOLE DISCRETION.

14. I UNDERSTAND THAT DRIVELINE EMPLOYEES ARE PROHIBITED FROM ACCESSING DRIVELINE'S COMPUTER SYSTEMS (INCLUDING, BUT NOT LIMITED TO, ANY DRIVELINE MOBILE APP) BY USING ANOTHER DRIVELINE EMPLOYEE'S PERSONAL LOG- IN INFORMATION (I.E., LOG-IN NAME/EMAIL ADDRESS, EMPLOYEE PASSWORD, ETC.) FOR ANY PURPOSE INCLUDING, WITHOUT LIMITATION, FOR THE PURPOSE OF REPORTING ANOTHER EMPLOYEE'S COMPLETION OF WORK. I AGREE THAT I WILL NOT ATTEMPT TO ACCESS ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM BY USING ANOTHER EMPLOYEE'S PERSONAL LOG-IN INFORMATION, REGARDLESS OF WHETHER THE OTHER EMPLOYEE HAS CONSENTED TO MY USE OF HIS OR HER LOG-IN INFORMATION. I ALSO AGREE THAT I WILL NOT PROVIDE MY LOG-IN INFORMATION TO ANY OTHER DRIVELINE EMPLOYEE OR REQUEST ANY OTHER PERSON TO ACCESS

Driveline Exhibit 3 - Arbitration Agreements

1/4/24, 10:20 PM                                                    Driveline Terms

ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM ON MY BEHALF FOR ANY PURPOSE.

15. I UNDERSTAND THAT BY AGREEING TO PERFORM WORK FOR, AND/OR CONTINUING EMPLOYMENT WITH, DRIVELINE, I ACCEPT AND AGREE TO COMPLY WITH THE DRIVELINE DISPUTE RESOLUTION AGREEMENT, WHICH REQUIRES MANDATORY ARBITRATION OF ANY DISPUTE COVERED BY THE DISPUTE RESOLUTION AGREEMENT. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE RECEIVED A COPY OF THE DRIVELINE DISPUTE RESOLUTION AGREEMENT.

ACCEPTED ON: 3/4/22 at 14:21 BY VAUGHT,BINA

Driveline Exhibit 3 - Arbitration Agreements

Driveline Terms

## Code of Conduct

As a Company, employees are expected to accept certain responsibilities, follow acceptable business principles in matters of conduct, and exhibit a high degree of integrity at all times. This not only involves sincere respect for the rights and feelings of others, but also demands that employees refrain from any behavior that might be harmful to themselves, co-workers, the Company, or that might be viewed unfavorably by current or potential customers or by the public at large. Employee conduct reflects on the Company. Employees are, consequently, encouraged to observe the highest standards of professionalism at all times.

Types of behavior and conduct that the Company considers inappropriate include, but are not limited to, the following:

1. Falsifying employment or other Company records;
2. Violating the Company's Anti-Harassment Policy;
3. Violating state, federal or local laws and regulations;
4. Violating security or safety rules or failing to observe safety rules or the Company safety practices;
   failing to wear required safety equipment; tampering with the Company's equipment or safety equipment;
5. Soliciting gratuities from customers or clients;
6. Exhibiting excessive or unexcused absenteeism or tardiness;
7. Possessing firearms, weapons or explosives on Company or client property without authorization, in violation of Company policy, including but not limited to Driveline's Texas weapons policy, or while on duty;
8. Using Company property or supplies in an excessive, unnecessary or unauthorized way or for personal use;
9. Engaging in criminal conduct or acts of violence, or making threats of violence toward anyone on Company or client premises or when representing the Company; fighting or provoking a fight on Company property, or negligent damage of property;
10. Reporting to work under the influence of drugs or alcohol, and/or illegally manufacturing, possessing, using, selling, distributing or transporting drugs;
11. Committing theft or unauthorized possession of Company property or the property of fellow employees;
    possessing or removing any Company or client property, including documents, from the premises without prior permission from management; using Company equipment or property for personal reasons without proper authorization; using Company equipment for profit;
12. Giving confidential or proprietary Company information to competitors or other organizations, or to unauthorized Company employees;
    breaching confidentiality of personnel information;
13. Sharing, disclosing, or transferring usernames or passwords for Company systems without prior written authorization;
    employees must take reasonable measures to prevent unauthorized access to usernames and passwords for Company systems;
14. Using obscene, abusive or threatening language or gestures;
15. Acting in an insubordinate manner;
16. Spreading malicious gossip and/or rumors;
    engaging in behavior which creates discord and lack of harmony; interfering with another employee on the job; restricting work output and encouraging others to do the same;
17. Sleeping or loitering during working hours;
18. Fraternizing with co-workers or customer personnel while on duty or in a company provided travel accommodation location;
19. Soliciting during working hours and/or in work areas;
    selling merchandise or collecting funds of any kind for charities or others without authorization during business hours, or at a time or place that interferes with the work of another employee on Company or client premises;
20. Purchasing any product on client property while performing Driveline work;
21. Smoking in restricted areas or at non-designated times, in accordance with Company policy;
22. Performing services for Driveline while working on-duty for a client or customer;
23. Bringing Non-Driveline employees into work, this includes but is not limited to the following: children, spouses, boyfriends/girlfriends, friends, relatives, pets, etc.;
24. Bringing Driveline employees into work not already listed on team project in V3;
25. Subcontracting work to another individual, employed or not employed by the company;
26. Working without approved dress code, safety equipment, bringing personal ladders, step stools, or any unauthorized equipment into work;
27. Working outside of client preferred work hours;
28. Any other behavior that a Customer or Client deems to be inappropriate or offensive and notifies Driveline Leadership of their discord;
    and/or
29. Failing to abide by Driveline's Dispute Resolution Agreement.

Should an employee's performance, work habits, overall attitude, conduct or demeanor become unsatisfactory based on violations either of the above or of any other Company policies, rules or regulations, the employee will be subject to disciplinary action, up to and including termination.

**An Employee that is barred from Customer retail outlets by Customer Management is subject to immediate termination of employment as such restriction by Customer will not allow Employee to accomplish required Company activities.**

## Dispute Resolution Agreement

This Dispute Resolution Agreement ("Agreement") applies to any claims or disputes ("Disputes") arising out of, related to or connected with your application for at-will employment with Driveline Retail Merchandising, Inc. or one of its affiliates, subsidiaries or parent companies ('Driveline"), your at-will employment with Driveline and the termination of your at-will employment, except for claims specifically excluded under the terms of this Agreement. By accepting or continuing employment with Driveline after the Effective Date of this Agreement, you accept this Agreement and agree to follow the requirements for resolving disputes according to the terms in this Agreement, even if you do not electronically sign the Agreement.

This Agreement requires that all such Disputes be resolved only by a neutral arbitrator through final and binding arbitration and not by way of court or jury trial except as otherwise stated in this Agreement. Accordingly:

a) You and Driveline agree to arbitrate any Dispute (including all statutory claims and any state or federal claims) that may arise out of, relate to, or is in connection with your at-will employment with Driveline, including your application for employment and the termination of your at-will employment.

b) You and Driveline also agree to bring any Dispute in arbitration on an individual basis only, and not on a joint, class or collective action basis.

c) Further, you and Driveline agree that there will be no right or authority for any Dispute to be brought, heard or arbitrated as a joint action, class action or collective action.

The arbitration shall be conducted pursuant to the American Arbitration Association's employment arbitration rules, then in effect, before a single arbitrator licensed to practice law in the state in which you are or were employed. A copy of these Rules may be obtained from Driveline's Human Resources Department or at www.adr.org. The parties are entitled to conduct discovery to the fullest extent authorized by applicable law. The arbitration proceeding and all related documents will be confidential, to the fullest extent permitted by applicable law.

Disputes are to be initiated by filing a demand for arbitration within the time limit established by the applicable statute of limitations if the Dispute involves statutory rights. If no statutory rights are involved and to the fullest extent permitted by applicable law, such Disputes must be brought within one (1) year of the day on which you knew, or through reasonable diligence, should have known of the facts giving rise to the Dispute.

Prior to submitting a Dispute to arbitration, you and Driveline agree to first attempt to resolve the Dispute by the party initiating the Dispute notifying the other party in writing of the Dispute and explaining in reasonable detail the grounds for such Dispute; by giving the other party the opportunity to respond in writing to the Dispute within 10 days of receipt of the written notification; and by giving the other party the opportunity to meet and confer. Written notification to Driveline shall be made to disputeresolution@drivelineretail.com. If the Dispute is not resolved in this manner, the Dispute may then proceed to arbitration at the request of either party. The parties agree that the decision of the arbitrator shall be in writing, final and binding. Except for Disputes regarding rights conferred by statute or regulation and to the fullest extent permitted by applicable law, the parties agree that the law of the State of Texas shall apply to all other Disputes. Judgment on any award rendered by an arbitrator may be entered and enforced in any court having jurisdiction thereof, and in states where so required a court of competent jurisdiction must render judgment upon any award subject to this Agreement.

Driveline Exhibit 3 - Arbitration Agreements

Driveline Terms

This Agreement does not absolve you from any applicable administrative filing requirements or prevent you from:

a) filing a charge with or seeking relief from the National Labor Relations Board, the U.S. Department of Labor, or the U.S. Equal Employment Opportunity Commission; or

b) filing a claim with similar state agencies if applicable law allows you to do so.

This Agreement does not cover: claims for workers compensation, state disability or unemployment insurance benefits; claims under California Labor Code Private Attorneys General Act of 2004 (PAGA); any criminal complaint or proceeding filed by a governmental agency; claims for restitution or civil penalties owed by an employee for an act for which Driveline sought criminal prosecution; and/or any charges, claims or lawsuits pending as of January 5, 2019 ("Effective Date").

The parties agree that if a party brings an action that asserts only claims or Disputes subject to arbitration under this Agreement, any party thereafter prevailing on a motion to compel arbitration shall be entitled to that party's reasonable costs and attorneys' fees incurred in compelling arbitration. The parties agree that if a party brings an action that includes both claims and Disputes subject to arbitration under this Agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration shall be stayed until the claims and Disputes subject to arbitration are fully arbitrated and/or otherwise resolved. The parties further agree that in such a situation, the arbitrator's decision on the claims and Disputes subject to arbitration, including determinations as to disputed factual and legal issues, shall be dispositive and entitled to full force and effect in a separate or stayed lawsuit on the claims that by law are not subject to arbitration. Any and all disputes regarding the enforceability of this Agreement and/or the scope of claims and Disputes subject hereto are within the exclusive authority of the arbitrator to be appointed pursuant hereto.

For those Disputes subject to arbitration, Driveline shall be responsible for the arbitrator's fees and expenses. Each party shall pay its own costs and attorneys' fees, if any. However, if any party prevails on a claim which under applicable law affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and costs, the arbitrator may award reasonable attorneys' fees and costs to the prevailing party. Any dispute as to the reasonableness of any fee or cost shall be resolved by the arbitrator.

The parties acknowledge and agree that Driveline is engaged in transactions involving interstate commerce, that this Agreement is a part of and evidences a transaction involving commerce, and that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. �� 1 et seq. If any specific provision of this Agreement is deemed invalid or unenforceable, the remainder of this Agreement, including the Parties' mutual agreement to waive any right to a jury trial, shall remain binding and enforceable to the full extent permitted by applicable law.

---

**TERMS OF WORK ACCEPTANCE**

1. I UNDERSTAND AND AGREE THAT EACH OF THE REQUIREMENTS, TERMS AND CONDITIONS SET FORTH IN THESE TERMS OF WORK ACCEPTANCE (THE "TERMS AND CONDITIONS") ARE ESSENTIAL TERMS FOR THE WORK AND CONDITIONS FOR PAYMENT IN CONNECTION WITH THE WORK.

2. I AGREE TO COMPLETE THE WORK ON OR BY THE SCHEDULE DATE, AS SPECIFIED ABOVE, FOR COMPLETION OF THE WORK ("SCHEDULE DATE").

3. I UNDERSTAND THAT I MUST CONFIRM AND SCHEDULE MY ASSIGNED WORK NO LATER THAN NOON EST ON MONDAY OF EACH WEEK WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, INCLUDING "HARD DATED" PLANS THAT ARE PLAN-SPECIFIC. I FURTHER UNDERSTAND THAT IF I DO NOT CONFIRM THE WORK BY THE MONDAY NOON EST DEADLINE WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, OR FAIL TO COMPLETE THE CONFIRMED WORK ON THE SCHEDULE DATE, DRIVELINE RESERVES THE RIGHT TO REASSIGN THE WORK TO ANOTHER EMPLOYEE.

4. I UNDERSTAND THAT DRIVELINE HAS THE RIGHT TO CHANGE ASSIGNED WORK AT ANY TIME, INCLUDING STORE ASSIGNMENTS, BASED ON BUSINESS NEEDS, CONSISTENT WITH APPLICABLE LAW.

5. I AGREE TO COMPLETE THE WORK WITHIN THE TIME ALLOWED FOR THE WORK, AS SPECIFIED ABOVE. I UNDERSTAND AND AGREE THAT THE TIME ALLOWED FOR THE WORK INCLUDES ADMINISTRATIVE TIME (E.G., PREPARATION FOR ROUTES, COMPLETION OF WORK ORDERS, SUBMISSION OF DIGITAL PHOTOGRAPHS, ETC.) AS WELL AS STORE TIME ("INSTORE TIME"). I FURTHER UNDERSTAND AND AGREE THAT IF ADDITIONAL TIME IS NEEDED TO COMPLETE THE WORK, SUCH ADDITIONAL TIME MUST BE PRE-APPROVED BY MY MANAGER IN WRITING.

6. I AGREE TO TAKE TO THE STORE WHERE THE WORK IS TO BE DONE ALL REQUIRED DOCUMENTS TO COMPLETE THE WORK IN CONFORMANCE WITH DRIVELINE AND CUSTOMER REQUIREMENTS AND SPECIFICATIONS. I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL REIMBURSE ME FOR REQUIRED PRINTING ONLY, AS INDICATED IN THE WORK PLANS, AT A RATE OF 3 CENTS PER PAGE. I FURTHER UNDERSTAND AND AGREE THAT, OTHER THAN AS STATED HEREIN, I WILL NOT BE REIMBURSED FOR THE COST OF ANY OFFICE SUPPLIES USED BY ME IN CONNECTION WITH THE WORK (E.G., PRINTING PAPER, PRINTER TONER, ETC.) AND THAT THESE TYPES OF ADMINISTRATIVE COSTS ARE INCLUDED IN THE TOTAL AMOUNT I AM TO BE PAID AFTER COMPLETION OF THE WORK.

7. TO CONFIRM THAT I HAVE COMPLETED THE WORK, I AGREE TO COMPLETE AND ELECTRONICALLY SUBMIT NO LATER THAN 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," A COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IN THE EVENT I DO NOT SUBMIT THESE ITEMS TO DRIVELINE BY 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE TO CONFIRM THAT THE WORK HAS BEEN COMPLETED AS REQUIRED BY THESE TERMS AND CONDITIONS, THE WORK WILL BE REASSIGNED AND I WILL NOT BE PAID FOR THIS ASSIGNMENT.

8. I UNDERSTAND THAT DRIVELINE ENCOURAGES ME TO COMPLETE AND ELECTRONICALLY SUBMIT THE CONFIRMATION OF WORK COMPLETION AND OTHER REQUIRED ITEMS FROM THE CUSTOMER STORE USING DRIVELINE'S MOBILE APP.

9. I UNDERSTAND AND AGREE THAT PAYMENT FOR THE WORK IS EXPRESSLY CONDITIONED ON (1) COMPLETION OF THE WORK ON OR BY THE SCHEDULE DATE, AND (2) CONFIRMATION THAT I HAVE COMPLETED THE WORK, INCLUDING ELECTRONIC SUBMISSION OF DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IF I FAIL, FOR ANY REASON, TO EITHER COMPLETE THE WORK ON OR BY THE SCHEDULE DATE AND/OR FAIL TO CONFIRM THAT I HAVE COMPLETED THE WORK AS REQUIRED BY THESE TERMS AND CONDITIONS, SUCH FAILURE WILL VOID THE ASSIGNMENT AND/OR THE WORK WILL BE DEEMED NOT TO HAVE BEEN PERFORMED.

10. I UNDERSTAND AND AGREE THAT MILEAGE AND DRIVE TIME ("DRIVE TIME") I INCUR IN COMPLETING THE WORK WILL BE CALCULATED THROUGH THE USE OF A ROUTE OPTIMIZATION POWERED BY GOOGLE MAPS/MAP QUEST/OTHER SIMILAR MAPPING SERVICES ("ROUTE OPTIMIZATION"). I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL NOT PAY DRIVE TIME, OR REIMBURSE MILEAGE, FOR NORMAL COMMUTE FROM MY HOME TO THE FIRST STORE ON A GIVEN DAY OR FROM THE LAST STORE TO MY HOME. I FURTHER UNDERSTAND THAT IF THE ROUTE OPTIMIZATION ON A GIVEN DAY SHOWS THAT MY HOME IS LOCATED MORE THAN 30 MILES FROM EITHER THE FIRST STORE OR THE LAST STORE, I WILL BE REIMBURSED FOR MY MILEAGE AND PAID FOR DRIVE TIME INCURRED BEYOND THE FIRST 30 MILES BETWEEN MY HOME AND THE FIRST STORE OR THE LAST STORE, AS APPLICABLE. ANY COMPENSABLE MILEAGE OR DRIVE TIME BETWEEN MY HOME AND EITHER THE FIRST OR LAST STORE WILL BE CALCULATED BY ROUTE OPTIMIZATION.

11. I UNDERSTAND THAT MILEAGE WILL BE REIMBURSED AT A RATE OF 20 CENTS PER MILE (EXCEPT WHERE GOVERNED BY RULE OF LAW), AS CALCULATED BY ROUTE OPTIMIZATION, AND I AGREE THAT THE RATE OF 20 CENTS PER MILE IS SUFFICIENT TO REIMBURSE ME FOR THE VEHICLE EXPENSES ACTUALLY AND NECESSARILY INCURRED BY ME IN COMPLETING THE WORK. I UNDERSTAND AND AGREE THAT I MAY BE PAID FOR MY DRIVE TIME AT A LESSER HOURLY RATE THAN THE REGULAR HOURLY RATE THAT I WILL BE PAID FOR INSTORE TIME. I ALSO UNDERSTAND AND AGREE THAT THE AVERAGE HOURLY RATE FOR ALL ACTUAL TIME SPENT ON A PARTICULAR PROJECT, INCLUDING BOTH INSTORE AND DRIVE TIME, MAY BE LESS THAN THE REGULAR INSTORE HOURLY RATE. I FURTHER UNDERSTAND THAT ANY AMOUNTS PAID TO ME FOR MILEAGE OR DRIVE TIME WILL BE PAID IN COMPLIANCE WITH APPLICABLE FEDERAL AND STATE LAW.

12. I UNDERSTAND THAT I AM REQUIRED TO PERFORM ONLY THOSE SERVICES AS OUTLINED IN THE ASSIGNMENT FOR THE WORK. WHILE I MAY PERFORM SERVICES AT A CUSTOMER LOCATION, I UNDERSTAND THAT I AM TO TAKE DIRECTION FROM MY DRIVELINE MANAGER(S) ONLY. I FURTHER UNDERSTAND THAT IF I PERFORM SERVICES OUTSIDE OF THE SCOPE OF THE WORK, I WILL NOT BE REIMBURSED FOR TIME SPENT ON THESE ACTIVITIES.

13. I UNDERSTAND THAT DRIVELINE IS MONITORING MY PERFORMANCE RELATIVE TO QUALITY OF WORK AND TIMELY COMPLETION/CONFIRMATION OF THE WORK. I FURTHER UNDERSTAND THAT DRIVELINE RESERVES THE RIGHT TO LIMIT MY ACCESS TO AND ASSIGNMENT OF ADDITIONAL WORK BASED ON MY PERFORMANCE IN DRIVELINE'S SOLE DISCRETION.

14. I UNDERSTAND THAT DRIVELINE EMPLOYEES ARE PROHIBITED FROM ACCESSING DRIVELINE'S COMPUTER SYSTEMS (INCLUDING, BUT NOT LIMITED TO, ANY DRIVELINE MOBILE APP) BY USING ANOTHER DRIVELINE EMPLOYEE'S PERSONAL LOG-IN INFORMATION (I.E., LOG-IN NAME/EMAIL ADDRESS, EMPLOYEE PASSWORD, ETC.) FOR ANY PURPOSE INCLUDING, WITHOUT LIMITATION, FOR THE PURPOSE OF REPORTING ANOTHER EMPLOYEE'S COMPLETION OF WORK. I AGREE THAT I WILL NOT ATTEMPT TO ACCESS ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM BY USING ANOTHER EMPLOYEE'S PERSONAL LOG-IN INFORMATION, REGARDLESS OF WHETHER THE OTHER EMPLOYEE HAS CONSENTED TO MY USE OF HIS OR HER LOG-IN INFORMATION. I ALSO AGREE THAT I WILL NOT PROVIDE MY LOG-IN INFORMATION TO ANY OTHER DRIVELINE EMPLOYEE OR REQUEST ANY OTHER PERSON TO ACCESS

Driveline Exhibit 3 - Arbitration Agreements

Driveline Terms

ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM ON MY BEHALF FOR ANY PURPOSE.

15. I UNDERSTAND THAT BY AGREEING TO PERFORM WORK FOR, AND/OR CONTINUING EMPLOYMENT WITH, DRIVELINE, I ACCEPT AND AGREE TO COMPLY WITH THE DRIVELINE DISPUTE RESOLUTION AGREEMENT, WHICH REQUIRES MANDATORY ARBITRATION OF ANY DISPUTE COVERED BY THE DISPUTE RESOLUTION AGREEMENT. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE RECEIVED A COPY OF THE DRIVELINE DISPUTE RESOLUTION AGREEMENT.

ACCEPTED ON: 1/12/22 at 23:34 BY VOLKENANT,JENNIFER

Driveline Exhibit 3 - Arbitration Agreements

## Code of Conduct

As a Company, employees are expected to accept certain responsibilities, follow acceptable business principles in matters of conduct, and exhibit a high degree of integrity at all times. This not only involves sincere respect for the rights and feelings of others, but also demands that employees refrain from any behavior that might be harmful to themselves, co-workers, the Company, or that might be viewed unfavorably by current or potential customers or by the public at large. Employee conduct reflects on the Company. Employees are, consequently, encouraged to observe the highest standards of professionalism at all times.

Types of behavior and conduct that the Company considers inappropriate include, but are not limited to, the following:

1. Falsifying employment or other Company records;
2. Violating the Company's Anti-Harassment Policy;
3. Violating state, federal or local laws and regulations;
4. Violating security or safety rules or failing to observe safety rules or the Company safety practices;
   failing to wear required safety equipment; tampering with the Company's equipment or safety equipment;
5. Soliciting gratuities from customers or clients;
6. Exhibiting excessive or unexcused absenteeism or tardiness;
7. Possessing firearms, weapons or explosives on Company or client property without authorization, in violation of Company policy, including but not limited to Driveline's Texas weapons policy, or while on duty;
8. Using Company property or supplies in an excessive, unnecessary or unauthorized way or for personal use;
9. Engaging in criminal conduct or acts of violence, or making threats of violence toward anyone on Company or client premises or when representing the Company; fighting or provoking a fight on Company property, or negligent damage of property;
10. Reporting to work under the influence of drugs or alcohol, and/or illegally manufacturing, possessing, using, selling, distributing or transporting drugs;
11. Committing theft or unauthorized possession of Company property or the property of fellow employees;
    possessing or removing any Company or client property, including documents, from the premises without prior permission from management; using Company equipment or property for personal reasons without proper authorization; using Company equipment for profit;
12. Giving confidential or proprietary Company information to competitors or other organizations, or to unauthorized Company employees;
    breaching confidentiality of personnel information;
13. Sharing, disclosing, or transferring usernames or passwords for Company systems without prior written authorization;
    employees must take reasonable measures to prevent unauthorized access to usernames and passwords for Company systems;
14. Using obscene, abusive or threatening language or gestures;
15. Acting in an insubordinate manner;
16. Spreading malicious gossip and/or rumors;
    engaging in behavior which creates discord and lack of harmony; interfering with another employee on the job; restricting work output or encouraging others to do the same;
17. Sleeping or loitering during working hours;
18. Fraternizing with co-workers or customer personnel while on duty or in a company provided travel accommodation location;
19. Soliciting during working hours and/or in work areas;
    selling merchandise or collecting funds of any kind for charities or others without authorization during business hours, or at a time or place that interferes with the work of another employee on Company or client premises;
20. Purchasing any product on client property while performing Driveline work;
21. Smoking in restricted areas or at non-designated times, in accordance with Company policy;
22. Performing services for Driveline while working on-duty for a client or customer;
23. Bringing Non-Driveline employees into work, this includes but is not limited to the following: children, spouses, boyfriends/girlfriends, friends, relatives, pets, etc.;
24. Bringing Driveline employees into work not already listed on team project in V3;
25. Subcontracting work to another individual, employed or not employed by the company;
26. Working without approved dress code, safety equipment, bringing personal ladders, step stools, or any unauthorized equipment into work;
27. Working outside of client preferred work hours;
28. Any other behavior that a Customer or Client deems to be inappropriate or offensive and notifies Driveline Leadership of their discord;
    and/or
29. Failing to abide by Driveline's Dispute Resolution Agreement.

Should an employee's performance, work habits, overall attitude, conduct or demeanor become unsatisfactory based on violations either of the above or of any other Company policies, rules or regulations, the employee will be subject to disciplinary action, up to and including termination.

**An Employee that is barred from Customer retail outlets by Customer Management is subject to immediate termination of employment as such restriction by Customer will not allow Employee to accomplish required Company activities.**

## Dispute Resolution Agreement

This Dispute Resolution Agreement ("Agreement") applies to any claims or disputes ("Disputes") arising out of, related to or connected with your application for at-will employment with Driveline Retail Merchandising, Inc. or one of its affiliates, subsidiaries or parent companies ("Driveline"), your at-will employment with Driveline and the termination of your at-will employment, except for claims specifically excluded under the terms of this Agreement. By accepting or continuing employment with Driveline after the Effective Date of this Agreement, you accept this Agreement and agree to follow the requirements for resolving disputes according to the terms in this Agreement, even if you do not electronically sign the Agreement.

This Agreement requires that all such Disputes be resolved only by a neutral arbitrator through final and binding arbitration and not by way of court or jury trial except as otherwise stated in this Agreement. Accordingly:

a) You and Driveline agree to arbitrate any Dispute (including all statutory claims and any state or federal claims) that may arise out of, relate to, or is in connection with your at-will employment with Driveline, including your application for employment and the termination of your at-will employment.

b) You and Driveline also agree to bring any Dispute in arbitration on an individual basis only, and not on a joint, class or collective action basis.

c) Further, you and Driveline agree that there will be no right or authority for any Dispute to be brought, heard or arbitrated as a joint action, class action or collective action.

The arbitration shall be conducted pursuant to the American Arbitration Association's employment arbitration rules, then in effect, before a single arbitrator licensed to practice law in the state in which you are or were employed. A copy of these Rules may be obtained from Driveline's Human Resources Department or at www.adr.org. The parties are entitled to conduct discovery to the fullest extent authorized by applicable law. The arbitration proceeding and all related documents will be confidential, to the fullest extent permitted by applicable law.

Disputes are to be initiated by filing a demand for arbitration within the time limit established by the applicable statute of limitations if the Dispute involves statutory rights. If no statutory rights are involved and to the fullest extent permitted by applicable law, such Disputes must be brought within one (1) year of the day on which you knew, or through reasonable diligence, should have known of the facts giving rise to the Dispute.

Prior to submitting a Dispute to arbitration, you and Driveline agree to first attempt to resolve the Dispute by the party initiating the Dispute notifying the other party in writing of the Dispute and explaining in reasonable detail the grounds for such Dispute; by giving the other party the opportunity to respond in writing to the Dispute within 10 days of receipt of the written notification; and by giving the other party the opportunity to meet and confer. Written notification to Driveline shall be made to disputeresolution@drivelineretail.com. If the Dispute is not resolved in this manner, the Dispute may then proceed to arbitration at the request of either party. The parties agree that the decision of the arbitrator shall be in writing, final and binding. Except for Disputes regarding rights conferred by statute or regulation and to the fullest extent permitted by applicable law, the parties agree that the law of the State of Texas shall apply to all other Disputes. Judgment on any award rendered by an arbitrator may be entered and enforced in any court having jurisdiction thereof, and in states where so required a court of competent jurisdiction must render judgment upon any award subject to this Agreement.

Driveline Exhibit 3 - Arbitration Agreements

Driveline Terms

This Agreement does not absolve you from any applicable administrative filing requirements or prevent you from:

a) filing a charge with or seeking relief from the National Labor Relations Board, the U.S. Department of Labor, or the U.S. Equal Employment Opportunity Commission; or

b) filing a claim with similar state agencies if applicable law allows you to do so.

This Agreement does not cover: claims for workers compensation, state disability or unemployment insurance benefits; claims under California Labor Code Private Attorneys General Act of 2004 (PAGA); any criminal complaint or proceeding filed by a governmental agency; claims for restitution or civil penalties owed by an employee for an act for which Driveline sought criminal prosecution; and/or any charges, claims or lawsuits pending as of January 5, 2019 ("Effective Date").

The parties agree that if a party brings an action that asserts only claims or Disputes subject to arbitration under this Agreement, any party thereafter prevailing on a motion to compel arbitration shall be entitled to that party's reasonable costs and attorneys' fees incurred in compelling arbitration. The parties agree that if a party brings an action that includes both claims and Disputes subject to arbitration under this Agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration shall be stayed until the claims and Disputes subject to arbitration are fully arbitrated and/or otherwise resolved. The parties further agree that in such a situation, the arbitrator's decision on the claims and Disputes subject to arbitration, including determinations as to disputed factual and legal issues, shall be dispositive and entitled to full force and effect in a separate or stayed lawsuit on the claims that by law are not subject to arbitration. Any and all disputes regarding the enforceability of this Agreement and/or the scope of claims and Disputes subject hereto are within the exclusive authority of the arbitrator to be appointed pursuant hereto.

For those Disputes subject to arbitration, Driveline shall be responsible for the arbitrator's fees and expenses. Each party shall pay its own costs and attorneys' fees, if any. However, if any party prevails on a claim which under applicable law affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and costs, the arbitrator may award reasonable attorneys' fees and costs to the prevailing party. Any dispute as to the reasonableness of any fee or cost shall be resolved by the arbitrator.

The parties acknowledge and agree that Driveline is engaged in transactions involving interstate commerce, that this Agreement is a part of and evidences a transaction involving commerce, and that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. �� 1 et seq. If any specific provision of this Agreement is deemed invalid or unenforceable, the remainder of this Agreement, including the Parties' mutual agreement to waive any right to a jury trial, shall remain binding and enforceable to the full extent permitted by applicable law.

---

**TERMS OF WORK ACCEPTANCE**

1. I UNDERSTAND AND AGREE THAT EACH OF THE REQUIREMENTS, TERMS AND CONDITIONS SET FORTH IN THESE TERMS OF WORK ACCEPTANCE (THE "TERMS AND CONDITIONS") ARE ESSENTIAL TERMS FOR THE WORK AND CONDITIONS FOR PAYMENT IN CONNECTION WITH THE WORK.

2. I AGREE TO COMPLETE THE WORK ON OR BY THE SCHEDULE DATE, AS SPECIFIED ABOVE, FOR COMPLETION OF THE WORK ("SCHEDULE DATE").

3. I UNDERSTAND THAT I MUST CONFIRM AND SCHEDULE MY ASSIGNED WORK NO LATER THAN NOON EST ON MONDAY OF EACH WEEK WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, INCLUDING "HARD DATED" PLANS THAT ARE PLAN-SPECIFIC. I FURTHER UNDERSTAND THAT IF I DO NOT CONFIRM THE WORK BY THE MONDAY NOON EST DEADLINE WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, OR FAIL TO COMPLETE THE CONFIRMED WORK ON THE SCHEDULE DATE, DRIVELINE RESERVES THE RIGHT TO REASSIGN THE WORK TO ANOTHER EMPLOYEE.

4. I UNDERSTAND THAT DRIVELINE HAS THE RIGHT TO CHANGE ASSIGNED WORK AT ANY TIME, INCLUDING STORE ASSIGNMENTS, BASED ON BUSINESS NEEDS, CONSISTENT WITH APPLICABLE LAW.

5. I AGREE TO COMPLETE THE WORK WITHIN THE TIME ALLOWED FOR THE WORK, AS SPECIFIED ABOVE. I UNDERSTAND AND AGREE THAT THE TIME ALLOWED FOR THE WORK INCLUDES ADMINISTRATIVE TIME (E.G., PREPARATION FOR ROUTES, COMPLETION OF WORK ORDERS, SUBMISSION OF DIGITAL PHOTOGRAPHS, ETC.) AS WELL AS STORE TIME ("INSTORE TIME"). I FURTHER UNDERSTAND AND AGREE THAT IF ADDITIONAL TIME IS NEEDED TO COMPLETE THE WORK, SUCH ADDITIONAL TIME MUST BE PRE-APPROVED BY MY MANAGER IN WRITING.

6. I AGREE TO TAKE TO THE STORE WHERE THE WORK IS TO BE DONE ALL REQUIRED DOCUMENTS TO COMPLETE THE WORK IN CONFORMANCE WITH DRIVELINE AND CUSTOMER REQUIREMENTS AND SPECIFICATIONS. I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL REIMBURSE ME FOR REQUIRED PRINTING ONLY, AS INDICATED IN THE WORK PLANS, AT A RATE OF 3 CENTS PER PAGE. I FURTHER UNDERSTAND AND AGREE THAT, OTHER THAN AS STATED HEREIN, I WILL NOT BE REIMBURSED FOR THE COST OF ANY OFFICE SUPPLIES USED BY ME IN CONNECTION WITH THE WORK (E.G., PRINTING PAPER, PRINTER TONER, ETC.) AND THAT THESE TYPES OF ADMINISTRATIVE COSTS ARE INCLUDED IN THE TOTAL AMOUNT I AM TO BE PAID AFTER COMPLETION OF THE WORK.

7. TO CONFIRM THAT I HAVE COMPLETED THE WORK, I AGREE TO COMPLETE AND ELECTRONICALLY SUBMIT NO LATER THAN 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," A COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IN THE EVENT I DO NOT SUBMIT THESE ITEMS TO DRIVELINE BY 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE TO CONFIRM THAT THE WORK HAS BEEN COMPLETED AS REQUIRED BY THESE TERMS AND CONDITIONS, THE WORK WILL BE REASSIGNED AND I WILL NOT BE PAID FOR THIS ASSIGNMENT.

8. I UNDERSTAND THAT DRIVELINE ENCOURAGES ME TO COMPLETE AND ELECTRONICALLY SUBMIT THE CONFIRMATION OF WORK COMPLETION AND OTHER REQUIRED ITEMS FROM THE CUSTOMER STORE USING DRIVELINE'S MOBILE APP.

9. I UNDERSTAND AND AGREE THAT PAYMENT FOR THE WORK IS EXPRESSLY CONDITIONED ON (1) COMPLETION OF THE WORK ON OR BY THE SCHEDULE DATE, AND (2) CONFIRMATION THAT I HAVE COMPLETED THE WORK, INCLUDING ELECTRONIC SUBMISSION OF DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IF I FAIL, FOR ANY REASON, TO EITHER COMPLETE THE WORK ON OR BY THE SCHEDULE DATE AND/OR FAIL TO CONFIRM THAT I HAVE COMPLETE THE WORK AS REQUIRED BY THESE TERMS AND CONDITIONS, SUCH FAILURE WILL VOID THE ASSIGNMENT AND/OR THE WORK WILL BE DEEMED NOT TO HAVE BEEN PERFORMED.

10. I UNDERSTAND AND AGREE THAT MILEAGE AND DRIVE TIME ("DRIVE TIME") I INCUR IN COMPLETING THE WORK WILL BE CALCULATED THROUGH THE USE OF A ROUTE OPTIMIZATION POWERED BY GOOGLE MAPS/MAP QUEST/OTHER SIMILAR MAPPING SERVICES ("ROUTE OPTIMIZATION"). I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL NOT PAY DRIVE TIME, OR REIMBURSE MILEAGE, FOR NORMAL, COMMUTE FROM MY HOME TO THE FIRST STORE ON A GIVEN DAY OR FROM THE LAST STORE TO MY HOME. I FURTHER UNDERSTAND THAT IF THE ROUTE OPTIMIZATION ON A GIVEN DAY SHOWS THAT MY HOME IS LOCATED MORE THAN 30 MILES FROM EITHER THE FIRST STORE OR THE LAST STORE, I WILL BE REIMBURSED FOR MY MILEAGE AND PAID FOR DRIVE TIME INCURRED BEYOND THE FIRST 30 MILES BETWEEN MY HOME AND THE FIRST STORE OR THE LAST STORE, AS APPLICABLE. ANY COMPENSABLE MILEAGE OR DRIVE TIME BETWEEN MY HOME AND EITHER THE FIRST OR LAST STORE WILL BE CALCULATED BY ROUTE OPTIMIZATION.

11. I UNDERSTAND THAT MILEAGE WILL BE REIMBURSED AT A RATE OF 20 CENTS PER MILE (EXCEPT WHERE GOVERNED BY RULE OF LAW), AS CALCULATED BY ROUTE OPTIMIZATION, AND I AGREE THAT THE RATE OF 20 CENTS PER MILE IS SUFFICIENT TO REIMBURSE ME FOR THE VEHICLE EXPENSES ACTUALLY AND NECESSARILY INCURRED BY ME IN COMPLETING THE WORK. I UNDERSTAND AND AGREE THAT I MAY BE PAID FOR ANY DRIVE TIME AT A LESSER HOURLY RATE THAN THE REGULAR HOURLY RATE THAT I WILL BE PAID FOR INSTORE TIME. I ALSO UNDERSTAND AND AGREE THAT THE AVERAGE HOURLY RATE FOR ALL ACTUAL TIME SPENT ON A PARTICULAR PROJECT, INCLUDING BOTH INSTORE AND DRIVE TIME, MAY BE LESS THAN THE REGULAR INSTORE HOURLY RATE. I FURTHER UNDERSTAND THAT ANY AMOUNTS PAID TO ME FOR MILEAGE OR DRIVE TIME WILL BE PAID IN COMPLIANCE WITH APPLICABLE FEDERAL AND STATE LAW.

12. I UNDERSTAND THAT I AM REQUIRED TO PERFORM ONLY THOSE SERVICES AS OUTLINED IN THE ASSIGNMENT FOR THE WORK. WHILE I MAY PERFORM SERVICES AT A CUSTOMER LOCATION, I UNDERSTAND THAT I AM TO TAKE DIRECTION FROM MY DRIVELINE MANAGER(S) ONLY. I FURTHER UNDERSTAND IF I PERFORM SERVICES OUTSIDE OF THE SCOPE OF THE WORK, I WILL NOT BE REIMBURSED FOR TIME SPENT ON THESE ACTIVITIES.

13. I UNDERSTAND THAT DRIVELINE IS MONITORING MY PERFORMANCE RELATIVE TO QUALITY OF WORK AND TIMELY COMPLETION/CONFIRMATION OF THE WORK. I FURTHER UNDERSTAND THAT DRIVELINE RESERVES THE RIGHT TO LIMIT ANY ACCESS TO AND ASSIGNMENT OF ADDITIONAL WORK BASED ON MY PERFORMANCE IN DRIVELINE'S SOLE DISCRETION.

14. I UNDERSTAND THAT DRIVELINE EMPLOYEES ARE PROHIBITED FROM ACCESSING DRIVELINE'S COMPUTER SYSTEMS (INCLUDING, BUT NOT LIMITED TO, ANY DRIVELINE MOBILE APP) BY USING ANOTHER DRIVELINE EMPLOYEE'S PERSONAL LOG- IN INFORMATION (I.E., LOG-IN NAME/EMAIL ADDRESS, EMPLOYEE PASSWORD, ETC.) FOR ANY PURPOSE INCLUDING, WITHOUT LIMITATION, FOR THE PURPOSE OF REPORTING ANOTHER EMPLOYEE'S COMPLETION OF WORK. I AGREE THAT I WILL NOT ATTEMPT TO ACCESS ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM BY USING ANOTHER EMPLOYEE'S PERSONAL LOG-IN INFORMATION, REGARDLESS OF WHETHER THE OTHER EMPLOYEE HAS CONSENTED TO MY USE OF HIS OR HER LOG-IN INFORMATION. I ALSO AGREE THAT I WILL NOT PROVIDE MY LOG-IN INFORMATION TO ANY OTHER DRIVELINE EMPLOYEE OR REQUEST ANY OTHER PERSON TO ACCESS

9/27/23, 4:39 PM                                                    Driveline Terms

ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM ON MY BEHALF FOR ANY PURPOSE.

15. I UNDERSTAND THAT BY AGREEING TO PERFORM WORK FOR, AND/OR CONTINUING EMPLOYMENT WITH, DRIVELINE, I ACCEPT AND AGREE TO COMPLY WITH THE DRIVELINE DISPUTE RESOLUTION AGREEMENT, WHICH REQUIRES MANDATORY ARBITRATION OF ANY DISPUTE COVERED BY THE DISPUTE RESOLUTION AGREEMENT. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE RECEIVED A COPY OF THE DRIVELINE DISPUTE RESOLUTION AGREEMENT.

ACCEPTED ON: 4/14/21 at 18:13 BY WEBB,KATHERINE

Driveline Exhibit 3 - Arbitration Agreements

## Code of Conduct

As a Company, employees are expected to accept certain responsibilities, follow acceptable business principles in matters of conduct, and exhibit a high degree of integrity at all times. This not only involves sincere respect for the rights and feelings of others, but also demands that employees refrain from any behavior that might be harmful to themselves, co-workers, the Company, or that might be viewed unfavorably by current or potential customers or by the public at large. Employee conduct reflects on the Company. Employees are, consequently, encouraged to observe the highest standards of professionalism at all times.

Types of behavior and conduct that the Company considers inappropriate include, but are not limited to, the following:

1. Falsifying employment or other Company records;
2. Violating the Company's Anti-Harassment Policy;
3. Violating state, federal or local laws and regulations;
4. Violating security or safety rules or failing to observe safety rules or the Company safety practices;
   failing to wear required safety equipment; tampering with the Company's equipment or safety equipment;
5. Soliciting gratuities from customers or clients;
6. Exhibiting excessive or unexcused absenteeism or tardiness;
7. Possessing firearms, weapons or explosives on Company or client property without authorization, in violation of Company policy, including but not limited to Driveline's Texas weapons policy, or while on duty;
8. Using Company property or supplies in an excessive, unnecessary or unauthorized way or for personal use;
9. Engaging in criminal conduct or acts of violence, or making threats of violence toward anyone on Company or client premises or when representing the Company; fighting or provoking a fight on Company property, or negligent damage of property;
10. Reporting to work under the influence of drugs or alcohol, and/or illegally manufacturing, possessing, using, selling, distributing or transporting drugs;
11. Committing theft or unauthorized possession of Company property or the property of fellow employees; possessing or removing any Company or client property, including documents, from the premises without prior permission from management; using Company equipment or property for personal reasons without proper authorization; using Company equipment for profit;
12. Giving confidential or proprietary Company information to competitors or other organizations, or to unauthorized Company employees; breaching confidentiality of personnel information;
13. Sharing, disclosing, or transferring usernames or passwords for Company systems without prior written authorization; employees must take reasonable measures to prevent unauthorized access to usernames and passwords for Company systems;
14. Using obscene, abusive or threatening language or gestures;
15. Acting in an insubordinate manner;
16. Spreading malicious gossip and/or rumors; engaging in behavior which creates discord and lack of harmony; interfering with another employee on the job; restricting work output or encouraging others to do the same;
17. Sleeping or loitering during working hours;
18. Fraternizing with co-workers or customer personnel while on duty or in a company provided travel accommodation location;
19. Soliciting during working hours and/or in work areas; selling merchandise or collecting funds of any kind for charities or others without authorization during business hours, or at a time or place that interferes with the work of another employee on Company or client premises;
20. Purchasing any product on client property while performing Driveline work;
21. Smoking in restricted areas or at non-designated times, in accordance with Company policy;
22. Performing services for Driveline while working on-duty for a client or customer;
23. Bringing Non-Driveline employees into work, this includes but is not limited to the following: children, spouses, boyfriends/girlfriends, friends, relatives, pets, etc.;
24. Bringing Driveline employees into work not already listed on team project in V3;
25. Subcontracting work to another individual, employed or not employed by the company;
26. Working without approved dress code, safety equipment, bringing personal ladders, step stools, or any unauthorized equipment into work;
27. Working outside of client preferred work hours;
28. Any other behavior that a Customer or Client deems to be inappropriate or offensive and notifies Driveline Leadership of their discord; and/or
29. Failing to abide by Driveline's Dispute Resolution Agreement.

Should an employee's performance, work habits, overall attitude, conduct or demeanor become unsatisfactory based on violations either of the above or of any other Company policies, rules or regulations, the employee will be subject to disciplinary action, up to and including termination.

**An Employee that is barred from Customer retail outlets by Customer Management is subject to immediate termination of employment as such restriction by Customer will not allow Employee to accomplish required Company activities.**

## Dispute Resolution Agreement

This Dispute Resolution Agreement ("Agreement") applies to any claims or disputes ("Disputes") arising out of, related to or connected with your application for at-will employment with Driveline Retail Merchandising, Inc. or one of its affiliates, subsidiaries or parent companies ("Driveline"), your at-will employment with Driveline and the termination of your at-will employment, except for claims specifically excluded under the terms of this Agreement. By accepting or continuing employment with Driveline after the Effective Date of this Agreement, you accept this Agreement and agree to follow the requirements for resolving disputes according to the terms in this Agreement, even if you do not electronically sign the Agreement.

This Agreement requires that all such Disputes be resolved only by a neutral arbitrator through final and binding arbitration and not by way of court or jury trial except as otherwise stated in this Agreement. Accordingly:

a) You and Driveline agree to arbitrate any Dispute (including all statutory claims and any state or federal claims) that may arise out of, relate to, or is in connection with your at-will employment with Driveline, including your application for employment and the termination of your at-will employment.

b) You and Driveline also agree to bring any Dispute in arbitration on an individual basis only, and not on a joint, class or collective action basis.

c) Further, you and Driveline agree that there will be no right or authority for any Dispute to be brought, heard or arbitrated as a joint action, class action or collective action.

The arbitration shall be conducted pursuant to the American Arbitration Association's employment arbitration rules, then in effect, before a single arbitrator licensed to practice law in the state in which you are or were employed. A copy of these Rules may be obtained from Driveline's Human Resources Department or at www.adr.org. The parties are entitled to conduct discovery to the fullest extent authorized by applicable law. The arbitration proceeding and all related documents will be confidential, to the fullest extent permitted by applicable law.

Disputes are to be initiated by filing a demand for arbitration within the time limit established by the applicable statute of limitations if the Dispute involves statutory rights. If no statutory rights are involved and to the fullest extent permitted by applicable law, such Disputes must be brought within one (1) year of the day on which you knew, or through reasonable diligence, should have known of the facts giving rise to the Dispute.

Prior to submitting a Dispute to arbitration, you and Driveline agree to first attempt to resolve the Dispute by the party initiating the Dispute notifying the other party in writing of the Dispute and explaining in reasonable detail the grounds for such Dispute; by giving the other party the opportunity to respond in writing to the Dispute within 10 days of receipt of the written notification; and by giving the other party the opportunity to meet and confer. Written notification to Driveline shall be made to disputeresolution@drivelineretail.com. If the Dispute is not resolved in this manner, the Dispute may then proceed to arbitration at the request of either party. The parties agree that the decision of the arbitrator shall be in writing, final and binding. Except for Disputes regarding rights conferred by statute or regulation and to the fullest extent permitted by applicable law, the parties agree that the law of the State of Texas shall apply to all other Disputes. Judgment on any award rendered by an arbitrator may be entered and enforced in any court having jurisdiction thereof, and in states where so required a court of competent jurisdiction must render judgment upon any award subject to this Agreement.

Driveline Exhibit 3 - Arbitration Agreements

9/27/23, 4:40 PM                                                                 Driveline Terms

This Agreement does not absolve you from any applicable administrative filing requirements or prevent you from:

a) filing a charge with or seeking relief from the National Labor Relations Board, the U.S. Department of Labor, or the U.S. Equal Employment Opportunity Commission; or

b) filing a claim with similar state agencies if applicable law allows you to do so.

This Agreement does not cover: claims for workers compensation, state disability or unemployment insurance benefits; claims under California Labor Code Private Attorneys General Act of 2004 (PAGA); any criminal complaint or proceeding filed by a governmental agency; claims for restitution or civil penalties owed by an employee for an act for which Driveline sought criminal prosecution; and/or any charges, claims or lawsuits pending as of January 5, 2019 ("Effective Date").

The parties agree that if a party brings an action that asserts only claims or Disputes subject to arbitration under this Agreement, any party thereafter prevailing on a motion to compel arbitration shall be entitled to that party's reasonable costs and attorneys' fees incurred in compelling arbitration. The parties agree that if a party brings an action that includes both claims and Disputes subject to arbitration under this Agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration shall be stayed until the claims and Disputes subject to arbitration are fully arbitrated and/or otherwise resolved. The parties further agree that in such a situation, the arbitrator's decision on the claims and Disputes subject to arbitration, including determinations as to disputed factual and legal issues, shall be dispositive and entitled to full force and effect in a separate or stayed lawsuit on the claims that by law are not subject to arbitration. Any and all disputes regarding the enforceability of this Agreement and/or the scope of claims and Disputes subject hereto are within the exclusive authority of the arbitrator to be appointed pursuant hereto.

For those Disputes subject to arbitration, Driveline shall be responsible for the arbitrator's fees and expenses. Each party shall pay its own costs and attorneys' fees, if any. However, if any party prevails on a claim which under applicable law affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and costs, the arbitrator may award reasonable attorneys' fees and costs to the prevailing party. Any dispute as to the reasonableness of any fee or cost shall be resolved by the arbitrator.

The parties acknowledge and agree that Driveline is engaged in transactions involving interstate commerce, that this Agreement is a part of and evidences a transaction involving commerce, and that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. �� 1 et seq. If any specific provision of this Agreement is deemed invalid or unenforceable, the remainder of this Agreement, including the Parties' mutual agreement to waive any right to a jury trial, shall remain binding and enforceable to the full extent permitted by applicable law.

---

**TERMS OF WORK ACCEPTANCE**

1. I UNDERSTAND AND AGREE THAT EACH OF THE REQUIREMENTS, TERMS AND CONDITIONS SET FORTH IN THESE TERMS OF WORK ACCEPTANCE (THE "TERMS AND CONDITIONS") ARE ESSENTIAL TERMS FOR THE WORK AND CONDITIONS FOR PAYMENT IN CONNECTION WITH THE WORK.

2. I AGREE TO COMPLETE THE WORK ON OR BY THE SCHEDULE DATE, AS SPECIFIED ABOVE, FOR COMPLETION OF THE WORK ("SCHEDULE DATE").

3. I UNDERSTAND THAT I MUST CONFIRM AND SCHEDULE MY ASSIGNED WORK NO LATER THAN NOON EST ON MONDAY OF EACH WEEK WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, INCLUDING "HARD DATED" PLANS THAT ARE PLAN-SPECIFIC. I FURTHER UNDERSTAND THAT IF I DO NOT CONFIRM THE WORK BY THE MONDAY NOON EST DEADLINE WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, OR FAIL TO COMPLETE THE CONFIRMED WORK ON THE SCHEDULE DATE, DRIVELINE RESERVES THE RIGHT TO REASSIGN THE WORK TO ANOTHER EMPLOYEE.

4. I UNDERSTAND THAT DRIVELINE HAS THE RIGHT TO CHANGE ASSIGNED WORK AT ANY TIME, INCLUDING STORE ASSIGNMENTS, BASED ON BUSINESS NEEDS, CONSISTENT WITH APPLICABLE LAW.

5. I AGREE TO COMPLETE THE WORK WITHIN THE TIME ALLOWED FOR THE WORK, AS SPECIFIED ABOVE. I UNDERSTAND AND AGREE THAT THE TIME ALLOWED FOR THE WORK INCLUDES ADMINISTRATIVE TIME (E.G., PREPARATION FOR ROUTES, COMPLETION OF WORK ORDERS, SUBMISSION OF DIGITAL PHOTOGRAPHS, ETC.) AS WELL AS STORE TIME ("INSTORE TIME"). I FURTHER UNDERSTAND AND AGREE THAT IF ADDITIONAL TIME IS NEEDED TO COMPLETE THE WORK, SUCH ADDITIONAL TIME MUST BE PRE-APPROVED BY MY MANAGER IN WRITING.

6. I AGREE TO TAKE TO THE STORE WHERE THE WORK IS TO BE DONE ALL REQUIRED DOCUMENTS TO COMPLETE THE WORK IN CONFORMANCE WITH DRIVELINE AND CUSTOMER REQUIREMENTS AND SPECIFICATIONS. I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL REIMBURSE ME FOR REQUIRED PRINTING ONLY, AS INDICATED IN THE WORK PLANS, AT A RATE OF 3 CENTS PER PAGE. I FURTHER UNDERSTAND AND AGREE THAT, OTHER THAN AS STATED HEREIN, I WILL NOT BE REIMBURSED FOR THE COST OF ANY OFFICE SUPPLIES USED BY ME IN CONNECTION WITH THE WORK (E.G., PRINTING PAPER, PRINTER TONER, ETC.) AND THAT THESE TYPES OF ADMINISTRATIVE COSTS ARE INCLUDED IN THE TOTAL AMOUNT I AM TO BE PAID AFTER COMPLETION OF THE WORK.

7. TO CONFIRM THAT I HAVE COMPLETED THE WORK, I AGREE TO COMPLETE AND ELECTRONICALLY SUBMIT NO LATER THAN 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," A COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IN THE EVENT I DO NOT SUBMIT THESE ITEMS TO DRIVELINE BY 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE TO CONFIRM THAT THE WORK HAS BEEN COMPLETED AS REQUIRED BY THESE TERMS AND CONDITIONS, THE WORK WILL BE REASSIGNED AND I WILL NOT BE PAID FOR THIS ASSIGNMENT.

8. I UNDERSTAND THAT DRIVELINE ENCOURAGES ME TO COMPLETE AND ELECTRONICALLY SUBMIT THE CONFIRMATION OF WORK COMPLETION AND OTHER REQUIRED ITEMS FROM THE CUSTOMER STORE USING DRIVELINE'S MOBILE APP.

9. I UNDERSTAND AND AGREE THAT PAYMENT FOR THE WORK IS EXPRESSLY CONDITIONED ON (1) COMPLETION OF THE WORK ON OR BY THE SCHEDULE DATE, AND (2) CONFIRMATION THAT I HAVE COMPLETED THE WORK, INCLUDING ELECTRONIC SUBMISSION OF DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IF I FAIL, FOR ANY REASON, TO EITHER COMPLETE THE WORK ON OR BY THE SCHEDULE DATE AND/OR FAIL TO CONFIRM THAT I HAVE COMPLETED THE WORK AS REQUIRED BY THESE TERMS AND CONDITIONS, SUCH FAILURE WILL VOID THE ASSIGNMENT AND/OR THE WORK WILL BE DEEMED NOT TO HAVE BEEN PERFORMED.

10. I UNDERSTAND AND AGREE THAT MILEAGE AND DRIVE TIME ("DRIVE TIME") INCUR IN COMPLETING THE WORK WILL BE CALCULATED THROUGH THE USE OF A ROUTE OPTIMIZATION POWERED BY GOOGLE MAPS/MAP QUEST/OTHER SIMILAR MAPPING SERVICES ("ROUTE OPTIMIZATION"). I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL NOT PAY DRIVE TIME, OR REIMBURSE MILEAGE, FOR NORMAL COMMUTE FROM MY HOME TO THE FIRST STORE ON A GIVEN DAY OR FROM THE LAST STORE TO MY HOME. I FURTHER UNDERSTAND THAT IF THE ROUTE OPTIMIZATION ON A GIVEN DAY SHOWS THAT MY HOME IS LOCATED MORE THAN 30 MILES FROM EITHER THE FIRST STORE OR THE LAST STORE, I WILL BE REIMBURSED FOR MY MILEAGE AND PAID FOR DRIVE TIME INCURRED BEYOND THE FIRST 30 MILES BETWEEN MY HOME AND THE FIRST STORE OR THE LAST STORE, AS APPLICABLE. ANY COMPENSABLE MILEAGE OR DRIVE TIME BETWEEN MY HOME AND EITHER THE FIRST OR LAST STORE WILL BE CALCULATED BY ROUTE OPTIMIZATION.

11. I UNDERSTAND THAT MILEAGE WILL BE REIMBURSED AT A RATE OF 20 CENTS PER MILE (EXCEPT WHERE GOVERNED BY RULE OF LAW), AS CALCULATED BY ROUTE OPTIMIZATION, AND I AGREE THAT THE RATE OF 20 CENTS PER MILE IS SUFFICIENT TO REIMBURSE ME FOR THE VEHICLE EXPENSES ACTUALLY AND NECESSARILY INCURRED BY ME IN COMPLETING THE WORK. I UNDERSTAND AND AGREE THAT I MAY BE PAID FOR MY DRIVE TIME AT A LESSER HOURLY RATE THAN THE REGULAR HOURLY RATE THAT I WILL BE PAID FOR INSTORE TIME. I ALSO UNDERSTAND AND AGREE THAT THE AVERAGE HOURLY RATE FOR ALL ACTUAL TIME SPENT ON A PARTICULAR PROJECT, INCLUDING BOTH INSTORE AND DRIVE TIME, MAY BE LESS THAN THE REGULAR INSTORE HOURLY RATE. I FURTHER UNDERSTAND THAT ANY AMOUNTS PAID TO ME FOR MILEAGE OR DRIVE TIME WILL BE PAID IN COMPLIANCE WITH APPLICABLE FEDERAL AND STATE LAW.

12. I UNDERSTAND THAT I AM REQUIRED TO PERFORM ONLY THOSE SERVICES AS OUTLINED IN THE ASSIGNMENT FOR THE WORK. WHILE I MAY PERFORM SERVICES AT A CUSTOMER LOCATION, I UNDERSTAND THAT I AM TO TAKE DIRECTION FROM MY DRIVELINE MANAGER(S) ONLY. I FURTHER UNDERSTAND IF I PERFORM SERVICES OUTSIDE OF THE SCOPE OF THE WORK, I WILL NOT BE REIMBURSED FOR TIME SPENT ON THESE ACTIVITIES.

13. I UNDERSTAND THAT DRIVELINE IS MONITORING MY PERFORMANCE RELATIVE TO QUALITY OF WORK AND TIMELY COMPLETION/CONFIRMATION OF THE WORK. I FURTHER UNDERSTAND THAT DRIVELINE RESERVES THE RIGHT TO LIMIT MY ACCESS TO AND ASSIGNMENT OF ADDITIONAL WORK BASED ON MY PERFORMANCE IN DRIVELINE'S SOLE DISCRETION.

14. I UNDERSTAND THAT DRIVELINE EMPLOYEES ARE PROHIBITED FROM ACCESSING DRIVELINE'S COMPUTER SYSTEMS (INCLUDING, BUT NOT LIMITED TO, ANY DRIVELINE MOBILE APP) BY USING ANOTHER DRIVELINE EMPLOYEE'S PERSONAL LOG- IN INFORMATION (I.E., LOG-IN NAME/EMAIL ADDRESS, EMPLOYEE PASSWORD, ETC.) FOR ANY PURPOSE INCLUDING, WITHOUT LIMITATION, FOR THE PURPOSE OF REPORTING ANOTHER EMPLOYEE'S COMPLETION OF WORK. I AGREE THAT I WILL NOT ATTEMPT TO ACCESS ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM BY USING ANOTHER EMPLOYEE'S PERSONAL LOG-IN INFORMATION, REGARDLESS OF WHETHER THE OTHER EMPLOYEE HAS CONSENTED TO MY USE OF HIS OR HER LOG-IN INFORMATION. I ALSO AGREE THAT I WILL NOT PROVIDE MY LOG-IN INFORMATION TO ANY OTHER DRIVELINE EMPLOYEE OR REQUEST ANY OTHER PERSON TO ACCESS

Driveline Exhibit 3 - Arbitration Agreements

Driveline Terms

ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM ON MY BEHALF FOR ANY PURPOSE.

15. I UNDERSTAND THAT BY AGREEING TO PERFORM WORK FOR, AND/OR CONTINUING EMPLOYMENT WITH, DRIVELINE, I ACCEPT AND AGREE TO COMPLY WITH THE DRIVELINE DISPUTE RESOLUTION AGREEMENT, WHICH REQUIRES MANDATORY ARBITRATION OF ANY DISPUTE COVERED BY THE DISPUTE RESOLUTION AGREEMENT. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE RECEIVED A COPY OF THE DRIVELINE DISPUTE RESOLUTION AGREEMENT.

ACCEPTED ON: 5/15/20 at 11:15 BY WEBSTER,JERMAINE

Driveline Exhibit 3 - Arbitration Agreements

Driveline Terms

## Code of Conduct

As a Company, employees are expected to accept certain responsibilities, follow acceptable business principles in matters of conduct, and exhibit a high degree of integrity at all times. This not only involves sincere respect for the rights and feelings of others, but also demands that employees refrain from any behavior that might be harmful to themselves, co-workers, the Company, or that might be viewed unfavorably by current or potential customers or by the public at large. Employee conduct reflects on the Company. Employees are, consequently, encouraged to observe the highest standards of professionalism at all times.

Types of behavior and conduct that the Company considers inappropriate include, but are not limited to, the following:

1. Falsifying employment or other Company records;
2. Violating the Company's Anti-Harassment Policy;
3. Violating state, federal or local laws and regulations;
4. Violating security or safety rules or failing to observe safety rules or the Company safety practices;
   failing to wear required safety equipment; tampering with the Company's equipment or safety equipment;
5. Soliciting gratuities from customers or clients;
6. Exhibiting excessive or unexcused absenteeism or tardiness;
7. Possessing firearms, weapons or explosives on Company or client property without authorization, in violation of Company policy, including but not limited to Driveline's Texas weapons policy, or while on duty;
8. Using Company property or supplies in an excessive, unnecessary or unauthorized way or for personal use;
9. Engaging in criminal conduct or acts of violence, or making threats of violence toward anyone on Company or client premises or when representing the Company; fighting or provoking a fight on Company property, or negligent damage of property;
10. Reporting to work under the influence of drugs or alcohol, and/or illegally manufacturing, possessing, using, selling, distributing or transporting drugs;
11. Committing theft or unauthorized possession of Company property or the property of fellow employees;
    possessing or removing any Company or client property, including documents, from the premises without prior permission from management; using Company equipment or property for personal reasons without proper authorization; using Company equipment for profit;
12. Giving confidential or proprietary Company information to competitors or other organizations, or to unauthorized Company employees;
    breaching confidentiality of personnel information;
13. Sharing, disclosing, or transferring usernames or passwords for Company systems without prior written authorization;
    employees must take reasonable measures to prevent unauthorized access to usernames and passwords for Company systems;
14. Using obscene, abusive or threatening language or gestures;
15. Acting in an insubordinate manner;
16. Spreading malicious gossip and/or rumors;
    engaging in behavior which creates discord and lack of harmony; interfering with another employee on the job; restricting work output or encouraging others to do the same;
17. Sleeping or loitering during working hours;
18. Fraternizing with co-workers or customer personnel while on duty or in a company provided travel accommodation location;
19. Soliciting during working hours and/or in work areas;
    selling merchandise or collecting funds of any kind for charities or others without authorization during business hours, or at a time or place that interferes with the work of another employee on Company or client premises;
20. Purchasing any product on client property while performing Driveline work;
21. Smoking in restricted areas or at non-designated times, in accordance with Company policy;
22. Performing services for Driveline while working on-duty for a client or customer;
23. Bringing Non-Driveline employees into work, this includes but is not limited to the following: children, spouses, boyfriends/girlfriends, friends, relatives, pets, etc.;
24. Bringing Driveline employees into work not already listed on team project in V3;
25. Subcontracting work to another individual, employed or not employed by the company;
26. Working without approved dress code, safety equipment, bringing personal ladders, step stools, or any unauthorized equipment into work;
27. Working outside of client preferred work hours;
28. Any other behavior that a Customer or Client deems to be inappropriate or offensive and notifies Driveline Leadership of their discord;
    and/or
29. Failing to abide by Driveline's Dispute Resolution Agreement.

Should an employee's performance, work habits, overall attitude, conduct or demeanor become unsatisfactory based on violations either of the above or of any other Company policies, rules or regulations, the employee will be subject to disciplinary action, up to and including termination.

An Employee that is barred from Customer retail outlets by Customer Management is subject to immediate termination of employment as such restriction by Customer will not allow Employee to accomplish required Company activities.

## Dispute Resolution Agreement

This Dispute Resolution Agreement ("Agreement") applies to any claims or disputes ("Disputes") arising out of, related to or connected with your application for at-will employment with Driveline Retail Merchandising, Inc. or one of its affiliates, subsidiaries or parent companies ("Driveline"), your at-will employment with Driveline and the termination of your at-will employment, except for claims specifically excluded under the terms of this Agreement. By accepting or continuing employment with Driveline after the Effective Date of this Agreement, you accept this Agreement and agree to follow the requirements for resolving disputes according to the terms in this Agreement, even if you do not electronically sign the Agreement.

This Agreement requires that all such Disputes be resolved only by a neutral arbitrator through final and binding arbitration and not by way of court or jury trial except as otherwise stated in this Agreement. Accordingly:

a) You and Driveline agree to arbitrate any Dispute (including all statutory claims and any state or federal claims) that may arise out of, relate to, or is in connection with your at-will employment with Driveline, including your application for employment and the termination of your at-will employment.

b) You and Driveline also agree to bring any Dispute in arbitration on an individual basis only, and not on a joint, class or collective action basis.

c) Further, you and Driveline agree that there will be no right or authority for any Dispute to be brought, heard or arbitrated as a joint action, class action or collective action.

The arbitration shall be conducted pursuant to the American Arbitration Association's employment arbitration rules, then in effect, before a single arbitrator licensed to practice law in the state in which you are or were employed. A copy of these Rules may be obtained from Driveline's Human Resources Department or at www.adr.org. The parties are entitled to conduct discovery to the fullest extent authorized by applicable law. The arbitration proceeding and all related documents will be confidential, to the fullest extent permitted by applicable law.

Disputes are to be initiated by filing a demand for arbitration within the time limit established by the applicable statute of limitations if the Dispute involves statutory rights. If no statutory rights are involved and to the fullest extent permitted by applicable law, such Disputes must be brought within one (1) year of the day on which you knew, or through reasonable diligence, should have known of the facts giving rise to the Dispute.

Prior to submitting a Dispute to arbitration, you and Driveline agree to first attempt to resolve the Dispute by the party initiating the Dispute notifying the other party in writing of the Dispute and explaining in reasonable detail the grounds for such Dispute; by giving the other party the opportunity to respond in writing to the Dispute within 10 days of receipt of the written notification; and by giving the other party the opportunity to meet and confer. Written notification to Driveline shall be made to disputeresolution@drivelineretail.com. If the Dispute is not resolved in this manner, the Dispute may then proceed to arbitration at the request of either party. The parties agree that the decision of the arbitrator shall be in writing, final and binding. Except for Disputes regarding rights conferred by statute or regulation and to the fullest extent permitted by applicable law, the parties agree that the law of the State of Texas shall apply to all other Disputes. Judgment on any award rendered by an arbitrator may be entered and enforced in any court having jurisdiction thereof, and in states where so required a court of competent jurisdiction must render judgment upon any award subject to this Agreement.

1/3

Driveline Exhibit 3 - Arbitration Agreements

9/27/23, 4:41 PM                                              Driveline Terms

This Agreement does not absolve you from any applicable administrative filing requirements or prevent you from:

a) filing a charge with or seeking relief from the National Labor Relations Board, the U.S. Department of Labor, or the U.S. Equal Employment Opportunity Commission; or

b) filing a claim with similar state agencies if applicable law allows you to do so.

This Agreement does not cover: claims for workers compensation, state disability or unemployment insurance benefits; claims under California Labor Code Private Attorneys General Act of 2004 (PAGA); any criminal complaint or proceeding filed by a governmental agency; claims for restitution or civil penalties owed by an employee for an act for which Driveline sought criminal prosecution; and/or any charges, claims or lawsuits pending as of January 5, 2019 ("Effective Date").

The parties agree that if a party brings an action that asserts only claims or Disputes subject to arbitration under this Agreement, any party thereafter prevailing on a motion to compel arbitration shall be entitled to that party's reasonable costs and attorneys' fees incurred in compelling arbitration. The parties agree that if a party brings an action that includes both claims and Disputes subject to arbitration under this Agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration shall be stayed until the claims and Disputes subject to arbitration are fully arbitrated and/or otherwise resolved. The parties further agree that in such a situation, the arbitrator's decision on the claims and Disputes subject to arbitration, including determinations as to disputed factual and legal issues, shall be dispositive and entitled to full force and effect in a separate or stayed lawsuit on the claims that by law are not subject to arbitration. Any and all disputes regarding the enforceability of this Agreement and/or the scope of claims and Disputes subject hereto are within the exclusive authority of the arbitrator to be appointed pursuant hereto.

For those Disputes subject to arbitration, Driveline shall be responsible for the arbitrator's fees and expenses. Each party shall pay its own costs and attorneys' fees, if any. However, if any party prevails on a claim which under applicable law affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and costs, the arbitrator may award reasonable attorneys' fees and costs to the prevailing party. Any dispute as to the reasonableness of any fee or cost shall be resolved by the arbitrator.

The parties acknowledge and agree that Driveline is engaged in transactions involving interstate commerce, that this Agreement is a part of and evidences a transaction involving commerce, and that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. �� 1 et seq. If any specific provision of this Agreement is deemed invalid or unenforceable, the remainder of this Agreement, including the Parties' mutual agreement to waive any right to a jury trial, shall remain binding and enforceable to the full extent permitted by applicable law.

**TERMS OF WORK ACCEPTANCE**

1. I UNDERSTAND AND AGREE THAT EACH OF THE REQUIREMENTS, TERMS AND CONDITIONS SET FORTH IN THESE TERMS OF WORK ACCEPTANCE (THE "TERMS AND CONDITIONS") ARE ESSENTIAL TERMS FOR THE WORK AND CONDITIONS FOR PAYMENT IN CONNECTION WITH THE WORK.

2. I AGREE TO COMPLETE THE WORK ON OR BY THE SCHEDULE DATE, AS SPECIFIED ABOVE, FOR COMPLETION OF THE WORK ("SCHEDULE DATE").

3. I UNDERSTAND THAT I MUST CONFIRM AND SCHEDULE MY ASSIGNED WORK NO LATER THAN NOON EST ON MONDAY OF EACH WEEK WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, INCLUDING "HARD DATED" PLANS THAT ARE PLAN-SPECIFIC. I FURTHER UNDERSTAND THAT IF I DO NOT CONFIRM THE WORK BY THE MONDAY NOON EST DEADLINE WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, OR FAIL TO COMPLETE THE CONFIRMED WORK ON THE SCHEDULE DATE, DRIVELINE RESERVES THE RIGHT TO REASSIGN THE WORK TO ANOTHER EMPLOYEE.

4. I UNDERSTAND THAT DRIVELINE HAS THE RIGHT TO CHANGE ASSIGNED WORK AT ANY TIME, INCLUDING STORE ASSIGNMENTS, BASED ON BUSINESS NEEDS, CONSISTENT WITH APPLICABLE LAW.

5. I AGREE TO COMPLETE THE WORK WITHIN THE TIME ALLOWED FOR THE WORK, AS SPECIFIED ABOVE. I UNDERSTAND AND AGREE THAT THE TIME ALLOWED FOR THE WORK INCLUDES ADMINISTRATIVE TIME (E.G., PREPARATION FOR ROUTES, COMPLETION OF WORK ORDERS, SUBMISSION OF DIGITAL PHOTOGRAPHS, ETC.) AS WELL AS STORE TIME ("INSTORE TIME"). I FURTHER UNDERSTAND AND AGREE THAT IF ADDITIONAL TIME IS NEEDED TO COMPLETE THE WORK, SUCH ADDITIONAL TIME MUST BE PRE-APPROVED BY MY MANAGER IN WRITING.

6. I AGREE TO TAKE TO THE STORE WHERE THE WORK IS TO BE DONE ALL REQUIRED DOCUMENTS TO COMPLETE THE WORK IN CONFORMANCE WITH DRIVELINE AND CUSTOMER REQUIREMENTS AND SPECIFICATIONS. I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL REIMBURSE ME FOR REQUIRED PRINTING ONLY, AS INDICATED IN THE WORK PLANS, AT A RATE OF 3 CENTS PER PAGE. I FURTHER UNDERSTAND AND AGREE THAT, OTHER THAN AS STATED HEREIN, I WILL NOT BE REIMBURSED FOR THE COST OF ANY OFFICE SUPPLIES USED BY ME IN CONNECTION WITH THE WORK (E.G., PRINTING PAPER, PRINTER TONER, ETC.) AND THAT THESE TYPES OF ADMINISTRATIVE COSTS ARE INCLUDED IN THE TOTAL AMOUNT I AM TO BE PAID AFTER COMPLETION OF THE WORK.

7. TO CONFIRM THAT I HAVE COMPLETED THE WORK, I AGREE TO COMPLETE AND ELECTRONICALLY SUBMIT NO LATER THAN 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," A COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IN THE EVENT I DO NOT SUBMIT THESE ITEMS TO DRIVELINE BY 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE TO CONFIRM THAT THE WORK HAS BEEN COMPLETED AS REQUIRED BY THESE TERMS AND CONDITIONS, THE WORK WILL BE REASSIGNED AND I WILL NOT BE PAID FOR THIS ASSIGNMENT.

8. I UNDERSTAND THAT DRIVELINE ENCOURAGES ME TO COMPLETE AND ELECTRONICALLY SUBMIT THE CONFIRMATION OF WORK COMPLETION AND OTHER REQUIRED ITEMS FROM THE CUSTOMER STORE USING DRIVELINE'S MOBILE APP.

9. I UNDERSTAND AND AGREE THAT PAYMENT FOR THE WORK IS EXPRESSLY CONDITIONED ON (1) COMPLETION OF THE WORK ON OR BY THE SCHEDULE DATE, AND (2) CONFIRMATION THAT I HAVE COMPLETED THE WORK, INCLUDING ELECTRONIC SUBMISSION OF DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IF I FAIL, FOR ANY REASON, TO EITHER COMPLETE THE WORK ON OR BY THE SCHEDULE DATE AND/OR FAIL TO CONFIRM THAT I HAVE COMPLETED THE WORK AS REQUIRED BY THESE TERMS AND CONDITIONS, SUCH FAILURE WILL VOID THE ASSIGNMENT AND/OR THE WORK WILL BE DEEMED NOT TO HAVE BEEN PERFORMED.

10. I UNDERSTAND AND AGREE THAT MILEAGE AND DRIVE TIME ("DRIVE TIME") I INCUR IN COMPLETING THE WORK WILL BE CALCULATED THROUGH THE USE OF A ROUTE OPTIMIZATION POWERED BY GOOGLE MAPS/MAP QUEST/OTHER SIMILAR MAPPING SERVICES ("ROUTE OPTIMIZATION"). I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL NOT PAY DRIVE TIME, OR REIMBURSE MILEAGE, FOR NORMAL COMMUTE FROM MY HOME TO THE FIRST STORE ON A GIVEN DAY OR FROM THE LAST STORE TO MY HOME. I FURTHER UNDERSTAND THAT IF THE ROUTE OPTIMIZATION ON A GIVEN DAY SHOWS THAT MY HOME IS LOCATED MORE THAN 30 MILES FROM EITHER THE FIRST STORE OR THE LAST STORE, I WILL BE REIMBURSED FOR MY MILEAGE AND PAID FOR DRIVE TIME INCURRED BEYOND THE FIRST 30 MILES BETWEEN MY HOME AND THE FIRST STORE OR THE LAST STORE, AS APPLICABLE. ANY COMPENSABLE MILEAGE OR DRIVE TIME BETWEEN MY HOME AND EITHER THE FIRST OR LAST STORE WILL BE CALCULATED BY ROUTE OPTIMIZATION.

11. I UNDERSTAND THAT MILEAGE WILL BE REIMBURSED AT A RATE OF 20 CENTS PER MILE (EXCEPT WHERE GOVERNED BY RULE OF LAW), AS CALCULATED BY ROUTE OPTIMIZATION, AND I AGREE THAT THE RATE OF 20 CENTS PER MILE IS SUFFICIENT TO REIMBURSE ME FOR THE VEHICLE EXPENSES ACTUALLY AND NECESSARILY INCURRED BY ME IN COMPLETING THE WORK. I UNDERSTAND AND AGREE THAT I MAY BE PAID FOR ANY DRIVE TIME AT A LESSER HOURLY RATE THAN THE REGULAR HOURLY RATE THAT I WILL BE PAID FOR INSTORE TIME. I ALSO UNDERSTAND AND AGREE THAT THE AVERAGE HOURLY RATE FOR ALL ACTUAL TIME SPENT ON A PARTICULAR PROJECT, INCLUDING BOTH INSTORE AND DRIVE TIME, MAY BE LESS THAN THE REGULAR INSTORE HOURLY RATE. I FURTHER UNDERSTAND THAT ANY AMOUNTS PAID TO ME FOR MILEAGE OR DRIVE TIME WILL BE PAID IN COMPLIANCE WITH APPLICABLE FEDERAL AND STATE LAW.

12. I UNDERSTAND THAT I AM REQUIRED TO PERFORM ONLY THOSE SERVICES AS OUTLINED IN THE ASSIGNMENT FOR THE WORK. WHILE I MAY PERFORM SERVICES AT A CUSTOMER LOCATION, I UNDERSTAND THAT I AM TO TAKE DIRECTION FROM MY DRIVELINE MANAGER(S) ONLY. I FURTHER UNDERSTAND IF I PERFORM SERVICES OUTSIDE OF THE SCOPE OF THE WORK, I WILL NOT BE REIMBURSED FOR TIME SPENT ON THESE ACTIVITIES.

13. I UNDERSTAND THAT DRIVELINE IS MONITORING MY PERFORMANCE RELATIVE TO QUALITY OF WORK AND TIMELY COMPLETION/CONFIRMATION OF THE WORK. I FURTHER UNDERSTAND THAT DRIVELINE RESERVES THE RIGHT TO LIMIT MY ACCESS TO AND ADDITIONAL WORK BASED ON MY PERFORMANCE IN DRIVELINE'S SOLE DISCRETION.

14. I UNDERSTAND THAT DRIVELINE EMPLOYEES ARE PROHIBITED FROM ACCESSING DRIVELINE'S COMPUTER SYSTEMS (INCLUDING, BUT NOT LIMITED TO, ANY DRIVELINE MOBILE APP) BY USING ANOTHER DRIVELINE EMPLOYEE'S PERSONAL LOG- IN INFORMATION (I.E., LOG-IN NAME/EMAIL ADDRESS, EMPLOYEE PASSWORD, ETC.) FOR ANY PURPOSE INCLUDING, WITHOUT LIMITATION, FOR THE PURPOSE OF REPORTING ANOTHER EMPLOYEE'S COMPLETION OF WORK. I AGREE THAT I WILL NOT ATTEMPT TO ACCESS ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM BY USING ANOTHER EMPLOYEE'S PERSONAL LOG-IN INFORMATION, REGARDLESS OF WHETHER THE OTHER EMPLOYEE HAS CONSENTED TO MY USE OF HIS OR HER LOG-IN INFORMATION. I ALSO AGREE THAT I WILL NOT PROVIDE MY LOG-IN INFORMATION TO ANY OTHER DRIVELINE EMPLOYEE OR REQUEST ANY OTHER PERSON TO ACCESS

Driveline Terms

ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM ON MY BEHALF FOR ANY PURPOSE.

15. I UNDERSTAND THAT BY AGREEING TO PERFORM WORK FOR, AND/OR CONTINUING EMPLOYMENT WITH, DRIVELINE, I ACCEPT AND AGREE TO COMPLY WITH THE DRIVELINE DISPUTE RESOLUTION AGREEMENT, WHICH REQUIRES MANDATORY ARBITRATION OF ANY DISPUTE COVERED BY THE DISPUTE RESOLUTION AGREEMENT. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE RECEIVED A COPY OF THE DRIVELINE DISPUTE RESOLUTION AGREEMENT.

ACCEPTED ON: 10/8/21 at 13:59 BY WILLIAMS,MELISSA

Driveline Exhibit 3 - Arbitration Agreements

9/27/23, 4:43 PM                                                                 Driveline Terms

**Code of Conduct**

As a Company, employees are expected to accept certain responsibilities, follow acceptable business principles in matters of conduct, and exhibit a high degree of integrity at all times. This not only involves sincere respect for the rights and feelings of others, but also demands that employees refrain from any behavior that might be harmful to themselves, co-workers, the Company, or that might be viewed unfavorably by current or potential customers or by the public at large. Employee conduct reflects on the Company. Employees are, consequently, encouraged to observe the highest standards of professionalism at all times.

Types of behavior and conduct that the Company considers inappropriate include, but are not limited to, the following:

1. Falsifying employment or other Company records;
2. Violating the Company's Anti-Harassment Policy;
3. Violating state, federal or local laws and regulations;
4. Violating security or safety rules or failing to observe safety rules or the Company safety practices; failing to wear required safety equipment; tampering with the Company's equipment or safety equipment;
5. Soliciting gratuities from customers or clients;
6. Exhibiting excessive or unexcused absenteeism or tardiness;
7. Possessing firearms, weapons or explosives on Company or client property without authorization, in violation of Company policy, including but not limited to Driveline's Texas weapons policy, or while on duty;
8. Using Company property or supplies in an excessive, unnecessary or unauthorized way or for personal use;
9. Engaging in criminal conduct or acts of violence, or making threats of violence toward anyone on Company or client premises or when representing the Company; fighting or provoking a fight on Company property, or negligent damage of property;
10. Reporting to work under the influence of drugs or alcohol, and/or illegally manufacturing, possessing, using, selling, distributing or transporting drugs;
11. Committing theft or unauthorized possession of Company property or the property of fellow employees; possessing or removing any Company or client property, including documents, from the premises without prior permission from management; using Company equipment or property for personal reasons without proper authorization; using Company equipment for profit;
12. Giving confidential or proprietary Company information to competitors or other organizations, or to unauthorized Company employees; breaching confidentiality of personnel information;
13. Sharing, disclosing, or transferring usernames or passwords for Company systems without prior written authorization; employees must take reasonable measures to prevent unauthorized access to usernames and passwords for Company systems;
14. Using obscene, abusive or threatening language or gestures;
15. Acting in an insubordinate manner;
16. Spreading malicious gossip and/or rumors; engaging in behavior which creates discord and lack of harmony; interfering with another employee on the job; restricting work output or encouraging others to do the same;
17. Sleeping or loitering during working hours;
18. Fraternizing with co-workers or customer personnel while on duty or in a company provided travel accommodation location;
19. Soliciting during working hours and/or in work areas; selling merchandise or collecting funds of any kind for charities or others without authorization during business hours, or at a time or place that interferes with the work of another employee on Company or client premises;
20. Purchasing any product on client property while performing Driveline work;
21. Smoking in restricted areas or at non-designated times, in accordance with Company policy;
22. Performing services for Driveline while working on-duty for a client or customer;
23. Bringing Non-Driveline employees into work, this includes but is not limited to the following: children, spouses, boyfriends/girlfriends, friends, relatives, pets, etc.;
24. Bringing Driveline employees into work not already listed on team project in V3;
25. Subcontracting work to another individual, employed or not employed by the company;
26. Working without approved dress code, safety equipment, bringing personal ladders, step stools, or any unauthorized equipment into work;
27. Working outside of client preferred work hours;
28. Any other behavior that a Customer or Client deems to be inappropriate or offensive and notifies Driveline Leadership of their discord; and/or
29. Failing to abide by Driveline's Dispute Resolution Agreement.

Should an employee's performance, work habits, overall attitude, conduct or demeanor become unsatisfactory based on violations either of the above or of any other Company policies, rules or regulations, the employee will be subject to disciplinary action, up to and including termination.

**An Employee that is barred from Customer retail outlets by Customer Management is subject to immediate termination of employment as such restriction by Customer will not allow Employee to accomplish required Company activities.**

**Dispute Resolution Agreement**

This Dispute Resolution Agreement ("Agreement") applies to any claims or disputes ("Disputes") arising out of, related to or connected with your application for at-will employment with Driveline Retail Merchandising, Inc. or one of its affiliates, subsidiaries or parent companies ("Driveline"), your at-will employment with Driveline and the termination of your at-will employment, except for claims specifically excluded under the terms of this Agreement. By accepting or continuing employment with Driveline after the Effective Date of this Agreement, you accept this Agreement and agree to follow the requirements for resolving disputes according to the terms in this Agreement, even if you do not electronically sign the Agreement.

This Agreement requires that all such Disputes be resolved only by a neutral arbitrator through final and binding arbitration and not by way of court or jury trial except as otherwise stated in this Agreement. Accordingly:

a) You and Driveline agree to arbitrate any Dispute (including all statutory claims and any state or federal claims) that may arise out of, relate to, or is in connection with your at-will employment with Driveline, including your application for employment and the termination of your at-will employment.

b) You and Driveline also agree to bring any Dispute in arbitration on an individual basis only, and not on a joint, class or collective action basis.

c) Further, you and Driveline agree that there will be no right or authority for any Dispute to be brought, heard or arbitrated as a joint action, class action or collective action.

The arbitration shall be conducted pursuant to the American Arbitration Association's employment arbitration rules, then in effect, before a single arbitrator licensed to practice law in the state in which you are or were employed. A copy of these Rules may be obtained from Driveline's Human Resources Department or at www.adr.org. The parties are entitled to conduct discovery to the fullest extent authorized by applicable law. The arbitration proceeding and all related documents will be confidential, to the fullest extent permitted by applicable law.

Disputes are to be initiated by filing a demand for arbitration within the time limit established by the applicable statute of limitations if the Dispute involves statutory rights. If no statutory rights are involved and to the fullest extent permitted by applicable law, such Disputes must be brought within one (1) year of the day on which you knew, or through reasonable diligence, should have known of the facts giving rise to the Dispute.

Prior to submitting a Dispute to arbitration, you and Driveline agree to first attempt to resolve the Dispute by the party initiating the Dispute notifying the other party in writing of the Dispute and explaining in reasonable detail the grounds for such Dispute; by giving the other party the opportunity to respond in writing to the Dispute within 10 days of receipt of the written notification; and by giving the other party the opportunity to meet and confer. Written notification to Driveline shall be made to disputeresolution@drivelineretail.com. If the Dispute is not resolved in writing, the Dispute may then proceed to arbitration at the request of either party. The parties agree that the decision of the arbitrator shall be in writing, final and binding. Except for Disputes regarding rights conferred by statute or regulation and to the fullest extent permitted by applicable law, the parties agree that the law of the State of Texas shall apply to all other Disputes. Judgment on any award rendered by an arbitrator may be entered and enforced in any court having jurisdiction thereof, and in states where so required a court of competent jurisdiction must render judgment upon any award subject to this Agreement.

Driveline Exhibit 3 - Arbitration Agreements

9/27/23, 4:43 PM                                                    Driveline Terms

This Agreement does not absolve you from any applicable administrative filing requirements or prevent you from:

a) filing a charge with or seeking relief from the National Labor Relations Board, the U.S. Department of Labor, or the U.S. Equal Employment Opportunity Commission; or

b) filing a claim with similar state agencies if applicable law allows you to do so.

This Agreement does not cover: claims for workers compensation, state disability or unemployment insurance benefits; claims under California Labor Code Private Attorneys General Act of 2004 (PAGA); any criminal complaint or proceeding filed by a governmental agency; claims for restitution or civil penalties owed by an employee for an act for which Driveline sought criminal prosecution; and/or any charges, claims or lawsuits pending as of January 5, 2019 ("Effective Date").

The parties agree that if a party brings an action that asserts only claims or Disputes subject to arbitration under this Agreement, any party thereafter prevailing on a motion to compel arbitration shall be entitled to that party's reasonable costs and attorneys' fees incurred in compelling arbitration. The parties agree that if a party brings an action that includes both claims and Disputes subject to arbitration under this Agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration shall be stayed until the claims and Disputes subject to arbitration are fully arbitrated and/or otherwise resolved. The parties further agree that in such a situation, the arbitrator's decision on the claims and Disputes subject to arbitration, including determinations as to disputed factual and legal issues, shall be dispositive and entitled to full force and effect in a separate or stayed lawsuit on the claims that by law are not subject to arbitration. Any and all disputes regarding the enforceability of this Agreement and/or the scope of claims and Disputes subject hereto are within the exclusive authority of the arbitrator to be appointed pursuant hereto.

For those Disputes subject to arbitration, Driveline shall be responsible for the arbitrator's fees and expenses. Each party shall pay its own costs and attorneys' fees, if any. However, if any party prevails on a claim which under applicable law affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and costs, the arbitrator may award reasonable attorneys' fees and costs to the prevailing party. Any dispute as to the reasonableness of any fee or cost shall be resolved by the arbitrator.

The parties acknowledge and agree that Driveline is engaged in transactions involving interstate commerce, that this Agreement is a part of and evidences a transaction involving commerce, and that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. If any specific provision of this Agreement is deemed invalid or unenforceable, the remainder of this Agreement, including the Parties' mutual agreement to waive any right to a jury trial, shall remain binding and enforceable to the full extent permitted by applicable law.

## TERMS OF WORK ACCEPTANCE

1. I UNDERSTAND AND AGREE THAT EACH OF THE REQUIREMENTS, TERMS AND CONDITIONS SET FORTH IN THESE TERMS OF WORK ACCEPTANCE (THE "TERMS AND CONDITIONS") ARE ESSENTIAL TERMS FOR THE WORK AND CONDITIONS FOR PAYMENT IN CONNECTION WITH THE WORK.

2. I AGREE TO COMPLETE THE WORK ON OR BY THE SCHEDULE DATE, AS SPECIFIED ABOVE, FOR COMPLETION OF THE WORK ("SCHEDULE DATE").

3. I UNDERSTAND THAT I MUST CONFIRM AND SCHEDULE MY ASSIGNED WORK NO LATER THAN NOON EST ON MONDAY OF EACH WEEK WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, INCLUDING "HARD DATED" PLANS THAT ARE PLAN-SPECIFIC. I FURTHER UNDERSTAND THAT IF I DO NOT CONFIRM THE WORK BY THE MONDAY NOON EST DEADLINE WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, OR FAIL TO COMPLETE THE CONFIRMED WORK ON THE SCHEDULE DATE, DRIVELINE RESERVES THE RIGHT TO REASSIGN THE WORK TO ANOTHER EMPLOYEE.

4. I UNDERSTAND THAT DRIVELINE HAS THE RIGHT TO CHANGE ASSIGNED WORK AT ANY TIME, INCLUDING STORE ASSIGNMENTS, BASED ON BUSINESS NEEDS, CONSISTENT WITH APPLICABLE LAW.

5. I AGREE TO COMPLETE THE WORK WITHIN THE TIME ALLOWED FOR THE WORK, AS SPECIFIED ABOVE. I UNDERSTAND AND AGREE THAT THE TIME ALLOWED FOR THE WORK INCLUDES ADMINISTRATIVE TIME (E.G., PREPARATION FOR ROUTES, COMPLETION OF WORK ORDERS, SUBMISSION OF DIGITAL PHOTOGRAPHS, ETC.) AS WELL AS STORE TIME ("INSTORE TIME"). I FURTHER UNDERSTAND AND AGREE THAT IF ADDITIONAL TIME IS NEEDED TO COMPLETE THE WORK, SUCH ADDITIONAL TIME MUST BE PRE-APPROVED BY MY MANAGER IN WRITING.

6. I AGREE TO TAKE TO THE STORE WHERE THE WORK IS TO BE DONE ALL REQUIRED DOCUMENTS TO COMPLETE THE WORK IN CONFORMANCE WITH DRIVELINE AND CUSTOMER REQUIREMENTS AND SPECIFICATIONS. I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL REIMBURSE ME FOR REQUIRED PRINTING ONLY, AS INDICATED IN THE WORK PLANS, AT A RATE OF 3 CENTS PER PAGE. I FURTHER UNDERSTAND AND AGREE THAT, OTHER THAN AS STATED HEREIN, I WILL NOT BE REIMBURSED FOR THE COST OF ANY OFFICE SUPPLIES USED BY ME IN CONNECTION WITH THE WORK (E.G., PRINTING PAPER, PRINTER TONER, ETC.) AND THAT THESE TYPES OF ADMINISTRATIVE COSTS ARE INCLUDED IN THE TOTAL AMOUNT I AM TO BE PAID AFTER COMPLETION OF THE WORK.

7. TO CONFIRM THAT I HAVE COMPLETED THE WORK, I AGREE TO COMPLETE AND ELECTRONICALLY SUBMIT NO LATER THAN 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," A COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IN THE EVENT I DO NOT SUBMIT THESE ITEMS TO DRIVELINE BY 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE TO CONFIRM THAT THE WORK HAS BEEN COMPLETED AS REQUIRED BY THESE TERMS AND CONDITIONS, THE WORK WILL BE REASSIGNED AND I WILL NOT BE PAID FOR THIS ASSIGNMENT.

8. I UNDERSTAND THAT DRIVELINE ENCOURAGES ME TO COMPLETE AND ELECTRONICALLY SUBMIT THE CONFIRMATION OF WORK COMPLETION AND OTHER REQUIRED ITEMS FROM THE CUSTOMER STORE USING DRIVELINE'S MOBILE APP.

9. I UNDERSTAND AND AGREE THAT PAYMENT FOR THE WORK IS EXPRESSLY CONDITIONED ON (1) COMPLETION OF THE WORK ON OR BY THE SCHEDULE DATE, AND (2) CONFIRMATION THAT I HAVE COMPLETED THE WORK, INCLUDING ELECTRONIC SUBMISSION OF DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IF I FAIL, FOR ANY REASON, TO EITHER COMPLETE THE WORK ON OR BY THE SCHEDULE DATE AND/OR FAIL TO CONFIRM THAT I HAVE COMPLETED THE WORK AS REQUIRED BY THESE TERMS AND CONDITIONS, SUCH FAILURE WILL VOID THE ASSIGNMENT AND/OR THE WORK WILL BE DEEMED NOT TO HAVE BEEN PERFORMED.

10. I UNDERSTAND AND AGREE THAT MILEAGE AND DRIVE TIME ("DRIVE TIME") I INCUR IN COMPLETING THE WORK WILL BE CALCULATED THROUGH THE USE OF A ROUTE OPTIMIZATION POWERED BY GOOGLE MAPS/MAP QUEST/OTHER SIMILAR MAPPING SERVICES ("ROUTE OPTIMIZATION"). I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL NOT PAY DRIVE TIME, OR REIMBURSE MILEAGE, FOR NORMAL COMMUTE FROM AND TO THE FIRST STORE ON A GIVEN DAY OR FROM THE LAST STORE TO MY HOME. I FURTHER UNDERSTAND THAT IF THE ROUTE OPTIMIZATION ON A GIVEN DAY SHOWS THAT MY HOME IS LOCATED MORE THAN 30 MILES FROM EITHER THE FIRST STORE OR THE LAST STORE, I WILL BE REIMBURSED FOR MY MILEAGE AND PAID FOR DRIVE TIME INCURRED BEYOND THE FIRST 30 MILES BETWEEN MY HOME AND THE FIRST STORE OR THE LAST STORE, AS APPLICABLE. ANY COMPENSABLE MILEAGE OR DRIVE TIME BETWEEN MY HOME AND EITHER THE FIRST OR LAST STORE WILL BE CALCULATED BY ROUTE OPTIMIZATION.

11. I UNDERSTAND THAT MILEAGE WILL BE REIMBURSED AT A RATE OF 20 CENTS PER MILE (EXCEPT WHERE GOVERNED BY RULE OF LAW), AS CALCULATED BY ROUTE OPTIMIZATION, AND I AGREE THAT THE RATE OF 20 CENTS PER MILE IS SUFFICIENT TO REIMBURSE ME FOR THE VEHICLE EXPENSES ACTUALLY AND NECESSARILY INCURRED BY ME IN COMPLETING THE WORK. I UNDERSTAND AND AGREE THAT I MAY BE PAID FOR ANY DRIVE TIME AT A LESSER HOURLY RATE THAN THE REGULAR HOURLY RATE FOR INSTORE TIME. I ALSO UNDERSTAND AND AGREE THAT THE AVERAGE HOURLY RATE FOR ALL ACTUAL TIME SPENT ON A PARTICULAR PROJECT, INCLUDING BOTH INSTORE AND DRIVE TIME, MAY BE LESS THAN THE REGULAR INSTORE HOURLY RATE. I FURTHER UNDERSTAND THAT ANY AMOUNTS PAID TO ME FOR MILEAGE OR DRIVE TIME WILL BE PAID IN COMPLIANCE WITH APPLICABLE FEDERAL AND STATE LAW.

12. I UNDERSTAND THAT I AM REQUIRED TO PERFORM ONLY THOSE SERVICES AS OUTLINED IN THE ASSIGNMENT FOR THE WORK. WHILE I MAY PERFORM SERVICES AT A CUSTOMER LOCATION, I UNDERSTAND THAT I AM TO TAKE DIRECTION FROM MY DRIVELINE MANAGER(S) ONLY. I FURTHER UNDERSTAND IF I PERFORM SERVICES OUTSIDE OF THE SCOPE OF THE WORK, I WILL NOT BE REIMBURSED FOR TIME SPENT ON THESE ACTIVITIES.

13. I UNDERSTAND THAT DRIVELINE IS MONITORING MY PERFORMANCE RELATIVE TO QUALITY OF WORK AND TIMELY COMPLETION/CONFIRMATION OF THE WORK. I FURTHER UNDERSTAND THAT DRIVELINE RESERVES THE RIGHT TO LIMIT MY ACCESS TO AND ADDITIONAL WORK BASED ON MY PERFORMANCE IN DRIVELINE'S SOLE DISCRETION.

14. I UNDERSTAND THAT DRIVELINE EMPLOYEES ARE PROHIBITED FROM ACCESSING DRIVELINE'S COMPUTER SYSTEMS (INCLUDING, BUT NOT LIMITED TO, ANY DRIVELINE MOBILE APP) BY USING ANOTHER DRIVELINE EMPLOYEE'S PERSONAL LOG-IN INFORMATION (I.E., LOG-IN NAME/EMAIL ADDRESS, EMPLOYEE PASSWORD, ETC.) FOR ANY PURPOSE INCLUDING, WITHOUT LIMITATION, FOR THE PURPOSE OF REPORTING ANOTHER EMPLOYEE'S COMPLETION OF WORK. I AGREE THAT I WILL NOT ATTEMPT TO ACCESS ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM BY USING ANOTHER EMPLOYEE'S PERSONAL LOG-IN INFORMATION, REGARDLESS OF WHETHER THE OTHER EMPLOYEE HAS CONSENTED TO MY USE OF HIS OR HER LOG-IN INFORMATION. I ALSO AGREE THAT I WILL NOT PROVIDE MY LOG-IN INFORMATION TO ANY OTHER DRIVELINE EMPLOYEE OR REQUEST ANY OTHER PERSON TO ACCESS

Driveline Exhibit 3 - Arbitration Agreements

Driveline Terms

ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM ON MY BEHALF FOR ANY PURPOSE.

15. I UNDERSTAND THAT BY AGREEING TO PERFORM WORK FOR, AND/OR CONTINUING EMPLOYMENT WITH, DRIVELINE, I ACCEPT AND AGREE TO COMPLY WITH THE DRIVELINE DISPUTE RESOLUTION AGREEMENT, WHICH REQUIRES MANDATORY ARBITRATION OF ANY DISPUTE COVERED BY THE DISPUTE RESOLUTION AGREEMENT. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE RECEIVED A COPY OF THE DRIVELINE DISPUTE RESOLUTION AGREEMENT.

ACCEPTED ON: 4/21/22 at 16:32 BY WORK,DANA

Driveline Exhibit 3 - Arbitration Agreements

## Code of Conduct

As a Company, employees are expected to accept certain responsibilities, follow acceptable business principles in matters of conduct, and exhibit a high degree of integrity at all times. This not only involves sincere respect for the rights and feelings of others, but also demands that employees refrain from any behavior that might be harmful to themselves, co-workers, the Company, or that might be viewed unfavorably by current or potential customers or by the public at large. Employee conduct reflects on the Company. Employees are, consequently, encouraged to observe the highest standards of professionalism at all times.

Types of behavior and conduct that the Company considers inappropriate include, but are not limited to, the following:

1. Falsifying employment or other Company records;
2. Violating the Company's Anti-Harassment Policy;
3. Violating state, federal or local laws and regulations;
4. Violating security or safety rules or failing to observe safety rules or the Company safety practices;
   failing to wear required safety equipment; tampering with the Company's equipment or safety equipment;
5. Soliciting gratuities from customers or clients;
6. Exhibiting excessive or unexcused absenteeism or tardiness;
7. Possessing firearms, weapons or explosives on Company or client property without authorization, in violation of Company policy, including but not limited to Driveline's Texas weapons policy, or while on duty;
8. Using Company property or supplies in an excessive, unnecessary or unauthorized way or for personal use;
9. Engaging in criminal conduct or acts of violence, or making threats of violence toward anyone on Company or client premises or when representing the Company; fighting or provoking a fight on Company property, or negligent damage of property;
10. Reporting to work under the influence of drugs or alcohol, and/or illegally manufacturing, possessing, using, selling, distributing or transporting drugs;
11. Committing theft or unauthorized possession of Company property or the property of fellow employees;
    possessing or removing any Company or client property, including documents, from the premises without prior permission from management; using Company equipment or property for personal reasons without proper authorization; using Company equipment for profit;
12. Giving confidential or proprietary Company information to competitors or other organizations, or to unauthorized Company employees;
    breaching confidentiality of personnel information;
13. Sharing, disclosing, or transferring usernames or passwords for Company systems without prior written authorization;
    employees must take reasonable measures to prevent unauthorized access to usernames and passwords for Company systems;
14. Using obscene, abusive or threatening language or gestures;
15. Acting in an insubordinate manner;
16. Spreading malicious gossip and/or rumors;
    engaging in behavior which creates discord and lack of harmony; interfering with another employee on the job; restricting work output or encouraging others to do the same;
17. Sleeping or loitering during working hours;
18. Fraternizing with co-workers or customer personnel while on duty or in a company provided travel accommodation location;
19. Soliciting during working hours and/or in work areas;
    selling merchandise or collecting funds of any kind for charities or others without authorization during business hours, or at a time or place that interferes with the work of another employee on Company or client premises;
20. Purchasing any product on client property while performing Driveline work;
21. Smoking in restricted areas or at non-designated times, in accordance with Company policy;
22. Performing services for Driveline while working on-duty for a client or customer;
23. Bringing Non-Driveline employees into work, this includes but is not limited to the following: children, spouses, boyfriends/girlfriends, friends, relatives, pets, etc.;
24. Bringing Driveline employees into work not already listed on team project in V3;
25. Subcontracting work to another individual, employed or not employed by the company;
26. Working without approved dress code, safety equipment, bringing personal ladders, step stools, or any unauthorized equipment into work;
27. Working outside of client preferred work hours;
28. Any other behavior that a Customer or Client deems to be inappropriate or offensive and notifies Driveline Leadership of their discord; and/or
29. Failing to abide by Driveline's Dispute Resolution Agreement.

Should an employee's performance, work habits, overall attitude, conduct or demeanor become unsatisfactory based on violations either of the above or of any other Company policies, rules or regulations, the employee will be subject to disciplinary action, up to and including termination.

**An Employee that is barred from Customer retail outlets by Customer Management is subject to immediate termination of employment as such restriction by Customer will not allow Employee to accomplish required Company activities.**

## Dispute Resolution Agreement

This Dispute Resolution Agreement ("Agreement") applies to any claims or disputes ("Disputes") arising out of, related to or connected with your application for at-will employment with Driveline Retail Merchandising, Inc. or one of its affiliates, subsidiaries or parent companies ("Driveline"), your at-will employment with Driveline and the termination of your at-will employment, except for claims specifically excluded under the terms of this Agreement. By accepting or continuing employment with Driveline after the Effective Date of this Agreement, you accept this Agreement and agree to follow the requirements for resolving disputes according to the terms in this Agreement, even if you do not electronically sign the Agreement.

This Agreement requires that all such Disputes be resolved only by a neutral arbitrator through final and binding arbitration and not by way of court or jury trial except as otherwise stated in this Agreement. Accordingly:

a) You and Driveline agree to arbitrate any Dispute (including all statutory claims and any state or federal claims) that may arise out of, relate to, or is in connection with your at-will employment with Driveline, including your application for employment and the termination of your at-will employment.

b) You and Driveline also agree to bring any Dispute in arbitration on an individual basis only, and not on a joint, class or collective action basis.

c) Further, you and Driveline agree that there will be no right or authority for any Dispute to be brought, heard or arbitrated as a joint action, class action or collective action.

The arbitration shall be conducted pursuant to the American Arbitration Association's employment arbitration rules, then in effect, before a single arbitrator licensed to practice law in the state in which you are or were employed. A copy of these Rules may be obtained from Driveline's Human Resources Department or at www.adr.org. The parties are entitled to conduct discovery to the fullest extent authorized by applicable law. The arbitration proceeding and all related documents will be confidential, to the fullest extent permitted by applicable law.

Disputes are to be initiated by filing a demand for arbitration within the time limit established by the applicable statute of limitations if the Dispute involves statutory rights. If no statutory rights are involved and to the fullest extent permitted by applicable law, such Disputes must be brought within one (1) year of the day on which you knew, or through reasonable diligence, should have known of the facts giving rise to the Dispute.

Prior to submitting a Dispute to arbitration, you and Driveline agree to first attempt to resolve the Dispute by the party initiating the Dispute notifying the other party in writing of the Dispute and explaining in reasonable detail the grounds for such Dispute; by giving the other party the opportunity to respond in writing to the Dispute within 10 days of receipt of the written notification; and by giving the other party the opportunity to meet and confer. Written notification to Driveline shall be made to disputeresolution@drivelineretail.com. If the Dispute is not resolved in this manner, the Dispute may then proceed to arbitration at the request of either party. The parties agree that the decision of the arbitrator shall be in writing, final and binding. Except for Disputes regarding rights conferred by statute or regulation and to the fullest extent permitted by applicable law, the parties agree that the law of the State of Texas shall apply to all other Disputes. Judgment on any award rendered by an arbitrator may be entered and enforced in any court having jurisdiction thereof, and in states where so required a court of competent jurisdiction must render judgment upon any award subject to this Agreement.

Driveline Exhibit 3 - Arbitration Agreements

Driveline Terms

This Agreement does not absolve you from any applicable administrative filing requirements or prevent you from:

a) filing a charge with or seeking relief from the National Labor Relations Board, the U.S. Department of Labor, or the U.S. Equal Employment Opportunity Commission; or

b) filing a claim with similar state agencies if applicable law allows you to do so.

This Agreement does not cover: claims for workers compensation, state disability or unemployment insurance benefits; claims under California Labor Code Private Attorneys General Act of 2004 (PAGA); any criminal complaint or proceeding filed by a governmental agency; claims for restitution or civil penalties owed by an employee for an act for which Driveline sought criminal prosecution; and/or any charges, claims or lawsuits pending as of January 5, 2019 ("Effective Date").

The parties agree that if a party brings an action that asserts only claims or Disputes subject to arbitration under this Agreement, any party thereafter prevailing on a motion to compel arbitration shall be entitled to that party's reasonable costs and attorneys' fees incurred in compelling arbitration. The parties agree that if a party brings an action that includes both claims and Disputes subject to arbitration under this Agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration shall be stayed until the claims and Disputes subject to arbitration are fully arbitrated and/or otherwise resolved. The parties further agree that in such a situation, the arbitrator's decision on the claims and Disputes subject to arbitration, including determinations as to disputed factual and legal issues, shall be dispositive and entitled to full force and effect in a separate or stayed lawsuit on the claims that by law are not subject to arbitration. Any and all disputes regarding the enforceability of this Agreement and/or the scope of claims and Disputes subject hereto are within the exclusive authority of the arbitrator to be appointed pursuant hereto.

For those Disputes subject to arbitration, Driveline shall be responsible for the arbitrator's fees and expenses. Each party shall pay its own costs and attorneys' fees, if any. However, if any party prevails on a claim which under applicable law affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and costs, the arbitrator may award reasonable attorneys' fees and costs to the prevailing party. Any dispute as to the reasonableness of any fee or cost shall be resolved by the arbitrator.

The parties acknowledge and agree that Driveline is engaged in transactions involving interstate commerce, that this Agreement is a part of and evidences a transaction involving commerce, and that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. �� 1 et seq. If any specific provision of this Agreement is deemed invalid or unenforceable, the remainder of this Agreement, including the Parties' mutual agreement to waive any right to a jury trial, shall remain binding and enforceable to the full extent permitted by applicable law.

---

**TERMS OF WORK ACCEPTANCE**

1. I UNDERSTAND AND AGREE THAT EACH OF THE REQUIREMENTS, TERMS AND CONDITIONS SET FORTH IN THESE TERMS OF WORK ACCEPTANCE (THE "TERMS AND CONDITIONS") ARE ESSENTIAL TERMS FOR THE WORK AND CONDITIONS FOR PAYMENT IN CONNECTION WITH THE WORK.

2. I AGREE TO COMPLETE THE WORK ON OR BY THE SCHEDULE DATE, AS SPECIFIED ABOVE, FOR COMPLETION OF THE WORK ("SCHEDULE DATE").

3. I UNDERSTAND THAT I MUST CONFIRM AND SCHEDULE MY ASSIGNED WORK NO LATER THAN NOON EST ON MONDAY OF EACH WEEK WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, INCLUDING "HARD DATED" PLANS THAT ARE PLAN-SPECIFIC. I FURTHER UNDERSTAND THAT IF I DO NOT CONFIRM THE WORK BY THE MONDAY NOON EST DEADLINE WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, OR FAIL TO COMPLETE THE CONFIRMED WORK ON THE SCHEDULE DATE, DRIVELINE RESERVES THE RIGHT TO REASSIGN THE WORK TO ANOTHER EMPLOYEE.

4. I UNDERSTAND THAT DRIVELINE HAS THE RIGHT TO CHANGE ASSIGNED WORK AT ANY TIME, INCLUDING STORE ASSIGNMENTS, BASED ON BUSINESS NEEDS, CONSISTENT WITH APPLICABLE LAW.

5. I AGREE TO COMPLETE THE WORK WITHIN THE TIME ALLOWED FOR THE WORK, AS SPECIFIED ABOVE. I UNDERSTAND AND AGREE THAT THE TIME ALLOWED FOR THE WORK INCLUDES ADMINISTRATIVE TIME (E.G., PREPARATION FOR ROUTES, COMPLETION OF WORK ORDERS, SUBMISSION OF DIGITAL PHOTOGRAPHS, ETC.) AS WELL AS STORE TIME ("INSTORE TIME"). I FURTHER UNDERSTAND AND AGREE THAT IF ADDITIONAL TIME IS NEEDED TO COMPLETE THE WORK, SUCH ADDITIONAL TIME MUST BE PRE-APPROVED BY MY MANAGER IN WRITING.

6. I AGREE TO TAKE TO THE STORE WHERE THE WORK IS TO BE DONE ALL REQUIRED DOCUMENTS TO COMPLETE THE WORK IN CONFORMANCE WITH DRIVELINE AND CUSTOMER REQUIREMENTS AND SPECIFICATIONS. I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL REIMBURSE ME FOR REQUIRED PRINTING ONLY, AS INDICATED IN THE WORK PLANS, AT A RATE OF 3 CENTS PER PAGE. I FURTHER UNDERSTAND AND AGREE THAT, OTHER THAN AS STATED HEREIN, I WILL NOT BE REIMBURSED FOR THE COST OF ANY OFFICE SUPPLIES USED BY ME IN CONNECTION WITH THE WORK (E.G., PRINTING PAPER, PRINTER TONER, ETC.) AND THAT THESE TYPES OF ADMINISTRATIVE COSTS ARE INCLUDED IN THE TOTAL AMOUNT I AM TO BE PAID AFTER COMPLETION OF THE WORK.

7. TO CONFIRM THAT I HAVE COMPLETED THE WORK, I AGREE TO COMPLETE AND ELECTRONICALLY SUBMIT NO LATER THAN 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," A COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IN THE EVENT I DO NOT SUBMIT THESE ITEMS TO DRIVELINE BY 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE TO CONFIRM THAT THE WORK HAS BEEN COMPLETED AS REQUIRED BY THESE TERMS AND CONDITIONS, THE WORK WILL BE REASSIGNED AND I WILL NOT BE PAID FOR THIS ASSIGNMENT.

8. I UNDERSTAND THAT DRIVELINE ENCOURAGES ME TO COMPLETE AND ELECTRONICALLY SUBMIT THE CONFIRMATION OF WORK COMPLETION AND OTHER REQUIRED ITEMS FROM THE CUSTOMER STORE USING DRIVELINE'S MOBILE APP.

9. I UNDERSTAND AND AGREE THAT PAYMENT FOR THE WORK IS EXPRESSLY CONDITIONED ON (1) COMPLETION OF THE WORK ON OR BY THE SCHEDULE DATE, AND (2) CONFIRMATION THAT I HAVE COMPLETED THE WORK, INCLUDING ELECTRONIC SUBMISSION OF DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IF I FAIL, FOR ANY REASON, TO EITHER COMPLETE THE WORK ON OR BY THE SCHEDULE DATE AND/OR FAIL TO CONFIRM THAT I HAVE COMPLETED THE WORK AS REQUIRED BY THESE TERMS AND CONDITIONS, SUCH FAILURE WILL VOID THE ASSIGNMENT AND/OR THE WORK WILL BE DEEMED NOT TO HAVE BEEN PERFORMED.

10. I UNDERSTAND AND AGREE THAT MILEAGE AND DRIVE TIME ("DRIVE TIME") I INCUR IN COMPLETING THE WORK WILL BE CALCULATED THROUGH THE USE OF A ROUTE OPTIMIZATION POWERED BY GOOGLE MAPS/MAP QUEST/OTHER SIMILAR MAPPING SERVICES ("ROUTE OPTIMIZATION"). I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL NOT PAY DRIVE TIME, OR REIMBURSE MILEAGE, FOR NORMAL COMMUTE FROM MY HOME TO THE FIRST STORE ON A GIVEN DAY OR FROM THE LAST STORE TO MY HOME. I FURTHER UNDERSTAND THAT IF THE ROUTE OPTIMIZATION ON A GIVEN DAY SHOWS THAT MY HOME IS LOCATED MORE THAN 30 MILES FROM EITHER THE FIRST STORE OR THE LAST STORE, I WILL BE REIMBURSED FOR MY MILEAGE AND PAID FOR DRIVE TIME INCURRED BEYOND THE FIRST 30 MILES BETWEEN MY HOME AND THE FIRST STORE OR THE LAST STORE, AS APPLICABLE. ANY COMPENSABLE MILEAGE OR DRIVE TIME BETWEEN MY HOME AND EITHER THE FIRST OR LAST STORE WILL BE CALCULATED THROUGH ROUTE OPTIMIZATION.

11. I UNDERSTAND THAT MILEAGE WILL BE REIMBURSED AT A RATE OF 20 CENTS PER MILE (EXCEPT WHERE GOVERNED BY RULE OF LAW), AS CALCULATED BY ROUTE OPTIMIZATION, AND I AGREE THAT THE RATE OF 20 CENTS PER MILE IS SUFFICIENT TO REIMBURSE ME FOR THE VEHICLE EXPENSES ACTUALLY AND NECESSARILY INCURRED BY ME IN COMPLETING THE WORK. I UNDERSTAND AND AGREE THAT I MAY BE PAID FOR MY DRIVE TIME AT A LESSER HOURLY RATE THAN THE REGULAR HOURLY RATE THAT I WILL BE PAID FOR INSTORE TIME. I ALSO UNDERSTAND AND AGREE THAT THE AVERAGE HOURLY RATE FOR ALL ACTUAL TIME SPENT ON A PARTICULAR PROJECT, INCLUDING BOTH INSTORE AND DRIVE TIME, MAY BE LESS THAN THE REGULAR INSTORE HOURLY RATE. I FURTHER UNDERSTAND THAT ANY AMOUNTS PAID TO ME FOR MILEAGE OR DRIVE TIME WILL BE PAID IN COMPLIANCE WITH APPLICABLE FEDERAL AND STATE LAW.

12. I UNDERSTAND THAT I AM ASSIGNED TO PERFORM ONLY THOSE SERVICES AS OUTLINED IN THE ASSIGNMENT FOR THE WORK. WHILE I MAY PERFORM SERVICES AT A CUSTOMER LOCATION, I UNDERSTAND THAT I AM TO TAKE DIRECTION FROM MY DRIVELINE MANAGER(S) ONLY. I FURTHER UNDERSTAND IF I PERFORM SERVICES OUTSIDE OF THE SCOPE OF THE WORK, I WILL NOT BE REIMBURSED FOR TIME SPENT ON THESE ACTIVITIES.

13. I UNDERSTAND THAT DRIVELINE IS MONITORING MY PERFORMANCE RELATIVE TO QUALITY OF WORK AND TIMELY COMPLETION/CONFIRMATION OF THE WORK. I FURTHER UNDERSTAND THAT DRIVELINE RESERVES THE RIGHT TO LIMIT MY ACCESS TO AND ASSIGNMENT OF ADDITIONAL WORK BASED ON MY PERFORMANCE IN DRIVELINE'S SOLE DISCRETION.

14. I UNDERSTAND THAT DRIVELINE EMPLOYEES ARE PROHIBITED FROM ACCESSING DRIVELINE'S COMPUTER SYSTEMS (INCLUDING, BUT NOT LIMITED TO, ANY DRIVELINE MOBILE APP) BY USING ANOTHER DRIVELINE EMPLOYEE'S PERSONAL LOG- IN INFORMATION (I.E., LOG-IN NAME/EMAIL ADDRESS, EMPLOYEE PASSWORD, ETC.) FOR ANY PURPOSE INCLUDING, WITHOUT LIMITATION, FOR THE PURPOSE OF REPORTING ANOTHER EMPLOYEE'S COMPLETION OF WORK. I AGREE THAT I WILL NOT ATTEMPT TO ACCESS ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM BY USING ANOTHER EMPLOYEE'S PERSONAL LOG-IN INFORMATION, REGARDLESS OF WHETHER THE OTHER EMPLOYEE HAS CONSENTED TO MY USE OF HIS OR HER LOG-IN INFORMATION. I ALSO AGREE THAT I WILL NOT PROVIDE MY LOG-IN INFORMATION TO ANY OTHER DRIVELINE EMPLOYEE OR REQUEST ANY OTHER PERSON TO ACCESS

ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM ON MY BEHALF FOR ANY PURPOSE.

15. I UNDERSTAND THAT BY AGREEING TO PERFORM WORK FOR, AND/OR CONTINUING EMPLOYMENT WITH, DRIVELINE, I ACCEPT AND AGREE TO COMPLY WITH THE DRIVELINE DISPUTE RESOLUTION AGREEMENT, WHICH REQUIRES MANDATORY ARBITRATION OF ANY DISPUTE COVERED BY THE DISPUTE RESOLUTION AGREEMENT. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE RECEIVED A COPY OF THE DRIVELINE DISPUTE RESOLUTION AGREEMENT.

ACCEPTED ON: 4/3/20 at 13:11 BY WORKMAN,TARA

Driveline Exhibit 3 - Arbitration Agreements

　　　　　　　　　　　Driveline Terms

## Code of Conduct

As a Company, employees are expected to accept certain responsibilities, follow acceptable business principles in matters of conduct, and exhibit a high degree of integrity at all times. This not only involves sincere respect for the rights and feelings of others, but also demands that employees refrain from any behavior that might be harmful to themselves, co-workers, the Company, or that might be viewed unfavorably by current or potential customers or by the public at large. Employee conduct reflects on the Company. Employees are, consequently, encouraged to observe the highest standards of professionalism at all times.

Types of behavior and conduct that the Company considers inappropriate include, but are not limited to, the following:

1. Falsifying employment or other Company records;
2. Violating the Company's Anti-Harassment Policy;
3. Violating state, federal or local laws and regulations;
4. Violating security or safety rules or failing to observe safety rules or the Company safety practices;
   failing to wear required safety equipment; tampering with the Company's equipment or safety equipment;
5. Soliciting gratuities from customers or clients;
6. Exhibiting excessive or unexcused absenteeism or tardiness;
7. Possessing firearms, weapons or explosives on Company or client property without authorization, in violation of Company policy, including but not limited to Driveline's Texas weapons policy, or while on duty;
8. Using Company property or supplies in an excessive, unnecessary or unauthorized way or for personal use;
9. Engaging in criminal conduct or acts of violence, or making threats of violence toward anyone on Company or client premises or when representing the Company; fighting or provoking a fight on Company property, or negligent damage of property;
10. Reporting to work under the influence of drugs or alcohol, and/or illegally manufacturing, possessing, using, selling, distributing or transporting drugs;
11. Committing theft or unauthorized possession of Company property or the property of fellow employees;
    possessing or removing any Company or client property, including documents, from the premises without prior permission from management; using Company equipment or property for personal reasons without proper authorization; using Company equipment for profit;
12. Giving confidential or proprietary Company information to competitors or other organizations, or to unauthorized Company employees; breaching confidentiality of personnel information;
13. Sharing, disclosing, or transferring usernames or passwords for Company systems without prior written authorization; employees must take reasonable measures to prevent unauthorized access to usernames and passwords for Company systems;
14. Using obscene, abusive or threatening language or gestures;
15. Acting in an insubordinate manner;
16. Spreading malicious gossip and/or rumors; engaging in behavior which creates discord and lack of harmony; interfering with another employee on the job; restricting work output or encouraging others to do the same;
17. Sleeping or loitering during working hours;
18. Fraternizing with co-workers or customer personnel while on duty or in a company provided travel accommodation location;
19. Soliciting during working hours and/or in work areas; selling merchandise or collecting funds of any kind for charities or others without authorization during business hours, or at a time or place that interferes with the work of another employee on Company or client premises;
20. Purchasing any product on client property while performing Driveline work;
21. Smoking in restricted areas or at non-designated times, in accordance with Company policy;
22. Performing services for Driveline while working on-duty for a client or customer;
23. Bringing Non-Driveline employees into work, this includes but is not limited to the following: children, spouses, boyfriends/girlfriends, friends, relatives, pets, etc.;
24. Bringing Driveline employees into work not already listed on team project in V3;
25. Subcontracting work to another individual, employed or not employed by the company;
26. Working without approved dress code, safety equipment, bringing personal ladders, step stools, or any unauthorized equipment into work;
27. Working outside of client preferred work hours;
28. Any other behavior that a Customer or Client deems to be inappropriate or offensive and notifies Driveline Leadership of their discord; and/or
29. Failing to abide by Driveline's Dispute Resolution Agreement.

Should an employee's performance, work habits, overall attitude, conduct or demeanor become unsatisfactory based on violations either of the above or of any other Company policies, rules or regulations, the employee will be subject to disciplinary action, up to and including termination.

**An Employee that is barred from Customer retail outlets by Customer Management is subject to immediate termination of employment as such restriction by Customer will not allow Employee to accomplish required Company activities.**

## Dispute Resolution Agreement

This Dispute Resolution Agreement ("Agreement") applies to any claims or disputes ("Disputes") arising out of, related to or connected with your application for at-will employment with Driveline Retail Merchandising, Inc. or one of its affiliates, subsidiaries or parent companies ("Driveline"), your at-will employment with Driveline and the termination of your at-will employment, except for claims specifically excluded under the terms of this Agreement. By accepting or continuing employment with Driveline after the Effective Date of this Agreement, you accept this Agreement and agree to follow the requirements for resolving disputes according to the terms in this Agreement, even if you do not electronically sign the Agreement.

This Agreement requires that all such Disputes be resolved only by a neutral arbitrator through final and binding arbitration and not by way of court or jury trial except as otherwise stated in this Agreement. Accordingly:

a) You and Driveline agree to arbitrate any Dispute (including all statutory claims and any state or federal claims) that may arise out of, relate to, or is in connection with your at-will employment with Driveline, including your application for employment and the termination of your at-will employment.

b) You and Driveline also agree to bring any Dispute in arbitration on an individual basis only, and not on a joint, class or collective action basis.

c) Further, you and Driveline agree that there will be no right or authority for any Dispute to be brought, heard or arbitrated as a joint action, class action or collective action.

The arbitration shall be conducted pursuant to the American Arbitration Association's employment arbitration rules, then in effect, before a single arbitrator licensed to practice law in the state in which you are or were employed. A copy of these Rules may be obtained from Driveline's Human Resources Department or at www.adr.org. The parties are entitled to conduct discovery to the fullest extent authorized by applicable law. The arbitration proceeding and all related documents will be confidential, to the fullest extent permitted by applicable law.

Disputes are to be initiated by filing a demand for arbitration within the time limit established by the applicable statute of limitations if the Dispute involves statutory rights. If no statutory rights are involved and to the fullest extent permitted by applicable law, such Disputes must be brought within one (1) year of the day on which you knew, or through reasonable diligence, should have known of the facts giving rise to the Dispute.

Prior to submitting a Dispute to arbitration, you and Driveline agree to first attempt to resolve the Dispute by the party initiating the Dispute notifying the other party in writing of the Dispute and explaining in reasonable detail the grounds for such Dispute; by giving the other party the opportunity to respond in writing to the Dispute within 10 days of receipt of the written notification; and by giving the other party the opportunity to meet and confer. Written notification to Driveline shall be made to disputeresolution@drivelineretail.com. If the Dispute is not resolved in this manner, the Dispute may then proceed to arbitration at the request of either party. The parties agree that the decision of the arbitrator shall be in writing, final and binding. Except for Disputes regarding rights conferred by statute or regulation and to the fullest extent permitted by applicable law, the parties agree that the law of the State of Texas shall apply to all other Disputes. Judgment on any award rendered by an arbitrator may be entered and enforced in any court having jurisdiction thereof, and in states where so required a court of competent jurisdiction must render judgment upon any award subject to this Agreement.

Driveline Exhibit 3 - Arbitration Agreements

This Agreement does not absolve you from any applicable administrative filing requirements or prevent you from:

a) filing a charge with or seeking relief from the National Labor Relations Board, the U.S. Department of Labor, or the U.S. Equal Employment Opportunity Commission; or

b) filing a claim with similar state agencies if applicable law allows you to do so.

This Agreement does not cover: claims for workers compensation, state disability or unemployment insurance benefits; claims under California Labor Code Private Attorneys General Act of 2004 (PAGA); any criminal complaint or proceeding filed by a governmental agency; claims for restitution or civil penalties owed by an employee for an act for which Driveline sought criminal prosecution; and/or any charges, claims or lawsuits pending as of January 5, 2019 ("Effective Date").

The parties agree that if a party brings an action that asserts only claims or Disputes subject to arbitration under this Agreement, any party thereafter prevailing on a motion to compel arbitration shall be entitled to that party's reasonable costs and attorneys' fees incurred in compelling arbitration. The parties agree that if a party brings an action that includes both claims and Disputes subject to arbitration under this Agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration shall be stayed until the claims and Disputes subject to arbitration are fully arbitrated and/or otherwise resolved. The parties further agree that in such a situation, the arbitrator's decision on the claims and Disputes subject to arbitration, including determinations as to disputed factual and legal issues, shall be dispositive and entitled to full force and effect in a separate or stayed lawsuit on the claims that by law are not subject to arbitration. Any and all disputes regarding the enforceability of this Agreement and/or the scope of claims and Disputes subject hereto are within the exclusive authority of the arbitrator to be appointed pursuant hereto.

For those Disputes subject to arbitration, Driveline shall be responsible for the arbitrator's fees and expenses. Each party shall pay its own costs and attorneys' fees, if any. However, if any party prevails on a claim which under applicable law affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and costs, the arbitrator may award reasonable attorneys' fees and costs to the prevailing party. Any dispute as to the reasonableness of any fee or cost shall be resolved by the arbitrator.

The parties acknowledge and agree that Driveline is engaged in transactions involving interstate commerce, that this Agreement is a part of and evidences a transaction involving commerce, and that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. If any specific provision of this Agreement is deemed invalid or unenforceable, the remainder of this Agreement, including the Parties' mutual agreement to waive any right to a jury trial, shall remain binding and enforceable to the full extent permitted by applicable law.

**TERMS OF WORK ACCEPTANCE**

1. I UNDERSTAND AND AGREE THAT EACH OF THE REQUIREMENTS, TERMS AND CONDITIONS SET FORTH IN THESE TERMS OF WORK ACCEPTANCE (THE "TERMS AND CONDITIONS") ARE ESSENTIAL TERMS FOR THE WORK AND CONDITIONS FOR PAYMENT IN CONNECTION WITH THE WORK.

2. I AGREE TO COMPLETE THE WORK ON OR BY THE SCHEDULE DATE, AS SPECIFIED ABOVE, FOR COMPLETION OF THE WORK ("SCHEDULE DATE").

3. I UNDERSTAND THAT I MUST CONFIRM AND SCHEDULE MY ASSIGNED WORK NO LATER THAN NOON EST ON MONDAY OF EACH WEEK WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, INCLUDING 'HARD DATED' PLANS THAT ARE PLAN-SPECIFIC. I FURTHER UNDERSTAND THAT IF I DO NOT CONFIRM THE WORK BY THE MONDAY NOON EST DEADLINE WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, OR FAIL TO COMPLETE THE CONFIRMED WORK ON THE SCHEDULE DATE, DRIVELINE RESERVES THE RIGHT TO REASSIGN THE WORK TO ANOTHER EMPLOYEE.

4. I UNDERSTAND THAT DRIVELINE HAS THE RIGHT TO CHANGE ASSIGNED WORK AT ANY TIME, INCLUDING STORE ASSIGNMENTS, BASED ON BUSINESS NEEDS, CONSISTENT WITH APPLICABLE LAW.

5. I AGREE TO COMPLETE THE WORK WITHIN THE TIME ALLOWED FOR THE WORK, AS SPECIFIED ABOVE. I UNDERSTAND AND AGREE THAT THE TIME ALLOWED FOR THE WORK INCLUDES ADMINISTRATIVE TIME (E.G., PREPARATION FOR ROUTES, COMPLETION OF WORK ORDERS, SUBMISSION OF DIGITAL PHOTOGRAPHS, ETC.) AS WELL AS STORE TIME ("INSTORE TIME"). I FURTHER UNDERSTAND AND AGREE THAT IF ADDITIONAL TIME IS NEEDED TO COMPLETE THE WORK, SUCH ADDITIONAL TIME MUST BE PRE-APPROVED BY MY MANAGER IN WRITING.

6. I AGREE TO TAKE TO THE STORE WHERE THE WORK IS TO BE DONE ALL REQUIRED DOCUMENTS TO COMPLETE THE WORK IN CONFORMANCE WITH DRIVELINE AND CUSTOMER REQUIREMENTS AND SPECIFICATIONS. I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL REIMBURSE ME FOR REQUIRED PRINTING ONLY, AS INDICATED IN THE WORK PLANS, AT A RATE OF 3 CENTS PER PAGE. I FURTHER UNDERSTAND AND AGREE THAT, OTHER THAN AS STATED HEREIN, I WILL NOT BE REIMBURSED FOR THE COST OF ANY OFFICE SUPPLIES USED BY ME IN CONNECTION WITH THE WORK (E.G., PRINTING PAPER, PRINTER TONER, ETC.) AND THAT THESE TYPES OF ADMINISTRATIVE COSTS ARE INCLUDED IN THE TOTAL AMOUNT I AM TO BE PAID AFTER COMPLETION OF THE WORK.

7. TO CONFIRM THAT I HAVE COMPLETED THE WORK, I AGREE TO COMPLETE AND ELECTRONICALLY SUBMIT NO LATER THAN 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," A COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IN THE EVENT I DO NOT SUBMIT THESE ITEMS TO DRIVELINE BY 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE TO CONFIRM THAT THE WORK HAS BEEN COMPLETED AS REQUIRED BY THESE TERMS AND CONDITIONS, THE WORK WILL BE REASSIGNED AND I WILL NOT BE PAID FOR THIS ASSIGNMENT.

8. I UNDERSTAND THAT DRIVELINE ENCOURAGES ME TO COMPLETE AND ELECTRONICALLY SUBMIT THE CONFIRMATION OF WORK COMPLETION AND OTHER REQUIRED ITEMS FROM THE CUSTOMER STORE USING DRIVELINE'S MOBILE APP.

9. I UNDERSTAND AND AGREE THAT PAYMENT FOR THE WORK IS EXPRESSLY CONDITIONED ON (1) COMPLETION OF THE WORK ON OR BY THE SCHEDULE DATE, AND (2) CONFIRMATION THAT I HAVE COMPLETED THE WORK, INCLUDING ELECTRONIC SUBMISSION OF DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IF I FAIL, FOR ANY REASON, TO EITHER COMPLETE THE WORK ON OR BY THE SCHEDULE DATE AND/OR FAIL TO CONFIRM THAT I HAVE COMPLETED THE WORK AS REQUIRED BY THESE TERMS AND CONDITIONS, SUCH FAILURE WILL VOID THE ASSIGNMENT AND/OR THE WORK WILL BE DEEMED NOT TO HAVE BEEN PERFORMED.

10. I UNDERSTAND AND AGREE THAT MILEAGE AND DRIVE TIME ("DRIVE TIME") I INCUR IN COMPLETING THE WORK WILL BE CALCULATED THROUGH THE USE OF A ROUTE OPTIMIZATION POWERED BY GOOGLE MAPS/MAP QUEST/OTHER SIMILAR MAPPING SERVICES ("ROUTE OPTIMIZATION"). I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL NOT PAY DRIVE TIME, OR REIMBURSE MILEAGE, FOR NORMAL COMMUTE FROM MY HOME TO THE FIRST STORE ON A GIVEN DAY OR FROM THE LAST STORE TO MY HOME. I FURTHER UNDERSTAND THAT IF THE ROUTE OPTIMIZATION ON A GIVEN DAY SHOWS THAT MY HOME IS LOCATED MORE THAN 30 MILES FROM EITHER THE FIRST STORE OR THE LAST STORE, I WILL BE REIMBURSED FOR MY MILEAGE AND PAID FOR DRIVE TIME INCURRED BEYOND THE FIRST 30 MILES BETWEEN MY HOME AND THE FIRST STORE OR THE LAST STORE, AS APPLICABLE. ANY COMPENSABLE MILEAGE OR DRIVE TIME BETWEEN MY HOME AND EITHER THE FIRST OR LAST STORE WILL BE CALCULATED THROUGH ROUTE OPTIMIZATION.

11. I UNDERSTAND THAT MILEAGE WILL BE REIMBURSED AT A RATE OF 20 CENTS PER MILE (EXCEPT WHERE GOVERNED BY RULE OF LAW), AS CALCULATED BY ROUTE OPTIMIZATION, AND I AGREE THAT THE RATE OF 20 CENTS PER MILE IS SUFFICIENT TO REIMBURSE ME FOR THE VEHICLE EXPENSES ACTUALLY AND NECESSARILY INCURRED BY ME IN COMPLETING THE WORK. I UNDERSTAND AND AGREE THAT I MAY BE PAID FOR MY DRIVE TIME AT A LESSER HOURLY RATE THAN THE REGULAR HOURLY RATE THAT I WILL BE PAID FOR INSTORE TIME. I ALSO UNDERSTAND AND AGREE THAT THE AVERAGE HOURLY RATE FOR ALL ACTUAL TIME SPENT ON A PARTICULAR PROJECT, INCLUDING BOTH INSTORE AND DRIVE TIME, MAY BE LESS THAN THE REGULAR INSTORE HOURLY RATE. I FURTHER UNDERSTAND THAT ANY AMOUNTS PAID TO ME FOR MILEAGE OR DRIVE TIME WILL BE PAID IN COMPLIANCE WITH APPLICABLE FEDERAL AND STATE LAW.

12. I UNDERSTAND THAT I AM REQUIRED TO PERFORM ONLY THOSE SERVICES AS OUTLINED IN THE ASSIGNMENT FOR THE WORK. WHILE I MAY PERFORM SERVICES AT A CUSTOMER LOCATION, I UNDERSTAND THAT I AM TO TAKE DIRECTION FROM MY DRIVELINE MANAGER(S) ONLY. I FURTHER UNDERSTAND IF I PERFORM SERVICES OUTSIDE OF THE SCOPE OF THE WORK, I WILL NOT BE REIMBURSED FOR TIME SPENT ON THESE ACTIVITIES.

13. I UNDERSTAND THAT DRIVELINE IS MONITORING MY PERFORMANCE RELATIVE TO QUALITY OF WORK AND TIMELY COMPLETION/CONFIRMATION OF THE WORK. I FURTHER UNDERSTAND THAT DRIVELINE RESERVES THE RIGHT TO LIMIT MY ACCESS TO AND ASSIGNMENT OF ADDITIONAL WORK BASED ON MY PERFORMANCE IN DRIVELINE'S SOLE DISCRETION.

14. I UNDERSTAND THAT DRIVELINE EMPLOYEES ARE PROHIBITED FROM ACCESSING DRIVELINE'S COMPUTER SYSTEMS (INCLUDING, BUT NOT LIMITED TO, ANY DRIVELINE MOBILE APP) BY USING ANOTHER DRIVELINE EMPLOYEE'S PERSONAL LOG- IN INFORMATION (I.E., LOG-IN NAME/EMAIL ADDRESS, EMPLOYEE PASSWORD, ETC.) FOR ANY PURPOSE INCLUDING, WITHOUT LIMITATION, FOR THE PURPOSE OF REPORTING ANOTHER EMPLOYEE'S COMPLETION OF WORK. I AGREE THAT I WILL NOT ATTEMPT TO ACCESS ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM BY USING ANOTHER EMPLOYEE'S PERSONAL LOG-IN INFORMATION, REGARDLESS OF WHETHER THE OTHER EMPLOYEE HAS CONSENTED TO MY USE OF HIS OR HER LOG-IN INFORMATION. I ALSO AGREE THAT I WILL NOT PROVIDE MY LOG-IN INFORMATION TO ANY OTHER DRIVELINE EMPLOYEE OR REQUEST ANY OTHER PERSON TO ACCESS

Driveline Terms

ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM ON MY BEHALF FOR ANY PURPOSE.

15. I UNDERSTAND THAT BY AGREEING TO PERFORM WORK FOR, AND/OR CONTINUING EMPLOYMENT WITH, DRIVELINE, I ACCEPT AND AGREE TO COMPLY WITH THE DRIVELINE DISPUTE RESOLUTION AGREEMENT, WHICH REQUIRES MANDATORY ARBITRATION OF ANY DISPUTE COVERED BY THE DISPUTE RESOLUTION AGREEMENT. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE RECEIVED A COPY OF THE DRIVELINE DISPUTE RESOLUTION AGREEMENT.

ACCEPTED ON: 4/16/22 at 16:02 BY APPLEGARTH,KIMBERLY

Driveline Exhibit 3 - Arbitration Agreements

## Code of Conduct

As a Company, employees are expected to accept certain responsibilities, follow acceptable business principles in matters of conduct, and exhibit a high degree of integrity at all times. This not only involves sincere respect for the rights and feelings of others, but also demands that employees refrain from any behavior that might be harmful to themselves, co-workers, the Company, or that might be viewed unfavorably by current or potential customers or by the public at large. Employee conduct reflects on the Company. Employees are, consequently, encouraged to observe the highest standards of professionalism at all times.

Types of behavior and conduct that the Company considers inappropriate include, but are not limited to, the following:

1. Falsifying employment or other Company records;
2. Violating the Company's Anti-Harassment Policy;
3. Violating state, federal or local laws and regulations;
4. Violating security or safety rules or failing to observe safety rules or the Company safety practices;
   failing to wear required safety equipment; tampering with the Company's equipment or safety equipment;
5. Soliciting gratuities from customers or clients;
6. Exhibiting excessive or unexcused absenteeism or tardiness;
7. Possessing firearms, weapons or explosives on Company or client property without authorization, in violation of Company policy, including but not limited to Driveline's Texas weapons policy, or while on duty;
8. Using Company property or supplies in an excessive, unnecessary or unauthorized way or for personal use;
9. Engaging in criminal conduct or acts of violence, or making threats of violence toward anyone on Company or client premises or when representing the Company; fighting or provoking a fight on Company property, or negligent damage of property;
10. Reporting to work under the influence of drugs or alcohol, and/or illegally manufacturing, possessing, using, selling, distributing or transporting drugs;
11. Committing theft or unauthorized possession of Company property or the property of fellow employees;
    possessing or removing any Company or client property, including documents, from the premises without prior permission from management; using Company equipment or property for personal reasons without proper authorization; using Company equipment for profit;
12. Giving confidential or proprietary Company information to competitors or other organizations, or to unauthorized Company employees; breaching confidentiality of personnel information;
13. Sharing, disclosing, or transferring usernames or passwords for Company systems without prior written authorization; employees must take reasonable measures to prevent unauthorized access to usernames and passwords for Company systems;
14. Using obscene, abusive or threatening language or gestures;
15. Acting in an insubordinate manner;
16. Spreading malicious gossip and/or rumors; engaging in behavior which creates discord and lack of harmony; interfering with another employee on the job; restricting work output or encouraging others to do the same;
17. Sleeping or loitering during working hours;
18. Fraternizing with co-workers or customer personnel while on duty or in a company provided travel accommodation location;
19. Soliciting during working hours and/or in work areas; selling merchandise or collecting funds of any kind for charities or others without authorization during business hours, or at a time or place that interferes with the work of another employee on Company or client premises;
20. Purchasing any product on client property while performing Driveline work;
21. Smoking in restricted areas or at non-designated times, in accordance with Company policy;
22. Performing services for Driveline while working on-duty for a client or customer;
23. Bringing Non-Driveline employees into work, this includes but is not limited to the following: children, spouses, boyfriends/girlfriends, friends, relatives, pets, etc.;
24. Bringing Driveline employees into work not already listed on team project in V3;
25. Subcontracting work to another individual, employed or not employed by the Company;
26. Working without approved dress code, safety equipment, bringing personal ladders, step stools, or any unauthorized equipment into work;
27. Working outside of client preferred work hours;
28. Any other behavior that a Customer or Client deems to be inappropriate or offensive and notifies Driveline Leadership of their discord; and/or
29. Failing to abide by Driveline's Dispute Resolution Agreement.

Should an employee's performance, work habits, overall attitude, conduct or demeanor become unsatisfactory based on violations either of the above or of any other Company policies, rules or regulations, the employee will be subject to disciplinary action, up to and including termination.

An Employee that is barred from Customer retail outlets by Customer Management is subject to immediate termination of employment as such restriction by Customer will not allow Employee to accomplish required Company activities.

## Dispute Resolution Agreement

This Dispute Resolution Agreement ("Agreement") applies to any claims or disputes ("Disputes") arising out of, related to or connected with your application for at-will employment with Driveline Retail Merchandising, Inc. or one of its affiliates, subsidiaries or parent companies ("Driveline"), your at-will employment with Driveline and the termination of your at-will employment, except for claims specifically excluded under the terms of this Agreement. By accepting or continuing employment with Driveline after the Effective Date of this Agreement, you accept this Agreement and agree to follow the requirements for resolving disputes according to the terms in this Agreement, even if you do not electronically sign the Agreement.

This Agreement requires that all such Disputes be resolved only by a neutral arbitrator through final and binding arbitration and not by way of court or jury trial except as otherwise stated in this Agreement. Accordingly:

a) You and Driveline agree to arbitrate any Dispute (including all statutory claims and any state or federal claims) that may arise out of, relate to, or is in connection with your at-will employment with Driveline, including your application for employment and the termination of your at-will employment.

b) You and Driveline also agree to bring any Dispute in arbitration on an individual basis only, and not on a joint, class or collective action basis.

c) Further, you and Driveline agree that there will be no right or authority for any Dispute to be brought, heard or arbitrated as a joint action, class action or collective action.

The arbitration shall be conducted pursuant to the American Arbitration Association's employment arbitration rules, then in effect, before a single arbitrator licensed to practice law in the state in which you are or were employed. A copy of these Rules may be obtained from Driveline's Human Resources Department or at www.adr.org. The parties are entitled to conduct discovery to the fullest extent authorized by applicable law. The arbitration proceeding and all related documents will be confidential, to the fullest extent permitted by applicable law.

Disputes are to be initiated by filing a demand for arbitration within the time limit established by the applicable statute of limitations if the Dispute involves statutory rights. If no statutory rights are involved and to the fullest extent permitted by applicable law, such Disputes must be brought within one (1) year of the day on which you knew, or through reasonable diligence, should have known of the facts giving rise to the Dispute.

Prior to submitting a Dispute to arbitration, you and Driveline agree to first attempt to resolve the Dispute by the party initiating the Dispute notifying the other party in writing of the Dispute and explaining in reasonable detail the grounds for such Dispute; by giving the other party the opportunity to respond in writing to the Dispute within 10 days of receipt of the written notification; and by giving the other party the opportunity to meet and confer. Written notification to Driveline shall be made to disputeresolution@drivelineretail.com. If the Dispute is not resolved in this manner, the Dispute may then proceed to arbitration at the request of either party. The parties agree that the decision of the arbitrator shall be in writing, final and binding. Except for Disputes regarding rights conferred by statute or regulation and to the fullest extent permitted by applicable law, the parties agree that the law of the State of Texas shall apply to all other Disputes. Judgment on any award rendered by an arbitrator may be entered and enforced in any court having jurisdiction thereof, and in states where so required a court of competent jurisdiction must render judgment upon any award subject to this Agreement.

Driveline Exhibit 3 - Arbitration Agreements

Driveline Terms

This Agreement does not absolve you from any applicable administrative filing requirements or prevent you from:

a) filing a charge with or seeking relief from the National Labor Relations Board, the U.S. Department of Labor, or the U.S. Equal Employment Opportunity Commission; or

b) filing a claim with similar state agencies if applicable law allows you to do so.

This Agreement does not cover: claims for workers compensation, state disability or unemployment insurance benefits; claims under California Labor Code Private Attorneys General Act of 2004 (PAGA); any criminal complaint or proceeding filed by a governmental agency; claims for restitution or civil penalties owed by an employee for an act for which Driveline sought criminal prosecution; and/or any charges, claims or lawsuits pending as of January 5, 2019 ("Effective Date").

The parties agree that if a party brings an action that asserts only claims or Disputes subject to arbitration under this Agreement, any party thereafter prevailing on a motion to compel arbitration shall be entitled to that party's reasonable costs and attorneys' fees incurred in compelling arbitration. The parties agree that if a party brings an action that includes both claims and Disputes subject to arbitration under this Agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration shall be stayed until the claims and Disputes subject to arbitration are fully arbitrated and/or otherwise resolved. The parties further agree that in such a situation, the arbitrator's decision on the claims and Disputes subject to arbitration, including determinations as to disputed factual and legal issues, shall be dispositive and entitled to full force and effect in a separate or stayed lawsuit on the claims that by law are not subject to arbitration. Any and all disputes regarding the enforceability of this Agreement and/or the scope of claims and Disputes subject hereto are within the exclusive authority of the arbitrator to be appointed pursuant hereto.

For those Disputes subject to arbitration, Driveline shall be responsible for the arbitrator's fees and expenses. Each party shall pay its own costs and attorneys' fees, if any. However, if any party prevails on a claim which under applicable law affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and costs, the arbitrator may award reasonable attorneys' fees and costs to the prevailing party. Any dispute as to the reasonableness of any fee or cost shall be resolved by the arbitrator.

The parties acknowledge and agree that Driveline is engaged in transactions involving interstate commerce, that this Agreement is a part of and evidences a transaction involving commerce, and that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. �� 1 et seq. If any specific provision of this Agreement is deemed invalid or unenforceable, the remainder of this Agreement, including the Parties' mutual agreement to waive any right to a jury trial, shall remain binding and enforceable to the full extent permitted by applicable law.

## TERMS OF WORK ACCEPTANCE

1. I UNDERSTAND AND AGREE THAT EACH OF THE REQUIREMENTS, TERMS AND CONDITIONS SET FORTH IN THESE TERMS OF WORK ACCEPTANCE (THE "TERMS AND CONDITIONS") ARE ESSENTIAL TERMS FOR THE WORK AND CONDITIONS FOR PAYMENT IN CONNECTION WITH THE WORK.

2. I AGREE TO COMPLETE THE WORK ON OR BY THE SCHEDULE DATE, AS SPECIFIED ABOVE, FOR COMPLETION OF THE WORK ("SCHEDULE DATE").

3. I UNDERSTAND THAT I MUST CONFIRM AND SCHEDULE MY ASSIGNED WORK NO LATER THAN NOON EST ON MONDAY OF EACH WEEK WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, INCLUDING "HARD DATED" PLANS THAT ARE PLAN-SPECIFIC. I FURTHER UNDERSTAND THAT IF I DO NOT CONFIRM THE WORK BY THE MONDAY NOON EST DEADLINE WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, OR FAIL TO COMPLETE THE CONFIRMED WORK ON THE SCHEDULE DATE, DRIVELINE RESERVES THE RIGHT TO REASSIGN THE WORK TO ANOTHER EMPLOYEE.

4. I UNDERSTAND THAT DRIVELINE HAS THE RIGHT TO CHANGE ASSIGNED WORK AT ANY TIME, INCLUDING STORE ASSIGNMENTS, BASED ON BUSINESS NEEDS, CONSISTENT WITH APPLICABLE LAW.

5. I AGREE TO COMPLETE THE WORK WITHIN THE TIME ALLOWED FOR THE WORK, AS SPECIFIED ABOVE. I UNDERSTAND AND AGREE THAT THE TIME ALLOWED FOR THE WORK INCLUDES ADMINISTRATIVE TIME (E.G., PREPARATION FOR ROUTES, COMPLETION OF WORK ORDERS, SUBMISSION OF DIGITAL PHOTOGRAPHS, ETC.) AS WELL AS STORE TIME ("INSTORE TIME"). I FURTHER UNDERSTAND AND AGREE THAT IF ADDITIONAL TIME IS NEEDED TO COMPLETE THE WORK, SUCH ADDITIONAL TIME MUST BE PRE-APPROVED BY MY MANAGER IN WRITING.

6. I AGREE TO TAKE TO THE STORE WHERE THE WORK IS TO BE DONE ALL REQUIRED DOCUMENTS TO COMPLETE THE WORK IN CONFORMANCE WITH DRIVELINE AND CUSTOMER REQUIREMENTS AND SPECIFICATIONS. I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL REIMBURSE ME FOR REQUIRED PRINTING ONLY, AS INDICATED IN THE WORK PLANS, AT A RATE OF 3 CENTS PER PAGE. I FURTHER UNDERSTAND AND AGREE THAT, OTHER THAN AS STATED HEREIN, I WILL NOT BE REIMBURSED FOR THE COST OF ANY OFFICE SUPPLIES USED BY ME IN CONNECTION WITH THE WORK (E.G., PRINTING PAPER, PRINTER TONER, ETC.) AND THAT THESE TYPES OF ADMINISTRATIVE COSTS ARE INCLUDED IN THE TOTAL AMOUNT I AM TO BE PAID AFTER COMPLETION OF THE WORK.

7. TO CONFIRM THAT I HAVE COMPLETED THE WORK, I AGREE TO COMPLETE AND ELECTRONICALLY SUBMIT NO LATER THAN 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," A COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IN THE EVENT I DO NOT SUBMIT THESE ITEMS TO DRIVELINE BY 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE TO CONFIRM THAT THE WORK HAS BEEN COMPLETED AS REQUIRED BY THESE TERMS AND CONDITIONS, THE WORK WILL BE REASSIGNED AND I WILL NOT BE PAID FOR THIS ASSIGNMENT.

8. I UNDERSTAND THAT DRIVELINE ENCOURAGES ME TO COMPLETE AND ELECTRONICALLY SUBMIT THE CONFIRMATION OF WORK COMPLETION AND OTHER REQUIRED ITEMS FROM THE CUSTOMER STORE USING DRIVELINE'S MOBILE APP.

9. I UNDERSTAND AND AGREE THAT PAYMENT FOR THE WORK IS EXPRESSLY CONDITIONED ON (1) COMPLETION OF THE WORK ON OR BY THE SCHEDULE DATE, AND (2) CONFIRMATION THAT I HAVE COMPLETED THE WORK, INCLUDING ELECTRONIC SUBMISSION OF DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IF I FAIL, FOR ANY REASON, TO EITHER COMPLETE THE WORK ON OR BY THE SCHEDULE DATE AND/OR FAIL TO CONFIRM THAT I HAVE COMPLETED THE WORK AS REQUIRED BY THESE TERMS AND CONDITIONS, SUCH FAILURE WILL VOID THE ASSIGNMENT AND/OR THE WORK WILL BE DEEMED NOT TO HAVE BEEN PERFORMED.

10. I UNDERSTAND AND AGREE THAT MILEAGE AND DRIVE TIME ("DRIVE TIME") I INCUR IN COMPLETING THE WORK WILL BE CALCULATED THROUGH THE USE OF A ROUTE OPTIMIZATION POWERED BY GOOGLE MAPS/MAP QUEST/OTHER SIMILAR MAPPING SERVICES ("ROUTE OPTIMIZATION"). I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL NOT PAY DRIVE TIME, OR REIMBURSE MILEAGE, FOR NORMAL COMMUTE FROM MY HOME TO THE FIRST STORE ON A GIVEN DAY OR FROM THE LAST STORE TO MY HOME. I FURTHER UNDERSTAND THAT IF THE ROUTE OPTIMIZATION ON A GIVEN DAY SHOWS THAT MY HOME IS LOCATED MORE THAN 30 MILES FROM EITHER THE FIRST STORE OR THE LAST STORE, I WILL BE REIMBURSED FOR MY MILEAGE AND PAID FOR DRIVE TIME INCURRED BEYOND THE FIRST 30 MILES BETWEEN MY HOME AND THE FIRST STORE OR THE LAST STORE, AS APPLICABLE. ANY COMPENSABLE MILEAGE OR DRIVE TIME BETWEEN MY HOME AND THE FIRST OR LAST STORE WILL BE CALCULATED BY ROUTE OPTIMIZATION.

11. I UNDERSTAND THAT MILEAGE WILL BE REIMBURSED AT A RATE OF 20 CENTS PER MILE (EXCEPT WHERE GOVERNED BY RULE OF LAW), AS CALCULATED BY ROUTE OPTIMIZATION, AND I AGREE THAT THE RATE OF 20 CENTS PER MILE IS SUFFICIENT TO REIMBURSE ME FOR THE VEHICLE EXPENSES ACTUALLY AND NECESSARILY INCURRED BY ME IN COMPLETING THE WORK. I UNDERSTAND AND AGREE THAT I MAY BE PAID FOR MY DRIVE TIME AT A LESSER HOURLY RATE THAN THE REGULAR HOURLY RATE THAT I WILL BE PAID FOR INSTORE TIME. I ALSO UNDERSTAND AND AGREE THAT THE AVERAGE HOURLY RATE FOR ALL ACTUAL TIME SPENT ON A PARTICULAR PROJECT, INCLUDING BOTH INSTORE AND DRIVE TIME, MAY BE LESS THAN THE REGULAR INSTORE HOURLY RATE. I FURTHER UNDERSTAND THAT ANY AMOUNTS PAID TO ME FOR MILEAGE OR DRIVE TIME WILL BE PAID IN COMPLIANCE WITH APPLICABLE FEDERAL AND STATE LAW.

12. I UNDERSTAND THAT I AM REQUIRED TO PERFORM ONLY THOSE SERVICES AS OUTLINED IN THE ASSIGNMENT FOR THE WORK. WHILE I MAY PERFORM SERVICES AT A CUSTOMER LOCATION, I UNDERSTAND THAT I AM TO TAKE DIRECTION FROM MY DRIVELINE MANAGER(S) ONLY. I FURTHER UNDERSTAND IF I PERFORM SERVICES OUTSIDE OF THE SCOPE OF THE WORK, I WILL NOT BE REIMBURSED FOR TIME SPENT ON THESE ACTIVITIES.

13. I UNDERSTAND THAT DRIVELINE IS MONITORING MY PERFORMANCE RELATIVE TO QUALITY OF WORK AND TIMELY COMPLETION/CONFIRMATION OF THE WORK. I FURTHER UNDERSTAND THAT DRIVELINE RESERVES THE RIGHT TO LIMIT MY ACCESS TO AND ASSIGNMENT OF ADDITIONAL WORK BASED ON MY PERFORMANCE IN DRIVELINE'S SOLE DISCRETION.

14. I UNDERSTAND THAT DRIVELINE EMPLOYEES ARE PROHIBITED FROM ACCESSING DRIVELINE'S COMPUTER SYSTEMS (INCLUDING, BUT NOT LIMITED TO, ANY DRIVELINE MOBILE APP) BY USING ANOTHER DRIVELINE EMPLOYEE'S PERSONAL LOG- IN INFORMATION (I.E., LOG-IN NAME/EMAIL ADDRESS, EMPLOYEE PASSWORD, ETC.) FOR ANY PURPOSE INCLUDING, WITHOUT LIMITATION, FOR THE PURPOSE OF REPORTING ANOTHER EMPLOYEE'S COMPLETION OF WORK. I AGREE THAT I WILL NOT ATTEMPT TO ACCESS ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM BY USING ANOTHER EMPLOYEE'S PERSONAL LOG-IN INFORMATION, REGARDLESS OF WHETHER THE OTHER EMPLOYEE HAS CONSENTED TO MY USE OF HIS OR HER LOG-IN INFORMATION. I ALSO AGREE THAT I WILL NOT PROVIDE MY LOG-IN INFORMATION TO ANY OTHER DRIVELINE EMPLOYEE OR REQUEST ANY OTHER PERSON TO ACCESS

Driveline Terms

ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM ON MY BEHALF FOR ANY PURPOSE.

15. I UNDERSTAND THAT BY AGREEING TO PERFORM WORK FOR, AND/OR CONTINUING EMPLOYMENT WITH, DRIVELINE, I ACCEPT AND AGREE TO COMPLY WITH THE DRIVELINE DISPUTE RESOLUTION AGREEMENT, WHICH REQUIRES MANDATORY ARBITRATION OF ANY DISPUTE COVERED BY THE DISPUTE RESOLUTION AGREEMENT. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE RECEIVED A COPY OF THE DRIVELINE DISPUTE RESOLUTION AGREEMENT.

ACCEPTED ON: 10/2/22 at 17:59 BY AYCOCK,ERIN

Driveline Exhibit 3 - Arbitration Agreements

　　　　　　　　　　　　　　　　　　Driveline Terms

**Code of Conduct**

As a Company, employees are expected to accept certain responsibilities, follow acceptable business principles in matters of conduct, and exhibit a high degree of integrity at all times. This not only involves sincere respect for the rights and feelings of others, but also demands that employees refrain from any behavior that might be harmful to themselves, co-workers, the Company, or that might be viewed unfavorably by current or potential customers or by the public at large. Employee conduct reflects on the Company. Employees are, consequently, encouraged to observe the highest standards of professionalism at all times.

Types of behavior and conduct that the Company considers inappropriate include, but are not limited to, the following:

1. Falsifying employment or other Company records;
2. Violating the Company's Anti-Harassment Policy;
3. Violating state, federal or local laws and regulations;
4. Violating security or safety rules or failing to observe safety rules or the Company safety practices; failing to wear required safety equipment; tampering with the Company's equipment or safety equipment;
5. Soliciting gratuities from customers or clients;
6. Exhibiting excessive or unexcused absenteeism or tardiness;
7. Possessing firearms, weapons or explosives on Company or client property without authorization, in violation of Company policy, including but not limited to Driveline's Texas weapons policy, or while on duty;
8. Using Company property or supplies in an excessive, unnecessary or unauthorized way or for personal use;
9. Engaging in criminal conduct or acts of violence, or making threats of violence toward anyone on Company or client premises or when representing the Company; fighting or provoking a fight on Company property, or negligent damage of property;
10. Reporting to work under the influence of drugs or alcohol, and/or illegally manufacturing, possessing, using, selling, distributing or transporting drugs;
11. Committing theft or unauthorized possession of Company property or the property of fellow employees; possessing or removing any Company or client property, including documents, from the premises without prior permission from management; using Company equipment or property for personal reasons without proper authorization; using Company equipment for profit;
12. Giving confidential or proprietary Company information to competitors or other organizations, or to unauthorized Company employees; breaching confidentiality of personnel information;
13. Sharing, disclosing, or transferring usernames or passwords for Company systems without prior written authorization; employees must take reasonable measures to prevent unauthorized access to usernames and passwords for Company systems;
14. Using obscene, abusive or threatening language or gestures;
15. Acting in an insubordinate manner;
16. Spreading malicious gossip and/or rumors; engaging in behavior which creates discord and lack of harmony; interfering with another employee on the job; restricting work output and encouraging others to do the same;
17. Sleeping or loitering during working hours;
18. Fraternizing with co-workers or customer personnel while on duty or in a company provided travel accommodation location;
19. Soliciting during working hours and/or in work areas; selling merchandise or collecting funds of any kind for charities or others without authorization during business hours, or at a time or place that interferes with the work of another employee on Company or client premises;
20. Purchasing any product on client property while performing Driveline work;
21. Smoking in restricted areas or at non-designated times, in accordance with Company policy;
22. Performing services for Driveline while working on-duty for a client or customer;
23. Bringing Non-Driveline employees into work, this includes but is not limited to the following: children, spouses, boyfriends/girlfriends, friends, relatives, pets, etc.;
24. Bringing Driveline employees into work not already listed on team project in V3;
25. Subcontracting work to another individual, employed or not employed by the company;
26. Working without approved dress code, safety equipment, bringing personal ladders, step stools, or any unauthorized equipment into work;
27. Working outside of client preferred work hours;
28. Any other behavior that a Customer or Client deems to be inappropriate or offensive and notifies Driveline Leadership of their discord; and/or
29. Failing to abide by Driveline's Dispute Resolution Agreement.

Should an employee's performance, work habits, overall attitude, conduct or demeanor become unsatisfactory based on violations either of the above or of any other Company policies, rules or regulations, the employee will be subject to disciplinary action, up to and including termination.

**An Employee that is barred from Customer retail outlets by Customer Management is subject to immediate termination of employment as such restriction by Customer will not allow Employee to accomplish required Company activities.**

**Dispute Resolution Agreement**

This Dispute Resolution Agreement ("Agreement") applies to any claims or disputes ("Disputes") arising out of, related to or connected with your application for at-will employment with Driveline Retail Merchandising, Inc. or one of its affiliates, subsidiaries or parent companies ("Driveline"), your at-will employment with Driveline and the termination of your at-will employment, except for claims specifically excluded under the terms of this Agreement. By accepting or continuing employment with Driveline after the Effective Date of this Agreement, you accept this Agreement and agree to follow the requirements for resolving disputes according to the terms in this Agreement, even if you do not electronically sign the Agreement.

This Agreement requires that all such Disputes be resolved only by a neutral arbitrator through final and binding arbitration and not by way of court or jury trial except as otherwise stated in this Agreement. Accordingly:

a) You and Driveline agree to arbitrate any Dispute (including all statutory claims and any state or federal claims) that may arise out of, relate to, or is in connection with your at-will employment with Driveline, including your application for employment and the termination of your at-will employment.

b) You and Driveline also agree to bring any Dispute in arbitration on an individual basis only, and not on a joint, class or collective action basis.

c) Further, you and Driveline agree that there will be no right or authority for any Dispute to be brought, heard or arbitrated as a joint action, class action or collective action.

The arbitration shall be conducted pursuant to the American Arbitration Association's employment arbitration rules, then in effect, before a single arbitrator licensed to practice law in the state in which you are or were employed. A copy of these Rules may be obtained from Driveline's Human Resources Department or at www.adr.org. The parties are entitled to conduct discovery to the fullest extent authorized by applicable law. The arbitration proceeding and all related documents will be confidential, to the fullest extent permitted by applicable law.

Disputes are to be initiated by filing a demand for arbitration within the time limit established by the applicable statute of limitations if the Dispute involves statutory rights. If no statutory rights are involved and to the fullest extent permitted by applicable law, such Disputes must be brought within one (1) year of the day on which you knew, or through reasonable diligence, should have known of the facts giving rise to the Dispute.

Prior to submitting a Dispute to arbitration, you and Driveline agree to first attempt to resolve the Dispute by the party initiating the Dispute notifying the other party in writing of the Dispute and explaining in reasonable detail the grounds for such Dispute; by giving the other party the opportunity to respond in writing to the Dispute within 10 days of receipt of the written notification; and by giving the other party the opportunity to meet and confer. Written notification to Driveline shall be made to disputeresolution@drivelineretail.com. If the Dispute is not resolved in this manner, the Dispute may then proceed to arbitration at the request of either party. The parties agree that the decision of the arbitrator shall be in writing, final and binding. Except for Disputes regarding rights conferred by statute or regulation and to the fullest extent permitted by applicable law, the parties agree that the law of the State of Texas shall apply to all other Disputes. Judgment on any award rendered by an arbitrator may be entered and enforced in any court having jurisdiction thereof, and in states where so required a court of competent jurisdiction must render judgment upon any award subject to this Agreement.

Driveline Exhibit 3 - Arbitration Agreements

Driveline Terms

This Agreement does not absolve you from any applicable administrative filing requirements or prevent you from:

a) filing a charge with or seeking relief from the National Labor Relations Board, the U.S. Department of Labor, or the U.S. Equal Employment Opportunity Commission; or

b) filing a claim with similar state agencies if applicable law allows you to do so.

This Agreement does not cover: claims for workers compensation, state disability or unemployment insurance benefits; claims under California Labor Code Private Attorneys General Act of 2004 (PAGA); any criminal complaint or proceeding filed by a governmental agency; claims for restitution or civil penalties owed by an employee for an act for which Driveline sought criminal prosecution; and/or any charges, claims or lawsuits pending as of January 5, 2019 ("Effective Date").

The parties agree that if a party brings an action that asserts only claims or Disputes subject to arbitration under this Agreement, any party thereafter prevailing on a motion to compel arbitration shall be entitled to that party's reasonable costs and attorneys' fees incurred in compelling arbitration. The parties agree that if a party brings an action that includes both claims and Disputes subject to arbitration under this Agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration shall be stayed until the claims and Disputes subject to arbitration are fully arbitrated and/or otherwise resolved. The parties further agree that in such a situation, the arbitrator's decision on the claims and Disputes subject to arbitration, including determinations as to disputed factual and legal issues, shall be dispositive and entitled to full force and effect in a separate or stayed lawsuit on the claims that by law are not subject to arbitration. Any and all disputes regarding the enforceability of this Agreement and/or the scope of claims and Disputes subject hereto are within the exclusive authority of the arbitrator to be appointed pursuant hereto.

For those Disputes subject to arbitration, Driveline shall be responsible for the arbitrator's fees and expenses. Each party shall pay its own costs and attorneys' fees, if any. However, if any party prevails on a claim which under applicable law affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and costs, the arbitrator may award reasonable attorneys' fees and costs to the prevailing party. Any dispute as to the reasonableness of any fee or cost shall be resolved by the arbitrator.

The parties acknowledge and agree that Driveline is engaged in transactions involving interstate commerce, that this Agreement is a part of and evidences a transaction involving commerce, and that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. If any specific provision of this Agreement is deemed invalid or unenforceable, the remainder of this Agreement, including the Parties' mutual agreement to waive any right to a jury trial, shall remain binding and enforceable to the full extent permitted by applicable law.

## TERMS OF WORK ACCEPTANCE

1. I UNDERSTAND AND AGREE THAT EACH OF THE REQUIREMENTS, TERMS AND CONDITIONS SET FORTH IN THESE TERMS OF WORK ACCEPTANCE (THE "TERMS AND CONDITIONS") ARE ESSENTIAL TERMS FOR THE WORK AND CONDITIONS FOR PAYMENT IN CONNECTION WITH THE WORK.

2. I AGREE TO COMPLETE THE WORK ON OR BY THE SCHEDULE DATE, AS SPECIFIED ABOVE, FOR COMPLETION OF THE WORK ("SCHEDULE DATE").

3. I UNDERSTAND THAT I MUST CONFIRM AND SCHEDULE MY ASSIGNED WORK NO LATER THAN NOON EST ON MONDAY OF EACH WEEK WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, INCLUDING "HARD DATED" PLANS THAT ARE PLAN-SPECIFIC. I FURTHER UNDERSTAND THAT IF I DO NOT CONFIRM THE WORK BY THE MONDAY NOON EST DEADLINE WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, OR FAIL TO COMPLETE THE CONFIRMED WORK ON THE SCHEDULE DATE, DRIVELINE RESERVES THE RIGHT TO REASSIGN THE WORK TO ANOTHER EMPLOYEE.

4. I UNDERSTAND THAT DRIVELINE HAS THE RIGHT TO CHANGE ASSIGNED WORK AT ANY TIME, INCLUDING STORE ASSIGNMENTS, BASED ON BUSINESS NEEDS, CONSISTENT WITH APPLICABLE LAW.

5. I AGREE TO COMPLETE THE WORK WITHIN THE TIME ALLOWED FOR THE WORK, AS SPECIFIED ABOVE. I UNDERSTAND AND AGREE THAT THE TIME ALLOWED FOR THE WORK INCLUDES ADMINISTRATIVE TIME (E.G., PREPARATION FOR ROUTES, COMPLETION OF WORK ORDERS, SUBMISSION OF DIGITAL PHOTOGRAPHS, ETC.) AS WELL AS STORE TIME ("INSTORE TIME"). I FURTHER UNDERSTAND AND AGREE THAT IF ADDITIONAL TIME IS NEEDED TO COMPLETE THE WORK, SUCH ADDITIONAL TIME MUST BE PRE-APPROVED BY MY MANAGER IN WRITING.

6. I AGREE TO TAKE TO THE STORE WHERE THE WORK IS TO BE DONE ALL REQUIRED DOCUMENTS TO COMPLETE THE WORK IN CONFORMANCE WITH DRIVELINE AND CUSTOMER REQUIREMENTS AND SPECIFICATIONS. I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL REIMBURSE ME FOR REQUIRED PRINTING ONLY, AS INDICATED IN THE WORK PLANS, AT A RATE OF 3 CENTS PER PAGE. I FURTHER UNDERSTAND AND AGREE THAT, OTHER THAN AS STATED HEREIN, I WILL NOT BE REIMBURSED FOR THE COST OF ANY OFFICE SUPPLIES USED BY ME IN CONNECTION WITH THE WORK (E.G., PRINTING PAPER, PRINTER TONER, ETC.) AND THAT THESE TYPES OF ADMINISTRATIVE COSTS ARE INCLUDED IN THE TOTAL AMOUNT I AM TO BE PAID AFTER COMPLETION OF THE WORK.

7. TO CONFIRM THAT I HAVE COMPLETED THE WORK, I AGREE TO COMPLETE AND ELECTRONICALLY SUBMIT NO LATER THAN 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," A COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IN THE EVENT I DO NOT SUBMIT THESE ITEMS TO DRIVELINE BY 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE TO CONFIRM THAT THE WORK HAS BEEN COMPLETED AS REQUIRED BY THESE TERMS AND CONDITIONS, THE WORK WILL BE REASSIGNED AND I WILL NOT BE PAID FOR THIS ASSIGNMENT.

8. I UNDERSTAND THAT DRIVELINE ENCOURAGES ME TO COMPLETE AND ELECTRONICALLY SUBMIT THE CONFIRMATION OF WORK COMPLETION AND OTHER REQUIRED ITEMS FROM THE CUSTOMER STORE USING DRIVELINE'S MOBILE APP.

9. I UNDERSTAND AND AGREE THAT PAYMENT FOR THE WORK IS EXPRESSLY CONDITIONED ON (1) COMPLETION OF THE WORK ON OR BY THE SCHEDULE DATE, AND (2) CONFIRMATION THAT I HAVE COMPLETED THE WORK, INCLUDING ELECTRONIC SUBMISSION OF DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IF I FAIL, FOR ANY REASON, TO EITHER COMPLETE THE WORK ON OR BY THE SCHEDULE DATE AND/OR FAIL TO CONFIRM THAT I HAVE COMPLETED THE WORK AS REQUIRED BY THESE TERMS AND CONDITIONS, SUCH FAILURE WILL VOID THE ASSIGNMENT AND/OR THE WORK WILL BE DEEMED NOT TO HAVE BEEN PERFORMED.

10. I UNDERSTAND AND AGREE THAT MILEAGE AND DRIVE TIME ("DRIVE TIME") I INCUR IN COMPLETING THE WORK WILL BE CALCULATED THROUGH THE USE OF A ROUTE OPTIMIZATION POWERED BY GOOGLE MAPS/MAP QUEST/OTHER SIMILAR MAPPING SERVICES ("ROUTE OPTIMIZATION"). I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL NOT PAY DRIVE TIME, OR REIMBURSE MILEAGE, FOR NORMAL COMMUTE FROM MY HOME TO THE FIRST STORE ON A GIVEN DAY OR FROM THE LAST STORE TO MY HOME. I FURTHER UNDERSTAND THAT IF THE ROUTE OPTIMIZATION ON A GIVEN DAY SHOWS THAT MY HOME IS LOCATED MORE THAN 30 MILES FROM EITHER THE FIRST STORE OR THE LAST STORE, I WILL BE REIMBURSED FOR MY MILEAGE AND PAID FOR DRIVE TIME INCURRED BEYOND THE FIRST 30 MILES BETWEEN MY HOME AND THE FIRST STORE OR THE LAST STORE, AS APPLICABLE. ANY COMPENSABLE MILEAGE OR DRIVE TIME BETWEEN MY HOME AND THE FIRST OR LAST STORE WILL BE CALCULATED THROUGH ROUTE OPTIMIZATION.

11. I UNDERSTAND THAT MILEAGE WILL BE REIMBURSED AT A RATE OF 20 CENTS PER MILE (EXCEPT WHERE GOVERNED BY RULE OF LAW), AS CALCULATED BY ROUTE OPTIMIZATION, AND I AGREE THAT THE RATE OF 20 CENTS PER MILE IS SUFFICIENT TO REIMBURSE ME FOR THE VEHICLE EXPENSES ACTUALLY AND NECESSARILY INCURRED BY ME IN COMPLETING THE WORK. I UNDERSTAND AND AGREE THAT I MAY BE PAID FOR MY DRIVE TIME AT A LESSER HOURLY RATE THAN THE REGULAR HOURLY RATE THAT I WILL BE PAID FOR INSTORE TIME. I ALSO UNDERSTAND AND AGREE THAT THE AVERAGE HOURLY RATE FOR ALL ACTUAL TIME SPENT ON A PARTICULAR PROJECT, INCLUDING BOTH INSTORE AND DRIVE TIME, MAY BE LESS THAN THE REGULAR INSTORE HOURLY RATE. I FURTHER UNDERSTAND THAT ANY AMOUNTS PAID TO ME FOR MILEAGE OR DRIVE TIME WILL BE PAID IN COMPLIANCE WITH APPLICABLE FEDERAL AND STATE LAW.

12. I UNDERSTAND THAT I AM REQUIRED TO PERFORM ONLY THOSE SERVICES AS OUTLINED IN THE ASSIGNMENT FOR THE WORK. WHILE I MAY PERFORM SERVICES AT A CUSTOMER LOCATION, I UNDERSTAND THAT I AM TO TAKE DIRECTION FROM MY DRIVELINE MANAGER(S) ONLY. I FURTHER UNDERSTAND IF I PERFORM SERVICES OUTSIDE OF THE SCOPE OF THE WORK, I WILL NOT BE REIMBURSED FOR TIME SPENT ON THESE ACTIVITIES.

13. I UNDERSTAND THAT DRIVELINE IS MONITORING MY PERFORMANCE RELATIVE TO QUALITY OF WORK AND TIMELY COMPLETION/CONFIRMATION OF THE WORK. I FURTHER UNDERSTAND THAT DRIVELINE RESERVES THE RIGHT TO LIMIT MY ACCESS TO AND ASSIGNMENT OF ADDITIONAL WORK BASED ON MY PERFORMANCE IN DRIVELINE'S SOLE DISCRETION.

14. I UNDERSTAND THAT DRIVELINE EMPLOYEES ARE PROHIBITED FROM ACCESSING DRIVELINE'S COMPUTER SYSTEMS (INCLUDING, BUT NOT LIMITED TO, ANY DRIVELINE MOBILE APP) BY USING ANOTHER DRIVELINE EMPLOYEE'S PERSONAL LOG- IN INFORMATION (I.E., LOG-IN NAME/EMAIL ADDRESS, EMPLOYEE PASSWORD, ETC.) FOR ANY PURPOSE INCLUDING, WITHOUT LIMITATION, FOR THE PURPOSE OF REPORTING ANOTHER EMPLOYEE'S COMPLETION OF WORK. I AGREE THAT I WILL NOT ATTEMPT TO ACCESS ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM BY USING ANOTHER EMPLOYEE'S PERSONAL LOG-IN INFORMATION, REGARDLESS OF WHETHER THE OTHER EMPLOYEE HAS CONSENTED TO MY USE OF HIS OR HER LOG-IN INFORMATION. I ALSO AGREE THAT I WILL NOT PROVIDE MY LOG-IN INFORMATION TO ANY OTHER DRIVELINE EMPLOYEE OR REQUEST ANY OTHER PERSON TO ACCESS

Driveline Exhibit 3 - Arbitration Agreements

Driveline Terms

ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM ON MY BEHALF FOR ANY PURPOSE.

15. I UNDERSTAND THAT BY AGREEING TO PERFORM WORK FOR, AND/OR CONTINUING EMPLOYMENT WITH, DRIVELINE, I ACCEPT AND AGREE TO COMPLY WITH THE DRIVELINE DISPUTE RESOLUTION AGREEMENT, WHICH REQUIRES MANDATORY ARBITRATION OF ANY DISPUTE COVERED BY THE DISPUTE RESOLUTION AGREEMENT. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE RECEIVED A COPY OF THE DRIVELINE DISPUTE RESOLUTION AGREEMENT.

ACCEPTED ON: 5/10/22 at 14:07 BY BARRETTE,TAMMY

Driveline Exhibit 3 - Arbitration Agreements