## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

|  |  |  |
|---|---|---|
| KIERSTEN BECK, *et al.,* Each Individually and on Behalf of All others Similarly Situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 3:23-cv-3282-CRL-KLM |
| v. | ) ) | |
| DRIVELINE RETAIL MERCHANDISING, INC., | ) ) ) | |
| Defendant. | ) | |

## DEFENDANT DRIVELINE RETAIL MERCHANDISING, INC.'S
## REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION

COMES NOW Defendant Driveline Retail Merchandising, Inc. ("Driveline"), specially appearing, and offers the following reply in support of its Motion to Compel Arbitration and Memorandum of Law in Support [ECF No. 7].

The arguments advanced by Plaintiffs in opposition to Driveline's Motion to Compel Arbitration are not supported by the factual record before the court and the authority relied upon is materially distinguishable in light of those facts. This Court should grant the motion to compel arbitration and dismiss the claims of all named Plaintiffs, but for Roberto Rivera.

First, Plaintiffs' counsel's claim that initiating this lawsuit, as opposed to filing arbitration demands, was necessary in order to preserve the statute of limitations is disingenuous. When arbitration agreements are mandatory, as this one is, the filing arbitration demands preserves the statute of limitations just as if a lawsuit was filed. The Arbitration Agreement at issue [ECF No. 007- Exhibit 2, Exemplar Arbitration Agreement] provides for mandatory arbitration on both the part of Plaintiffs and Driveline. [Ex. 2 at p. 1, Dispute Resolution Agreement, paragraph a)]

Exhibit 1 - Proposed Reply and Exhibits thereto

Moreover, if some of the individual Plaintiffs' claims are time barred (and some do appear to be), that matter can and will be asserted as a defense in the arbitration. Indeed, the Arbitration Agreement specifically states "[d]isputes are to be initiated by filing and demand for arbitration within the time limit established by the applicable statute of limitations if the Dispute involves statutory rights." [ECF No. 7- 2 at p.1] This dispute involves statutory rights.

The statute of limitations is irrelevant to the issues before this Court:  whether Plaintiffs have arbitration agreements that require them to arbitrate. They do. (*See* below) Plaintiffs' counsel has already filed 38 arbitration demands covering the exact claims asserted in this Complaint. [*See, e.g.*, Motion to Compel Arbitration, ECF No. 7 at p. 7; Exhibit 5 thereto, ECF No. 7 – 19; and Exhibit 6 thereto, ECF No. 7-20]

Next, there are 149 named Plaintiffs. Plaintiffs do not object to an order compelling arbitration for 125, and rather have merely identified 24 Plaintiffs[1] they believe this Court should retain jurisdiction "*until Defendant* proves the existence of a valid agreement to arbitrate." [Plaintiffs' Response to Defendant's Motion to Arbitration, ECF No. 10, at p. 2] This argument is not supported factually or legally. Moreover, given both the conduct of Plaintiffs in the initiation of this litigation, as well as Plaintiffs' counsel's unjustifiable refusal to further cooperate in the identification needed to confirm whether *his own clients* were indeed Driveline employees within the relevant time frame, this Court should reject Plaintiffs' opposition, dismiss this case, order Plaintiffs to proceed in arbitration should they so desire, and award Driveline the fees and expenses associated with presenting this Motion.

---

[1] When Plaintiffs originally objected, they identified 25 Plaintiffs for which they insist Driveline must produce Arbitration Agreements without any additional information provided. Plaintiffs have acknowledged the Arbitration Agreement of Cheri Lueke [ECF No. 11]. Thus, the claims of 24 named Plaintiffs identified in ECF No. 11 continue to be at issue. As to the other 125, Plaintiffs have conceded they are required to file Arbitration Demands.

Of the 24 Plaintiffs remaining at issue, three Arbitration Agreements have already been provided to the Court. Specifically: (1) Melleta Upson Plott's Arbitration Agreement is found at ECF No. 7- 8 at pp. 25-27; (2) Anna Grubb Waack's Arbitration Agreement is found at ECF No. 7-5 at pp. 4-6; and (3) Anna Mitchell Yancy's Arbitration Agreement is found at ECF No. 7-7 at pp. 1-3).

In addition, on January 25, 2024, Driveline was able to identify Plaintiff Kayla James further. Her Arbitration Agreement is submitted herewith as Exhibit 3 – Arbitration Agreements. Thus, Driveline had established that these four Plaintiffs' claims are properly resolved in arbitration. Of the 149 named Plaintiffs before this Court, 129 Arbitration Agreements have been provided to date.

Next, as Plaintiffs point out, Roberto Rivera's Terms of Work Acceptance [ECF No. 7-15 at p. 13] does not include an Arbitration Agreement. Counsel for Driveline apologizes for the mistake, due in part to confusion relating to identifying *which* Driveline former employee named Roberto Rivera was the named Plaintiff herein. Driveline will answer the First Amended and Substituted Complaint, *only as it relates to the claims of Plaintiff Roberto Rivera.[2]*

That leaves only 19 named Plaintiffs at issue.[3] These 19 persons all claim to have been employed by Driveline. However, as clearly explained by Driveline in its Motion, Driveline

---

[2] Mr. Roberto Rivera alleges to be from Terre Haute, Indiana (First Amended and Substituted Complaint, ECF No. 3 at ¶ 135) and to have been an employee at Driveline as recently as September 2020, three years prior to filing of the lawsuit. (*Id.* at ¶ 169) However, upon information and belief, Plaintiff Roberto Rivera of Terre Haute, did *not* work at Driveline after 2018. This means that any claims by Plaintiff Rivera are barred by the statute of limitations, a defense Driveline will assert upon answering only Plaintiff Rivera's allegations, along with preserving its right to seek mandatory arbitration should the identification of just exactly which Roberto Rivera is the named Plaintiff herein continue to be in dispute.

[3] Named Plaintiffs Brewer, Clark, Davis, Dawn, Dummitt, Fuselier, Lea, Lynn, Moore, Morgan, Morrison, Orr, Payton, Ray, Rodgers, Saylors, Taylor, Terrel and Williams.

3

cannot yet identify whether these 19 persons we even employed by Driveline because Plaintiffs' counsel refuses to provide readily-available, basic information to allow Driveline to identify the individuals asserting claims against Driveline. If that information is provided Driveline can establish whether there is an Arbitration Agreement for those persons, and whether they were indeed employed by Driveline within the timeframe alleged by Plaintiffs in the First Amended Complaint.

This issue was addressed by Driveline in its Motion to Compel Arbitration. [ECF No. 7 at pp. 5-6, including fn. 1] Plaintiffs' refusal to cooperate in this regard amounts to nothing more than inappropriate gamesmanship. It smacks of bad faith, stalling tactics and perfectly demonstrates why this Court should fully dismiss this matter and award fees and costs to Driveline.

As clearly – and irrefutably – demonstrated by the Declaration of Lori Bennett, for *any and all* Driveline Merchandisers who did work after January of 2019, each employee was required to electronically sign an Arbitration Agreement. After January of 2019, if the employee did not sign an Arbitration Agreement, s/he/they could *not log into the system and schedule work.* [ECF No. 7-1] Notably, Plaintiffs do not refute that they signed arbitration agreements. Plaintiffs did not submit any affidavit or admissible evidence that would rebut Ms. Bennett's Declaration that every Driveline Merchandiser who worked for Driveline during the applicable statute of limitations executed an Arbitration Agreement. Rather, Plaintiffs' sole objection is that Driveline has yet to submit the executed Arbitration Agreements for these 19 persons. However, it is the *Plaintiffs themselves*, who are stonewalling and refusing to provide basic information that would allow Driveline to locate the Arbitration Agreements and provide them to this Court to avoid wasting additional time and costs in this unnecessary litigation.

Driveline's repeated efforts to seek basic identifying information about the 19 as-yet-unidentified Plaintiffs was laid out in emails between counsel of record. [ECF No. 7-19, Exhibit 5 to the Motion to Compel Arbitration] Before filing the instant Motion, the undersigned reached out to Plaintiffs' counsel explaining that for (originally 23 now 19) named Plaintiffs, Driveline could not confirm employment or access relevant employment records without additional information. In most cases, there were either multiple employees with the same name (for example, there have been at least two current/former employees named Roberto Rivera), or there may have been a name change between the time the employee began working for Driveline and this lawsuit (usually due to marriage or divorce). In its correspondence with Plaintiffs' counsel before filing Driveline's Motion to Compel, counsel for Driveline carefully explained the above, and asked for *either* the last four digits of these persons' social security numbers or their Driveline employee identification number, either of which Driveline could use to definitively determine the individual's identity and access the applicable Arbitration Agreement. Plaintiffs' counsel's response was that the law firm did not have that information[4] and has continued to refuse to simply contact his own clients and ask for their social security numbers or employee identification number. Instead, Plaintiffs' counsel now states that requiring Plaintiffs to simply *identify themselves* would "foist" the burden of producing an arbitration agreement onto them. The argument is specious.

This is not merely an academic argument. For example, Plaintiffs include "Christine Lynn Barrett-Bukowski" and allege she is a "resident of Dickinson County, Kansas." Driveline has

---

[4] Plaintiffs' counsel's own website seeking to identify plaintiffs for this very matter asks each prospective plaintiff/client to provide a Driveline paystub for a free evaluation. (Exhibit 9 hereto, Website Screen Capture, January 10, 2024) The Driveline employee identification number is included on each paystub issued to its employees. (Exhibit 10, hereto, Plaintiff Kiersten Beck Paystub)

5

confirmed identification and located her Arbitration Agreement. [ECF No. 3 at ¶ 12; and ECF No. No. 7-3 at pp. 4-6] However and notably, Plaintiffs' counsel also purports to represent an individual purported to be named "Christine Lynn…. of Herrington, Kansas" and this persons is also identified as a named Plaintiff. [ECF No. 3 at ¶ 121] Driveline has yet to identify a "Christine Lynn" of Herrington, Kansas. It could be these are two separate persons. However, given the similarity of names, that both individuals reside in Kansas, and the easily verifiable fact that Herrington is a small town on the border of Dickinson County, https://en.wikipedia.org/wiki/Herington,_Kansas, it seems likely that Christine Lynn Barrett-Bukowski and Christine Lynn are actually the same person; one Plaintiff, not two. However, without further identification, Driveline cannot be certain. With either the last four social security digits or an employee identification number, Driveline will be able to confirm whether these two Plaintiffs are one and the same. This is just one example of why Driveline's request for readily-available, basic information from the *Plaintiffs themselves* is necessary to move forward.

Rather than simply provide the requested information, hardly a burden in any sense, Plaintiffs propose this Court retain jurisdiction, and presumably, engage in discovery and extended litigation. To do so would waste this Court's resources, as well as needlessly drive up legal fees and expenses. The very point of an arbitration agreement is to effectively and efficiently resolve disputes.

Driveline has timely sought dismissal and to enforce the Arbitration Agreements and Plaintiffs are doing nothing but delaying and wasting litigation resources of the Court and the parties. There has been no denial by Plaintiffs that s/he/they executed Arbitration Agreements. Lori Bennett's Declaration and the facts before this Court are undisputed that every employee who performed any work for Driveline after January 2019 signed an Arbitration Agreement. Plaintiffs

6

do not even attempt to refute this, nor could they--given the history and actual knowledge of their attorneys in this matter. This lawsuit is comprised of Plaintiffs who each allege to have worked for Driveline in the past three years. Thus, each has an Arbitration Agreement and this Court should dismiss the lawsuit as to every Plaintiff, *save* for Roberto Rivera, who appears is the *only yet identified outlier.* He claims to have worked in the last three years; Driveline adamantly denies this claim, and the dispute undoubtably will be resolved in the course of this litigation.

Moreover, the authority relied upon by Plaintiffs does not provide sufficient rational to warrant denial of this motion. Plaintiffs cite *Bigger v. Facebook, Inc*., 947 F.3d 1043, 1050 (7th Cir. 2020) solely for the proposition that "[p]roving the existence of a valid arbitration agreement is wholly and unquestionably the burden of the employer[.]" ECF No. 10.[5]  However, the *Bigger* decision centers on the district court's "discretion to authorize the sending of notice to potential plaintiffs" to opt-in to the potential collective action, as provided by the FLSA. *Bigger,* 947 F.3d at 1046-47; *see also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). In *Bigger*, the defendant employer opposed the district court's authorization of notice to be sent to proposed groups of employees on the basis that "most" of them entered arbitration agreements. *Id*. at 1048-49. The Seventh Circuit established a step by step process for resolving the dispute:

> First, the court must determine whether a plaintiff contests the defendant's assertions about the existence of valid arbitration agreements entered by proposed notice recipients.
>
> If no plaintiff contests those assertions, then the court may not authorize notice to the employees whom the defendant alleges entered valid arbitration agreements.

---

[5] Plaintiffs also misattribute their mashup of separate quotes and authorities as language from the Supreme Court in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1 (1983).

> But if a plaintiff contests the defendant's assertions, then—before authorizing notice to the alleged "arbitration employees"—the court must permit the parties to submit additional evidence on the agreements' existence and validity.

*Id.* at 1050. That court noted that, while the "twin goals of collective actions are enforcement and efficiency,… collective actions also present dangers." *Id.* at 1049 (citations omitted). "One is the opportunity for abuse of the collective-action device: plaintiff may wield the collective-action format for settlement leverage… expanding the litigation with additional plaintiffs, no matter the action's merits." *Id.* This is precisely what is occurring in this matter.

Driveline has clearly shown the existence of a company-wide valid arbitration agreement to which all Driveline merchandisers, at the time and since January 2019, have agreed. Even if this Court applies the *Bigger* analysis on notice to potential plaintiffs here, Plaintiffs have not denied the existence of valid Arbitration Agreements; they are just playing games because Driveline cannot access the final 20 Arbitration Agreements without more information *from Plaintiffs* themselves. Unlike Facebook in the *Biggers* matter, Driveline *strictly required all*, not merely "most," merchandisers to accept the terms of the Arbitration Agreement prior to continuing work for Driveline after January 4, 2019. Plaintiffs' bad-faith efforts to assert a collective action for the named Plaintiffs, despite Plaintiffs' (and Plaintiffs' counsel's) knowledge of the Arbitration Agreement and prior filings of multiple individual arbitrations with the AAA covering the exact same claims alleged in this Complaint, exemplifies the abuse of the collective action device cautioned against by the *Bigger* court.

Furthermore, the Seventh Circuit actually laid out a roadmap for how to proceed when an Arbitration Agreement is at issue. *Id.* at 1055-56. Application of the *Bigger* framework cited in Plaintiffs' Response results in the Court's granting the current Motion, not denying it. First, Plaintiffs do not contest the existence of valid Arbitration Agreements (save for only Plaintiff

Roberto Rivera, which Driveline admits at this time). Thus, the Court should grant the Motion to Compel Arbitration (save for Plaintiff Roberto Rivera). Even if Plaintiffs' Response to the Motion to Compel Arbitration could be considered a denial (without any admissible evidence) that the 20 Plaintiffs in question actually executed Arbitration Agreements, this Court's response should be – *before proceeding* - to order Plaintiffs to produce the identifying information for the remaining 20 persons so that Driveline can locate the Arbitration Agreements in question. If, like apparently Roberto Rivera, it turns out one or more of these last 20 persons did not execute Driveline Arbitration Agreements (almost certainly because they did not work for Driveline during the applicable statute of limitations), then those Plaintiffs' claims would proceed herein.

The case of *Multiband Corp. v. Block*, Case No. 11-CV-15006-TLL-CEB, 2012 WL 1843261, at *1, 13 (E.D. Mich. May 21, 2012) (unpublished opinion) is instructive, wherein the court granted the defendant's motion to compel arbitration and motion for sanctions based on plaintiff's "factual misstatements" and "frivolous arguments advanced in opposition to the arbitrability of the dispute". In *Multibrand v. Block,* the plaintiff filed a complaint in court, then initiated arbitration, then filed an amended complaint in court. *Id.* at *4. In response to defendant's motion to compel arbitration, the plaintiff pushed meritless arguments that the arbitration argument did not apply to its claims. *Id*. at *7-9. The court ultimately granted the motion to compel and the defendant's motion for sanctions, finding "the arguments raised in opposing arbitration [were] objectively unreasonable" because they ignored the plain language of the arbitration agreement and settled law regarding federal arbitration. *Id*. at *10. In granting defendant sanctions, the court opined that "Plaintiff's counsel should have known that the claims in the amended complaint were subject to arbitration. Likewise, counsel should have recognized that opposing the motion to

compel arbitration was objectively unreasonable. Counsel should have dismissed the amended complaint. Instead, counsel raised frivolous arguments in opposition." *Id*. at *13.

Instead of responding to the substance of Driveline's Motion to Compel Arbitration by disputing the validity or enforceability of the Arbitration Agreement or rebutting Driveline's presented evidence that every Driveline merchandiser who performed work during the applicable statute of limitations agreed to the Arbitration Agreement, Plaintiffs wildly allege Driveline's failure to agree to toll the statute of limitations obligated Plaintiffs to file this lawsuit. ECF No. 10, at p. 1-2. Plaintiffs assert they "preserved Plaintiffs' claims through the **only mechanism available at the time**." *Id*. at p. 2 (emphasis added). Plaintiffs fail to explain why initiating arbitration was not an option, especially as they had already demonstrated that they know exactly how to assert these exact same claims in individual arbitrations on behalf of current and former Driveline employees. Moreover, Plaintiffs attempt to skirt relevant and controlling federal law governing arbitration to create a burden-shifting standard that simply does not exist as it is asserted by Plaintiffs. Driveline has demonstrated its Arbitration Agreement applies to all current and former employees who could bring a timely claim under the FLSA.

As to the remaining 20 Plaintiffs still at issue, it is *one* or the *other*.  They either do or do not have an Arbitration Agreement.  Driveline has provided a sworn declaration that says for all merchandisers who worked during the past three years, there is an Arbitration Agreement. Plaintiffs do not deny a uniform and controlling Arbitration Agreement exists.  However, they have repeatedly refused to provide basic identifying information which would allow Driveline to locate the actual records and mitigate the continued costs and legal fees incurred in this improperly-filed litigation.  That is the sole basis of their objection. If the Court is not inclined to dismiss the lawsuit as to these 20 Plaintiffs at this juncture, then the next prudent, expedient measure would

be to order Plaintiffs' counsel to provide to Driveline either the last four digits of their social security numbers or the Driveline employee identification numbers of the 20 Plaintiffs still at issue. Driveline. Thereafter, Driveline can produce an Arbitration Agreement within a reasonable time.

If, after proper identification, Driveline confirms *no arbitration agreement exists* for any particular Plaintiff (possible given the development related to Roberto Rivera, but unlikely), Driveline will answer and proceed to assert all defenses, including what will undoubtably be a statute of limitations defense due to the individual in question not actually performing any work for Driveline during the applicable limitations period.

This Court should grant Driveline's Motion to Compel Arbitration and dismiss the claims of all Plaintiffs, save for Roberto Rivero. Alternatively, the Court should (1) dismiss the claims of the 128 Plaintiffs whose Arbitration Agreements have been located and already submitted to this Court by Driveline and (2) order Plaintiffs to produce the further identifying information regarding the remaining 20 named Plaintiffs even arguably in dispute prior to ruling on the Motion as it relates to those Plaintiffs. In either circumstance, the Court should award Driveline attorneys' fees and costs for the time and expenses associated with presenting this Motion.

Respectfully submitted,

_____

**PHILLIPS MURRAH P.C.**
Kathryn D. Terry, OBA No. 17151
Lauren Barghols Hanna, OBA No. 21594
101 North Robinson Ave. Suite 1300
Oklahoma City, OK 73102
Telephone: (405) 235-4100
Facsimile: (405) 235-4133
kdterry@phillipsmurrah.com
lbhanna@phillipsmurrah.com

**BROWN & JAMES, P.C.**
Denise Baker-Seal, #6255589
Richland Plaza I, 525 W. Main St., Ste. 200
Belleville, Illinois 62220-1547
618/235-5590; 618/235-5591 (Fax)
dseal@bjpc.com; dowens@bjpc.com
*Attorneys for Defendant*
*Driveline Retail Merchandising, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on January ___, 2024 , I electronically transmitted the foregoing document with the Clerk of Court via CM/ECF, which will automatically send notice and a copy of same to counsel of record via electronic mail to the counsel of record below.

**SANFORD LAW FIRM, PLLC**
Josh Sanford
Ark. Bar No. 2001037
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040
josh@sanfordlawfirm.com

*Attorneys for Plaintiffs Kiersten Beck, et al.,*
*Each Individually and on Behalf of All Others Similarly Situated*

**Code of Conduct**

As a Company, employees are expected to accept certain responsibilities, follow acceptable business principles in matters of conduct, and exhibit a high degree of integrity at all times. This not only involves sincere respect for the rights and feelings of others, but also demands that employees refrain from any behavior that might be harmful to themselves, co-workers, the Company, or that might be viewed unfavorably by current or potential customers or by the public at large. Employee conduct reflects on the Company. Employees are, consequently, encouraged to observe the highest standards of professionalism at all times.

Types of behavior and conduct that the Company considers inappropriate include, but are not limited to, the following:

1. Falsifying employment or other Company records;
2. Violating the Company's Anti-Harassment Policy;
3. Violating state, federal or local laws and regulations;
4. Violating security or safety rules or failing to observe safety rules or the Company safety practices;
   failing to wear required safety equipment; tampering with the Company's equipment or safety equipment;
5. Soliciting gratuities from customers or clients;
6. Exhibiting excessive or unexcused absenteeism or tardiness;
7. Possessing firearms, weapons or explosives on Company or client property without authorization, in violation of Company policy, including but not limited to Driveline's Texas weapons policy, or while on duty;
8. Using Company property or supplies in an excessive, unnecessary or unauthorized way or for personal use;
9. Engaging in criminal conduct or acts of violence, or making threats of violence toward anyone on Company or client premises or when representing the Company; fighting or provoking a fight on Company property, or negligent damage of property;
10. Reporting to work under the influence of drugs or alcohol, and/or illegally manufacturing, possessing, using, selling, distributing or transporting drugs;
11. Committing theft or unauthorized possession of Company property or the property of fellow employees;
    possessing or removing any Company or client property, including documents, from the premises without prior permission from management; using Company equipment or property for personal reasons without proper authorization; using Company equipment for profit;
12. Giving confidential or proprietary Company information to competitors or other organizations, or to unauthorized Company employees;
    breaching confidentiality of personnel information;
13. Sharing, disclosing, or transferring usernames or passwords for Company systems without prior written authorization;
    employees must take reasonable measures to prevent unauthorized access to usernames and passwords for Company systems;
14. Using obscene, abusive or threatening language or gestures;
15. Acting in an insubordinate manner;
16. Spreading malicious gossip and/or rumors;
    engaging in behavior which creates discord and lack of harmony; interfering with another employee on the job; restricting work output or encouraging others to do the same;
17. Sleeping or loitering during working hours;
18. Fraternizing with co-workers or customer personnel while on duty or in a company provided travel accommodation location;
19. Soliciting during working hours and/or in work areas;
    selling merchandise or collecting funds of any kind for charities or others without authorization during business hours, or at a time or place that interferes with the work of another employee on Company client premises;
20. Purchasing any product on client property while performing Driveline work;
21. Smoking in restricted areas or at non-designated times, in accordance with Company policy;
22. Performing services for Driveline while working on-duty for a client or customer;
23. Bringing Non-Driveline employees into work, this includes but is not limited to the following: children, spouses, boyfriends/girlfriends, friends, relatives, pets, etc.;
24. Bringing Driveline employees into work not already listed on team project in V3;
25. Subcontracting work to another individual, employed or not employed by the company;
26. Working without approved dress code, safety equipment, bringing personal ladders, step stools, or any unauthorized equipment into work;
27. Working outside of client preferred work hours;
28. Any other behavior that a Customer or Client deems to be inappropriate or offensive and notifies Driveline Leadership of their discord; and/or
29. Failing to abide by Driveline's Dispute Resolution Agreement.

Should an employee's performance, work habits, overall attitude, conduct or demeanor become unsatisfactory based on violations either of the above or of any other Company policies, rules or regulations, the employee will be subject to disciplinary action, up to and including termination.

**An Employee that is barred from Customer retail outlets by Customer Management is subject to immediate termination of employment as such restriction by Customer will not allow Employee to accomplish required Company activities.**

**Dispute Resolution Agreement**

This Dispute Resolution Agreement ("Agreement") applies to any claims or disputes ("Disputes") arising out of, related to or connected with your application for at-will employment with Driveline Retail Merchandising, Inc. or one of its affiliates, subsidiaries or parent companies ("Driveline"), your at-will employment with Driveline and the termination of your at-will employment, except for claims specifically excluded under the terms of this Agreement. By accepting or continuing employment with Driveline after the Effective Date of this Agreement, you accept this Agreement and agree to follow the requirements for resolving disputes according to the terms in this Agreement, even if you do not electronically sign the Agreement.

This Agreement requires that all such Disputes be resolved only by a neutral arbitrator through final and binding arbitration and not by way of court or jury trial except as otherwise stated in this Agreement. Accordingly:

a) You and Driveline agree to arbitrate any Dispute (including all statutory claims and any state or federal claims) that may arise out of, relate to, or is in connection with your at-will employment with Driveline, including your application for employment and the termination of your at-will employment.

b) You and Driveline also agree to bring any Dispute in arbitration on an individual basis only, and not on a joint, class or collective action basis.

c) Further, you and Driveline agree that there will be no right or authority for any Dispute to be brought, heard or arbitrated as a joint action, class action or collective action.

The arbitration shall be conducted pursuant to the American Arbitration Association's employment arbitration rules, then in effect, before a single arbitrator licensed to practice law in the state in which you are or were employed. A copy of these Rules may be obtained from Driveline's Human Resources Department or at www.adr.org. The parties are entitled to conduct discovery to the fullest extent authorized by applicable law. The arbitration proceeding and all related documents will be confidential, to the fullest extent permitted by applicable law.

Disputes are to be initiated by filing a demand for arbitration within the time limit established by the applicable statute of limitations if the Dispute involves statutory rights. If no statutory rights are involved and to the fullest extent permitted by applicable law, such Disputes must be brought within one (1) year of the day on which you knew, or through reasonable diligence, should have known of the facts giving rise to the Dispute.

Prior to submitting a Dispute to arbitration, you and Driveline agree to first attempt to resolve the Dispute by the party initiating the Dispute notifying the other party in writing of the Dispute and explaining in reasonable detail the grounds for such Dispute; by giving the other party the opportunity to respond in writing to the Dispute within 10 days of receipt of the written notification; and by giving the other party the opportunity to meet and confer. Written notification to Driveline shall be made to disputeresolution@drivelineretail.com. If the Dispute is not resolved in this manner, the Dispute may then proceed to arbitration at the request of either party. The parties agree that the decision of the arbitrator shall be in writing, final and binding. Except for Disputes regarding rights conferred by statute or regulation and to the fullest extent permitted by applicable law, the parties agree that the law of the State of Texas shall apply to all other Disputes. Judgment on any award rendered by an arbitrator may be entered and enforced in any court having jurisdiction thereof, and in states where so required a court of competent jurisdiction may render judgment upon any award subject to this Agreement.

Driveline Exhibit 3 - Arbitration Agreements

This Agreement does not absolve you from any applicable administrative filing requirements or prevent you from:

a) filing a charge with or seeking relief from the National Labor Relations Board, the U.S. Department of Labor, or the U.S. Equal Employment Opportunity Commission; or

b) filing a claim with similar state agencies if applicable law allows you to do so.

This Agreement does not cover: claims for workers compensation, state disability or unemployment insurance benefits; claims under California Labor Code Private Attorneys General Act of 2004 (PAGA); any criminal complaint or proceeding filed by a governmental agency; claims for restitution or civil penalties owed by an employee for an act for which Driveline sought criminal prosecution; and/or any charges, claims or lawsuits pending as of January 5, 2019 ("Effective Date").

The parties agree that if a party brings an action that asserts only claims or Disputes subject to arbitration under this Agreement, any party thereafter prevailing on a motion to compel arbitration shall be entitled to that party's reasonable costs and attorneys' fees incurred in compelling arbitration. The parties agree that if a party brings an action that includes both claims and Disputes subject to arbitration under this Agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration shall be stayed until the claims and Disputes subject to arbitration are fully arbitrated and/or otherwise resolved. The parties further agree that in such a situation, the arbitrator's decision on the claims and Disputes subject to arbitration, including determinations as to disputed factual and legal issues, shall be dispositive and entitled to full force and effect in a separate or stayed lawsuit on the claims that by law are not subject to arbitration. Any and all disputes regarding the enforceability of this Agreement and/or the scope of claims and Disputes subject hereto are within the exclusive authority of the arbitrator to be appointed pursuant hereto.

For those Disputes subject to arbitration, Driveline shall be responsible for the arbitrator's fees and expenses. Each party shall pay its own costs and attorneys' fees, if any. However, if any party prevails on a claim which under applicable law affords the prevailing party attorneys' fees and costs, or if there is a written agreement providing for attorneys' fees and costs, the arbitrator may award reasonable attorneys' fees and costs to the prevailing party. Any dispute as to the reasonableness of any fee or cost shall be resolved by the arbitrator.

The parties acknowledge and agree that Driveline is engaged in transactions involving interstate commerce, that this Agreement is a part of and evidences a transaction involving commerce, and that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. �� 1 et seq. If any specific provision of this Agreement is deemed invalid or unenforceable, the remainder of this Agreement, including the Parties' mutual agreement to waive any right to a jury trial, shall remain binding and enforceable to the full extent permitted by applicable law.

## TERMS OF WORK ACCEPTANCE

1. I UNDERSTAND AND AGREE THAT EACH OF THE REQUIREMENTS, TERMS AND CONDITIONS SET FORTH IN THESE TERMS OF WORK ACCEPTANCE (THE "TERMS AND CONDITIONS") ARE ESSENTIAL TERMS FOR THE WORK AND CONDITIONS FOR PAYMENT IN CONNECTION WITH THE WORK.

2. I AGREE TO COMPLETE THE WORK ON OR BY THE SCHEDULE DATE, AS SPECIFIED ABOVE, FOR COMPLETION OF THE WORK ("SCHEDULE DATE").

3. I UNDERSTAND THAT I MUST CONFIRM AND SCHEDULE MY ASSIGNED WORK NO LATER THAN NOON EST ON MONDAY OF EACH WEEK WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, INCLUDING "HARD DATED" PLANS THAT ARE PLAN-SPECIFIC. I FURTHER UNDERSTAND THAT IF I DO NOT CONFIRM THE WORK BY THE MONDAY NOON EST DEADLINE WHENEVER THE WORK IS POSTED BEFORE SUCH DEADLINE, OR FAIL TO COMPLETE THE CONFIRMED WORK ON THE SCHEDULE DATE, DRIVELINE RESERVES THE RIGHT TO REASSIGN THE WORK TO ANOTHER EMPLOYEE.

4. I UNDERSTAND THAT DRIVELINE HAS THE RIGHT TO CHANGE ASSIGNED WORK AT ANY TIME, INCLUDING STORE ASSIGNMENTS, BASED ON BUSINESS NEEDS, CONSISTENT WITH APPLICABLE LAW.

5. I AGREE TO COMPLETE THE WORK WITHIN THE TIME ALLOWED FOR THE WORK, AS SPECIFIED ABOVE. I UNDERSTAND AND AGREE THAT THE TIME ALLOWED FOR THE WORK INCLUDES ADMINISTRATIVE TIME (E.G., PREPARATION FOR ROUTES, COMPLETION OF WORK ORDERS, SUBMISSION OF DIGITAL PHOTOGRAPHS, ETC.) AS WELL AS STORE TIME ("INSTORE TIME"). I FURTHER UNDERSTAND AND AGREE THAT IF ADDITIONAL TIME IS NEEDED TO COMPLETE THE WORK, SUCH ADDITIONAL TIME MUST BE PRE-APPROVED BY MY MANAGER IN WRITING.

6. I AGREE TO TAKE TO THE STORE WHERE THE WORK IS TO BE DONE ALL REQUIRED DOCUMENTS TO COMPLETE THE WORK IN CONFORMANCE WITH DRIVELINE AND CUSTOMER REQUIREMENTS AND SPECIFICATIONS. I FURTHER UNDERSTAND AND AGREE THAT DRIVELINE WILL REIMBURSE ME FOR REQUIRED PRINTING ONLY, AS INDICATED IN THE WORK PLANS, AT A RATE OF 3 CENTS PER PAGE. I FURTHER UNDERSTAND AND AGREE THAT, OTHER THAN AS STATED HEREIN, I WILL NOT BE REIMBURSED FOR THE COST OF ANY OFFICE SUPPLIES USED BY ME IN CONNECTION WITH THE WORK (E.G., PRINTING PAPER, PRINTER TONER, ETC.) AND THAT THESE TYPES OF ADMINISTRATIVE COSTS ARE INCLUDED IN THE TOTAL AMOUNT I AM TO BE PAID AFTER COMPLETION OF THE WORK.

7. TO CONFIRM THAT I HAVE COMPLETED THE WORK, I AGREE TO COMPLETE AND ELECTRONICALLY SUBMIT NO LATER THAN 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," A COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IN THE EVENT I DO NOT SUBMIT THESE ITEMS TO DRIVELINE BY 1:00 AM EST ON THE DATE FOLLOWING THE SCHEDULE DATE TO CONFIRM THAT THE WORK HAS BEEN COMPLETED AS REQUIRED BY THESE TERMS AND CONDITIONS, THE WORK WILL BE REASSIGNED AND I WILL NOT BE PAID FOR THIS ASSIGNMENT.

8. I UNDERSTAND THAT DRIVELINE ENCOURAGES ME TO COMPLETE AND ELECTRONICALLY SUBMIT THE CONFIRMATION OF WORK COMPLETION AND OTHER REQUIRED ITEMS FROM THE CUSTOMER STORE USING DRIVELINE'S MOBILE APP.

9. I UNDERSTAND AND AGREE THAT PAYMENT FOR THE WORK IS EXPRESSLY CONDITIONED ON (1) COMPLETION OF THE WORK ON OR BY THE SCHEDULE DATE, AND (2) CONFIRMATION THAT I HAVE COMPLETED THE WORK, INCLUDING ELECTRONIC SUBMISSION OF DRIVELINE'S "CONFIRMATION OF WORK COMPLETION," COMPLETED WORK ORDER, ANY REQUIRED DIGITAL PHOTOS AND ANY OTHER ITEMS NECESSARY FOR THE WORK. IF I FAIL, FOR ANY REASON, TO EITHER COMPLETE THE WORK ON OR BY THE SCHEDULE DATE AND/OR FAIL TO CONFIRM THAT I HAVE COMPLETED THE WORK AS REQUIRED BY THESE TERMS AND CONDITIONS, SUCH FAILURE WILL VOID THE ASSIGNMENT AND/OR THE WORK WILL BE DEEMED NOT TO HAVE BEEN PERFORMED.

10. I UNDERSTAND AND AGREE THAT MILEAGE AND DRIVE TIME ("DRIVE TIME") I INCUR IN COMPLETING THE WORK WILL BE CALCULATED THROUGH THE USE OF A ROUTE OPTIMIZATION POWERED BY GOOGLE MAPS/MAP QUEST/OTHER SIMILAR MAPPING SERVICES ("ROUTE OPTIMIZATION"). POWERED BY GOOGLE MAPS AND AGREE THAT DRIVELINE WILL NOT PAY DRIVE TIME, OR REIMBURSE MILEAGE, FOR NORMAL COMMUTE FROM MY HOME TO THE FIRST STORE ON A GIVEN DAY OR FROM THE LAST STORE TO MY HOME. I FURTHER UNDERSTAND THAT IF THE ROUTE OPTIMIZATION ON A GIVEN DAY SHOWS THAT MY HOME IS LOCATED MORE THAN 30 MILES FROM EITHER THE FIRST STORE OR THE LAST STORE, I WILL BE REIMBURSED FOR MY MILEAGE AND PAID FOR DRIVE TIME INCURRED BEYOND THE FIRST 30 MILES BETWEEN MY HOME AND THE FIRST STORE OR THE LAST STORE, AS APPLICABLE. ANY COMPENSABLE MILEAGE OR DRIVE TIME BETWEEN MY HOME AND EITHER THE FIRST OR LAST STORE WILL BE CALCULATED BY ROUTE OPTIMIZATION.

11. I UNDERSTAND THAT MILEAGE WILL BE REIMBURSED AT A RATE OF 20 CENTS PER MILE (EXCEPT WHERE GOVERNED BY RULE OF LAW), AS CALCULATED BY ROUTE OPTIMIZATION, AND I AGREE THAT THE RATE OF 20 CENTS PER MILE IS SUFFICIENT TO REIMBURSE ME FOR THE VEHICLE EXPENSES ACTUALLY AND NECESSARILY INCURRED BY ME IN COMPLETING THE WORK. I UNDERSTAND AND AGREE THAT I MAY BE PAID FOR DRIVE TIME AT A LESSER HOURLY RATE THAN THE REGULAR HOURLY RATE THAT I WILL BE PAID FOR INSTORE TIME. I ALSO UNDERSTAND AND AGREE THAT THE AVERAGE HOURLY RATE FOR ALL ACTUAL TIME SPENT ON A PARTICULAR PROJECT, INCLUDING BOTH INSTORE AND DRIVE TIME, MAY BE LESS THAN THE REGULAR INSTORE HOURLY RATE. I FURTHER UNDERSTAND THAT ANY AMOUNTS PAID TO ME FOR MILEAGE OR DRIVE TIME WILL BE PAID IN COMPLIANCE WITH APPLICABLE FEDERAL AND STATE LAW.

12. I UNDERSTAND THAT I AM REQUIRED TO PERFORM ONLY THOSE SERVICES AS OUTLINED IN THE ASSIGNMENT FOR THE WORK. WHILE I MAY PERFORM SERVICES AT A CUSTOMER LOCATION, I UNDERSTAND THAT I AM TO TAKE DIRECTION FROM MY DRIVELINE MANAGER(S) ONLY. I FURTHER UNDERSTAND IF I PERFORM SERVICES OUTSIDE OF THE SCOPE OF THE WORK, I WILL NOT BE REIMBURSED FOR TIME SPENT ON THESE ACTIVITIES.

13. I UNDERSTAND THAT DRIVELINE IS MONITORING MY PERFORMANCE RELATIVE TO QUALITY OF WORK AND TIMELY COMPLETION/CONFIRMATION OF WORK. I FURTHER UNDERSTAND THAT DRIVELINE RESERVES THE RIGHT TO LIMIT MY ACCESS TO AND ASSIGNMENT OF ADDITIONAL WORK BASED ON MY PERFORMANCE IN DRIVELINE'S SOLE DISCRETION.

14. I UNDERSTAND THAT DRIVELINE EMPLOYEES ARE PROHIBITED FROM ACCESSING DRIVELINE'S COMPUTER SYSTEMS (INCLUDING, BUT NOT LIMITED TO, ANY DRIVELINE MOBILE APP) BY USING ANOTHER DRIVELINE EMPLOYEE'S PERSONAL LOG- IN INFORMATION (I.E., LOG-IN NAME/EMAIL ADDRESS, EMPLOYEE PASSWORD, ETC.) FOR ANY PURPOSE INCLUDING, WITHOUT LIMITATION, FOR THE PURPOSE OF REPORTING ANOTHER EMPLOYEE'S COMPLETION OF WORK. I AGREE THAT I WILL NOT ATTEMPT TO ACCESS ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM BY USING ANOTHER EMPLOYEE'S PERSONAL LOG-IN INFORMATION, REGARDLESS OF WHETHER THE OTHER EMPLOYEE HAS CONSENTED TO MY USE OF HIS OR HER LOG-IN INFORMATION. I ALSO AGREE THAT I WILL NOT PROVIDE MY LOG-IN INFORMATION TO ANY OTHER DRIVELINE EMPLOYEE OR REQUEST ANY OTHER PERSON TO ACCESS

Driveline Exhibit 3 - Arbitration Agreements

Driveline Terms

ANY DRIVELINE COMPUTER SYSTEM OR PROGRAM ON MY BEHALF FOR ANY PURPOSE.

15. I UNDERSTAND THAT BY AGREEING TO PERFORM WORK FOR, AND/OR CONTINUING EMPLOYMENT WITH, DRIVELINE, I ACCEPT AND AGREE TO COMPLY WITH THE DRIVELINE DISPUTE RESOLUTION AGREEMENT, WHICH REQUIRES MANDATORY ARBITRATION OF ANY DISPUTE COVERED BY THE DISPUTE RESOLUTION AGREEMENT. I FURTHER ACKNOWLEDGE AND AGREE THAT I HAVE RECEIVED A COPY OF THE DRIVELINE DISPUTE RESOLUTION AGREEMENT.

ACCEPTED ON: 4/16/20 at 03:01 BY JAMES,KAYLA

Driveline Exhibit 3 - Arbitration Agreements





Home » Blog » Driveline Retail Merchandising

# DRIVELINE RETAIL MERCHANDISING

June 2, 2022

## FIND OUT IF YOU'RE OWED WAGES IN LESS THAN A MINUTE BY TAKING THE QUIZ BELOW.

**Take the quiz**

Merchandisers may be **owed $100s** due to Driveline's oversight when paying for drive time and mileage.





# Many merchandisers have already decided to start their claim against Driveline.

You've given your time and hard work to Driveline Merchandising. This means you deserve at least the bare minimum that the law requires. You may have already lost $100s to Driveline. Don't potentially lose $100s more. **We've sued Driveline Merchandising** for not paying merchandisers correctly for drive time or for mileage. Find out sooner rather than later if you are also owed money.

If you were an **hourly-paid master merchandiser, merchandiser, field associate, or field merchandiser at Driveline Retail in the past 3 years**, you need to have your paystubs evaluated! This is the best way to be sure you haven't had $100s stolen from your paychecks. Having your paystubs reviewed is a **free and confidential** process that starts by filling out the form below or calling us at 501-443-4941.

Wage laws are very clear. When you look at your paychecks, you know when the math isn't adding up. Having a professional look at them can you give you some much-needed answers.

## READ OUR PAST DRIVELINE LAWSUIT

001-Complaint-1.pdf        1  / 12            91%



Case 4:18-cv-00778-SWW   Document

IN THE UNITED STATES
EASTERN DISTRICT
WESTERN D

**SHIRLEY BLACK, RENA MCCRAW
and REBECCA MORRIS, Each Individually
and on Behalf of All Others Similarly Situat**

vs.                                    No. 4:18-c

**DRIVELINE RETAIL MERCHANDISING, INC**
This case assigned
and to Magistrate J
**ORIGINAL COMPLAINT –**

COME NOW Plaintiffs Shirley Black, F

individually and on behalf of all others similar

Chris Burks and Josh Sanford of the Sanfor

Complaint — Collective Action against Defer

("Defendant"), they do hereby state and allege

Driveline Retail Merchandising Lawsuit        Download

## GET YOUR FREE AND CONFIDENTIAL PAYSTUB EVALUATION

*This form is **100% free and confidential** and **will not be shared with anyone**. We simply need your contact
information so that an intakes team member can get in touch with you. You will hear from us within 72 hours.
Thank you!*

**Name** (required)

**Phone** (required)

**Email** (required)

**Message**

I'm not a robot

reCAPTCHA
Privacy - Terms

Contact Us



Sanford Law Firm

10800 Financial Centre Pkwy

Driveline Retail Merchandising - Sanford Law Firm

Suite 510, Little Rock, AR 72211

Email: josh@sanford_42hp8l

## LINKS

Home

Resources

Personal Injury

Cases

Industries

Team

Contact

## CONTACT US

We want to hear from you **wherever you work**. We serve clients nationally.

**Phone:** 800-615-4946
**Email:** letswin@sanfordlawfirm.com

## OUR LOCATIONS

We will meet you on Zoom wherever you are.

Little Rock
Birmingham
Chicago
Denver
Omaha
Phoenix

Driveline Exhibit 9 - Website Screen Capture, January 10, 2024



San Antonio

Seattle

*In-office visits require appointments.

## ABOUT SANFORD LAW FIRM

As one of the leading employment law firms in America**, Sanford Law Firm prides itself on providing outstanding legal representation to all of our clients across the nation.

**About Us**

Neve | Powered by WordPress

CO   FILE   DEPT   CLOCK   VCHR. NO.
HVG  004055 001515        0000514299  1

469-0002

*DRIVELINE RETAIL MERCHANDISING, INC*
*1141 E 1500 NORTH ROAD*
*TAYLORVILLE,   IL 62568*
*888-824-7505*

# Earnings   Statement



| | |
|---|---|
| Period Beginning: | 12/01/2019 |
| Period Ending: | 12/14/2019 |
| Pay Date: | 12/20/2019 |

KIERSTEN  H BECK

Taxable  Marital Status:    Single
Exemptions/Allowances:
    Federal:          6
    NC:               2

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 11.5200 | 45.12 | 519.78 | 15,286.27 |
| Drivetime | | | 11.56 | 276.17 |
| N Bonus | | | 24.76 | 193.59 |
| Overtime | | | | 93.94 |
| **Gross Pay** | | | **$556.10** | 15,849.97 |

| Other Benefits and Information | this period | total to date |
|---|---|---|
| EMPLOYEE ID | | 1122514 |

| Deductions | Statutory | | |
|---|---|---|---|
| | Social Security Tax | -34.48 | 982.70 |
| | Medicare Tax | -8.06 | 229.82 |
| | NC State Income Tax | | 140.00 |
| | **Other** | | |
| | Miles | | -682.70 |
| | Moblie Tech | | -117.60 |
| | TI Print | | -24.87 |
| | **Adjustment** | | |
| | Miles | +28.39 | |
| | Moblie Tech | +4.65 | |
| | TI Print | +0.81 | |
| | **Net Pay** | **$547.41** | |
| | Checking | -547.41 | |
| | **Net Check** | **$0.00** | |

Your  federal  taxable  wages  this  period  are  $556.10

Q 2005  ADP, LLC

DRIVELINE  RETAIL  MERCHANDISING , INC
1141 E 1500 NORTH ROAD
TAYLORVILLE , IL 62568

Advice number:          00000514299
Pay date:               12/20/2019

THIS IS NOT A CHECK

Deposited  to the account  of
KIERSTEN   H BECK

| | account  number | transit  ABA | amount |
|---|---|---|---|
| | | | $547.41 |

## NON-NEGOTIABLE

Driveline Exhibit 10 - Plaintiff Kiersten Beck Paystub