IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| KIERSTEN BECK, *et al.,* Each Individually and on Behalf of All others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>DRIVELINE RETAIL MERCHANDISING, INC.,<br><br>Defendant. | Civil Action No. 3:23-cv-3282-CRL-KLM |

**DEFENDANT DRIVELINE RETAIL MERCHANDISING, INC.'S REPLY BRIEF
IN SUPPORT OF ITS SECOND MOTION TO COMPEL ARBITRATION**

Defendant Driveline Retail Merchandising, Inc. ("Driveline") submits this reply brief in support of its Second Motion to Compel Arbitration.

**A. This Court Has Full and Exclusive Authority to Award Attorney Fees Under 28 U.S.C. § 1927**

First, although Plaintiffs' correctly recite certain terms of the Arbitration Agreement which read:"[a]ny and all disputes regarding the enforceability of this Agreement and/or the scope of claims and Disputes subject hereto are within the exclusive authority of the arbitrator," and "[a]ny dispute as to the reasonableness of any fee or cost shall be resolved by the arbitrator." [ECF No. 7-2], Plaintiffs' reliance on this provision is unavailing. Plaintiffs ignore the full scope of that provision and that, by its own terms, the exact language above makes clear it is inapplicable to this dispute. Uuuuuuuu7uDriveline's request for attorney fees is not in any way related to either the enforceability of the Arbitration Agreement or the scope of the claims brought by Plaintiffs.

Next, Driveline also requests this Court award attorney fees under 28 U.S.C. § 1927, which grants to this Court full authority to award excess costs, expenses, and attorney's fees reasonably incurred due to an attorney's conduct that unreasonably and vexatiously multiplies litigation proceedings in any case. *Jolly Group, Ltd. V. Medline Indus., Inc.,* 435 F.3d 717, 720 (7th Cir. 2006) (noting that Courts may impose sanctions under 28 U.S.C. § 1927 "when an attorney has acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice [or] pursued a claim that is without a plausible legal or factual basis and lacking in justification.")    28 U.S.C. § 1927 was enacted specifically to deter attorneys from weaponizing the federal Court system. As demonstrated by both Driveline's Motion and the email chain attached to Plaintiffs' Response to the Motion, the objectively unreasonable litigation conduct by Plaintiffs' counsel in this matter is the very conduct that 28 U.S.C. § 1927 was enacted to discourage.

### B.  Plaintiffs' Response Did Not Produce any Evidence that Driveline's Conduct Somehow Caused Plaintiff to Engage in Sanctionable Abuse of the Litigation Process

Plaintiffs' Response includes several unsubstantiated-specific allegations that Driveline's conduct somehow prevented Plaintiffs from properly filing arbitration demands with the American Arbitration Association and thus eliminating any statute of limitations concerns. [*See* ECF No. 17 at p. 2-7.]  As an initial matter, it is important to note that Plaintiffs' counsel did not provide **any** admissible evidentiary support for its position that Driveline engaged in inappropriate conduct. The submitted evidence in this matter, as distinct from the unsupported and self-serving statements of Plaintiffs' counsel in the opposition brief, make clear that Driveline, unlike Plaintiffs, was upfront and direct about its intentions and expectations, and that it intended to enforce the Arbitration Agreements signed by Plaintiffs. The fact that the parties made an early unsuccessful

2

Exhibit 1 - Proposed Reply

attempt to settle out of court is wholly irrelevant to whether Plaintiffs acted vexatiously in filing this lawsuit, despite their counsel's actual knowledge that every Driveline employee since 2019 had an enforceable arbitration agreement and that the only proper venue to toll any applicable statute of limitations was to file an arbitration demand with the AAA, as set forth in the Arbitration Agreement.

The emails confirm the parties initially engaged in tentative settlement negotiations that were ultimately unsuccessful—a result that is typical for pre-litigation settlement attempts and not in any way a sign of bad-faith conduct by either Driveline or its counsel. Regardless, the parties' pre-litigation settlement negotiations are wholly irrelevant as to whether Plaintiffs' attorneys acted properly in <u>filing a lawsuit in this Court</u>—or whether it filed this lawsuit for improper reasons, like advertising and/or because they surmised filing an impermissible collective action in this Court was somehow "easier" than filing the contractually-required arbitration demands to appropriately preserve their clients' claims.

As more extensively discussed in Driveline's Motion, Plaintiffs' counsel had actual knowledge of Driveline's enforceable Arbitration Agreements when Driveline's nationwide mandatory Arbitration Agreements were first enacted in January 2019. [ECF No. 7, p. 7]. Moreover, Driveline again explicitly reminded Plaintiffs' counsel that they were required to file arbitration demands to toll the statute of limitations and initiate claims against Driveline well before Plaintiffs' counsel filed the pending lawsuit in this Court.

Clearly recognizing this fact, in July 2023, Plaintiffs' counsel filed 38 separate arbitration demands on behalf of former Driveline employees, asserting claims identical to the ones presented to this Court. [ECF No. 7, p. 8]. Then, without explanation, Plaintiffs' counsel stopped filing arbitration demands, spent two months taking no action whatsoever on behalf of their clients

(clearly not worried about the statute of limitations during those months), and then filed this lawsuit in September 2023. Still not bothering to even serve the initial complaint, several months later on December 21, 2023, Plaintiffs amended this lawsuit to add a significant number of additional Driveline employees as Plaintiffs to this suit. [*See* ECF No. 3 at ¶4]. At any time Plaintiffs' counsel could have simply filed an arbitration demand on behalf of each of these individuals to toll any applicable statute of limitations and properly initiate these claims, all consistent with and pursuant to their contractual obligations. But instead of continuing to follow the procedure set forth in the Arbitration Agreement, Plaintiffs' counsel inexplicably made a calculated decision to file this lawsuit in bad faith, likely recognizing that filing the lawsuit would require Driveline to expend tens of thousands of dollars in attorneys fees and costs to finally get an order **compelling** Plaintiffs' counsel to again follow the clearly-established procedural rules clearly set forth in the parties' Arbitration Agreement.

      In fact, the email chain attached as an Exhibit to Plaintiffs' Response unequivocally confirms Plaintiffs' bad-faith motivations in filing this lawsuit in this Court. Way back on October 11, 2022, Plaintiffs' counsel admitted to Driveline that it knew "most, if not all, of these [ then 103 or so current and former employees of Driveline] signed an arbitration agreement with Driveline." [*See* ECF. No. 17-1, p. 1]. Despite this actual knowledge, Plaintiffs' counsel went on to state that their "intention/strategy is this: we plan to file a multi-plaintiff Complaint in federal district court on behalf of these individuals." *Id.* Driveline responded to this vexatious threat to unreasonably multiply the proceedings in this case by clearly reminding Plaintiffs' counsel that "every Driveline employee has a signed Driveline ADR agreement that waives their ability to proceed on a collective-action basis." *Id.*

Exhibit 1 - Proposed Reply

In an attempt to reduce litigation expenses, Driveline initially agreed to toll the statute of limitations, if Plaintiffs could provide identifying information, so Driveline could discuss potential pre-litigation resolution. *Id.* On October 20, 2022, Plaintiffs' counsel provided their initial list of client names and Driveline began working to identify the individuals, noting on October 26, 2022 that Driveline "has been working as quickly as possible to pull basic employment information about the individuals." *Id.* That same day, almost a full year before this lawsuit was actually filed in this Court, Plaintiffs' counsel noted "[w]e were thinking we would just file a case for all of them as a group today in Illinois." *Id.* Just two hours after Plaintiffs' counsel threatened to wholly disregard its contractual obligation and file a collective-action lawsuit in bad faith, Driveline responded as follows:

> On Wed, Oct 26, 2022 at 2:45 PM Hanna, Lauren B. <lbhanna@phillipsmurrah.com> wrote:
>
> Josh,
>
> If you file a collective action in Illinois or any other venue, we would have no choice but to immediately file a counterclaim seeking punitive damages and sanctions. Your firm has actual knowledge that every Driveline employee since January 2019 has signed a class and collective action waiver, as part of a broader alternative dispute resolution agreement with Driveline. In that agreement, each employee has agreed to first present their claim to Driveline for informal resolution of any claimed damages and—only if that is attempt to resolve the claim is unsuccessful—file a request to arbitrate their claim before a neutral arbitrator. Your firm exchanged written correspondence with our firm in January 2019 about your frustration that every Driveline employee was required to sign alternative dispute resolution agreements as a condition of continued employment.
>
> The clients that you are currently representing are not served at all by such a bad-faith filing, as it will not act to toll any statute of limitations. Such a filing will only incur needlessly-wasteful and excessive attorney fees, court costs, and direct damages to Driveline, which Driveline will attempt to recover in response to any such filed lawsuit. Any such filing would also be unethical and violate the Rules of Professional Responsibility because you have direct knowledge that your clients' claims are barred from adjudication through the court--you would be improperly using the court system solely as a public marketing campaign for additional clients to financially benefit your firm.
>
> That said, we do not want to go to war with you and waste our clients' time and resources fighting this issue in court. We both know that each of your clients has a valid and binding collective/class action waiver and a requirement to submit their claims on an individual basis for informal resolution by Driveline and then for formal arbitration through a neutral arbitrator. We are working with Driveline to collect information about the individuals provided on last week's list. We are trying to work with Driveline to provide a substantive proposal to you by Friday, November 4th regarding how we might move forward to identify each individual's claims and damages and work to resolve the claims short of going through the lengthy and resource-intensive process of arbitration. We are trying to work with you on this and provide a substantive path to resolution that is efficient for both your firm and our client. But we need some additional information to complete this initial step, including some clarification of certain of your clients, as we have identified multiple Driveline employees with the same name as certain of the provided names on last week's list. We will follow up by tomorrow with the employees for whom we need additional information to clarify their identity.

*Id.*

Thus, Plaintiffs were put on notice on October 26, 2022 that filing a collective action in Illinois against Driveline was in direct violation of their enforceable Arbitration Agreements—and such a bad-faith action would "incur needlessly-wasteful and excessive attorney fees, court costs, and direct damages to Driveline, which Driveline will attempt to recover in response to any such filed lawsuit." *Id.* Driveline went above and beyond its obligations as opposing counsel to avoid

unnecessary proceeding and remind Plaintiffs' counsel of the obligation to avoid bad-faith filing of a lawsuit in an improper forum, as well was the likely consequences of such conduct.

Just two days later, on October 28, 2022, Driveline notified Plaintiffs' counsel that it could not locate a group of 13 Plaintiffs in Driveline's system, noting that it was possibly an issue with maiden/married names or due to having multiple individuals with the same name in the system. *Id.* Driveline requested "additional information the…individuals (SSN or EIN)" to be able to identify the individuals that Plaintiffs' counsel claimed to represent. *Id.* Of those thirteen individuals for whom Driveline specifically requested identifying information back in 2022, four individuals (Kayla Williams, Lloyd Payton, Linda Taylor and Jennifer Rodgers) were on the list of the 20 individuals that the Court ultimately ordered Plaintiffs' counsel to provide identifying information. [See ECF No. 14, p. 7]. When Plaintiffs' counsel ultimately produced the final four social security digits for three of these individuals, Driveline was able to promptly locate Arbitration Agreements and renew its dismissal motion with regard to their claims. [ECF No. 15]. As for Lloyd Payton, Plaintiffs now conceded his claim is subject to dismissal because he is either still unidentified or has not worked for Driveline for the past 14 years. [ECF No. 15 a pp 2/3; ECF No. 17 at p. 1]

It is now a two full years since: (1) Plaintiffs' counsel admitted that they had actual knowledge that their clients had enforceable Arbitration agreements with Driveline, (2) Driveline further advised Plaintiffs' counsel that it could not locate the specific alleged employees and former employee in its system until Plaintiffs' counsel provided the individuals' social security numbers, and (3) Driveline advised Plaintiffs' counsel to not file this lawsuit in bad faith or else Driveline would seek sanctions for such vexatious and unreasonable conduct. With the assistance of this Court's order compelling Plaintiffs' counsel to provide the necessary identifying

information about their clients, Driveline has now produced a signed arbitration agreement for each Plaintiff save two and Plaintiffs concede those claims are subject to dismissal - which will finally allow this matter to proceed in arbitration, the venue that both Plaintiffs' counsel and Driveline's counsel agreed was appropriate back in October 2022.

Finally, Plaintiffs' position that the arbitrator must resolve whether and what amount of attorneys' fees are warranted is misplaced and convoluted. The Arbitration Agreement is clear. As to fees and a motion to compel arbitration, it reads:

> **The parties agree that if a party brings an action that asserts only claims subject to arbitration under this Agreement, any party thereafter prevailing on a motion to compel arbitration shall be entitled to that party's reasonable costs and attorneys' fees incurred in compelling arbitration.** The parties agree that if a party brings an action that includes both claims that are subject to arbitration under this Agreement and claims that by law are not subject to arbitration, all claims that by law are not subject to arbitration shall be stayed until the claims and Disputes subject to arbitration are fully arbitrated and/or otherwise resolved. The parties further agree that in such a situation, the arbitrator's decision on the claims and Disputes subject to arbitration, including determinations as so disputed factual and legal issues, shall be dispositive and entitled to full force and effect in a separate or stated lawsuit on the claims that by law are not subject to arbitration. **Any and all disputes regarding the enforceability of this Agreement and/or the scope of the claims and Disputes subject hereto are within the exclusive authority of the arbitrator to be appointed pursuant hereto.**

[ECF No. 7-2 at p. 2, emphasis added] Clearly, if a party initiates a lawsuit asserting only claims subject to arbitration, as Plaintiffs did here, and Driveline prevails in the motion to compel arbitration, as it did here, Driveline is entitled to fees. This Court determines those fees. The above provisions are not subject to any other reasonable interpretation. The provision that Plaintiffs' counsel relies upon reserves to the arbitrator to determine the scope of the claims subject to arbitration or its enforceability, neither of which are at issue in this case. Plaintiffs did not argue their claims were not encompassed within the Arbitration Agreement or that it was unenforceable for some reason. Rather and the *only* objection Plaintiffs ever raised in feigned opposition to the

7

Exhibit 1 - Proposed Reply

motion was that Driveline could not locate Arbitration Agreements for all of the named Plaintiffs[1] – a fact that was only true because Plaintiffs refused to cooperate in identifying themselves with sufficient clarity. It took a court order for them to cooperate. Plaintiffs never raised an issue regarding the scope of the Arbitration Agreements or their enforceability.

Next, the Arbitration Agreement provides that *when the substantive merits of a dispute are resolved by the arbitrator and the prevailing party is entitled to fees pursuant to applicable law*, in that instance, the arbitrator determines reasonable fees and costs. Clearly, the merits of Plaintiffs' claims are not yet at issue. [ECF No. 7-2 at p. 2 ]

Plaintiffs should not be rewarded for circumventing their contractual obligations in a transparent attempt to unreasonably multiply proceedings, causing Driveline to spend significant attorney fees. 28 U.S.C. § 1927 was enacted to prevent exactly the conduct taken by Plaintiffs' counsel. The federal courts should not be used for improper purposes, in direct violation of Plaintiffs' contractual obligations, especially when those obligations were known and acknowledged by Plaintiffs' counsel in October 2022, almost 15 months before this lawsuit was originally filed. Even after Driveline produced a valid, enforceable Arbitration Agreement for every single Plaintiff remaining in this lawsuit, Driveline has still been required to file a second motion to dismiss and compel arbitration, and renew its request for fees and costs. At every possible point, Plaintiffs' counsel seeks only to maximize Driveline's unnecessary expenditure of legal fees by Plaintiffs' objectively unreasonable litigation conduct. For these reasons, Driveline requests its attorney's fees and costs that were unnecessary spent in its efforts to compel Plaintiffs' counsel to file its clients' claims in the arbitration venue they recognized as appropriate two years prior to the filing of this brief.

---

[1] ECF Nos. 10 and 11

Respectfully submitted,

s/Kathryn D. Terry
**PHILLIPS MURRAH P.C.**
Kathryn D. Terry, OBA No. 17151
Lauren Barghols Hanna, OBA No. 21594
101 North Robinson Ave. Suite 1300
Oklahoma City, OK 73102
Telephone: (405) 235-4100
Facsimile: (405) 235-4133
kdterry@phillipsmurrah.com
lbhanna@phillipsmurrah.com

**BROWN & JAMES, P.C.**
Denise Baker-Seal, #6255589
Richland Plaza I, 525 W. Main St., Ste. 200
Belleville, Illinois 62220-1547
618/235-5590; 618/235-5591 (Fax)
dseal@bjpc.com; dowens@bjpc.com
*Attorneys for Defendant*
*Driveline Retail Merchandising, Inc.*

9

Exhibit 1 - Proposed Reply

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2024 , I electronically transmitted the foregoing document with the Clerk of Court via CM/ECF, which will automatically send notice and a copy of same to counsel of record via electronic mail to the counsel of record below.

**SANFORD LAW FIRM, PLLC**
Josh Sanford
Ark. Bar No. 2001037
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040
josh@sanfordlawfirm.com

*Attorneys for Plaintiffs Kiersten Beck, et al.,*
*Each Individually and on Behalf of All Others Similarly Situated*

*s/Kathryn D. Terry*_____